## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Osaneme Okaro ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Icahn Enterprises L.P. ("Icahn Enterprises" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Icahn Enterprises; and (c) review of other publicly available information concerning Icahn Enterprises.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Icahn Enterprises securities between August 2, 2018 and May 9, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Icahn Enterprises is a master limited partnership holding company owning subsidiaries engaged in the following operating businesses: Investment, Energy, Automotive, Food Packaging, Real Estate, Home Fashion and Pharma. Defendant Carl C. Icahn ("Icahn") and his affiliates owned approximately 85% of Icahn Enterprises' outstanding depositary units as of December 31, 2022.

3. On May 2, 2023, Hindenburg Research published a report alleging, among other things, that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." The report also claimed that the Company operates a "ponzi-like economic structure" and "has been using money taken in from new investors to pay out dividends to old investors."

4. On this news, Icahn Enterprises' share price fell $10.06 per share, or 20%, to close at $40.36 per share on May 2, 2023.

5. Then, on May 10, 2023, before the market opened, Icahn Enterprises filed its Quarterly Report on Form 10-Q with the SEC for the period ended March 31, 2023. Therein, the Company stated that the U.S. Attorney's office for the Southern District of New York contacted Icahn Enterprises on May 3, 2023 seeking production of information relating to the Company, certain of its affiliates' "corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials." The Company claimed it is "cooperating with the request" and is "providing documents in response to the voluntary request for information."

6. On this news, Icahn Enterprises' share price fell $5.75 per share, or 15.1%, to close at $32.22 per share on May 10, 2023.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Icahn Enterprises was inflating its net asset value; (2) that the Company was using money taken in from new investors to pay out dividends to old investors; (3) that, as a result, the Company would become the subject of criminal and/or regulatory scrutiny; and (4) that as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. The Company's principal executive offices are also located in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

12.     Plaintiff Osaneme Okaro, as set forth in the accompanying certification, incorporated by reference herein, purchased Icahn Enterprises securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Icahn Enterprises is incorporated under the laws of Delaware with its principal executive offices located in Sunny Isles Beach, Florida. Icahn Enterprises' Depositary Units trade on the Nasdaq Global Select Market (the "NASDAQ") under the symbol "IEP."

14.     Defendant Carl C. Icahn ("Icahn") was the Company's Chairman of the Board at all relevant times.

15.     Defendant David Willetts ("Willetts") has been the Company's President and Chief Executive Officer ("CEO") since November 8, 2021.

16.     Defendant Ted Papapostolou ("Papapostolou") has been the Company's Chief Financial Officer ("CFO") since November 8, 2021.

17.     Defendant Keith Cozza ("Cozza") was the Company's President and Chief Executive Officer ("CEO") from 2014 until November 8, 2021.

18.     Defendant SungHwan Cho ("Cho") was the Company's Chief Financial Officer ("CFO") from 2012 until November 8, 2021

19.     Defendants Icahn, Willetts, Papapostolou, Cozza, and Cho (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Icahn Enterprises is a master limited partnership holding company owning subsidiaries engaged in the following operating businesses: Investment, Energy, Automotive, Food Packaging, Real Estate, Home Fashion and Pharma. Defendant Icahn and his affiliates owned approximately 85% of Icahn Enterprises' outstanding depositary units as of December 31, 2022.

**Materially False and Misleading**

**Statements Issued During the Class Period**

21.     The Class Period begins on August 2, 2018. On that day, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Second Quarter 2018 Financial Results." Therein, the Company stated, in relevant part:

> Icahn Enterprises L.P. (NASDAQ:IEP) is reporting second quarter 2018 revenues of $3.6 billion and net income attributable to Icahn Enterprises of $309 million, or $1.70 per depositary unit, including $164 million from continuing operations, or $0.90 per depositary unit. For the three months ended June 30, 2017 revenues were $4.5 billion and net income attributable to Icahn Enterprises was $1.6 billion, or $9.51 per depositary unit, including $1.5 billion from continuing operations, or $9.20 per depositary unit. The prior year period includes a $1.0 billion gain, net of tax, from the sale of ARL in June 2017. For the three months ended June 30, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $356 million compared to $288 million for the three months ended June 30, 2017. For the three months ended June 30, 2018, Adjusted EBIT attributable to Icahn Enterprises was $270 million compared to $195 million for the three months ended June 30, 2017.

> For the six months ended June 30, 2018, revenues were $6.7 billion and net income attributable to Icahn Enterprises was $446 million, or $2.48 per depositary unit, including $272 million from continuing operations, or $1.52 per depositary unit. For the six months ended June 30, 2017 revenues were $7.0 billion and net income attributable to Icahn Enterprises was $1.5 billion, or $9.77 per depositary unit, including $1.5 billion from continuing operations, or $9.23 per depositary unit. The prior year period includes a $1.0 billion gain, net of tax, from the sale of ARL in June 2017. For the six months ended June 30, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $664 million compared to $468 million for the six months ended June 30, 2017. For the six months ended June 30, 2018, Adjusted EBIT attributable to Icahn Enterprises was $490 million compared to $287 million for the six months ended June 30, 2017.

> For the six months ended June 30, 2018 indicative net asset value increased to $8.4 billion compared to $7.9 billion as of December 31, 2017.

22.     On February 28, 2019, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2018 Financial Results." Therein, the Company, in relevant part, stated:

> Icahn Enterprises L.P. (NASDAQ:IEP) is reporting for the year ended December 31, 2018, revenues of $11.8 billion and net income attributable to Icahn Enterprises

of $1.5 billion, or $11.46 per depositary unit, including a loss of $213 million from continuing operations, or $1.16 per depositary unit. For the year ended December 31, 2017, revenues were $12.6 billion and net income attributable to Icahn Enterprises was $2.4 billion, or $14.80 per depositary unit, including $2.3 billion from continuing operations, or $13.84 per depositary unit. For the year ended December 31, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $561 million compared to $642 million for the year ended December 31, 2017. For the year ended December 31, 2018, Adjusted EBIT attributable to Icahn Enterprises was $264 million compared to $323 million for the year ended December 31, 2017.

For the fourth quarter of 2018, revenues were $2.8 billion and net income attributable to Icahn Enterprises was $935 million, or $8.03 per depositary unit, including a loss of $434 million from continuing operations, or $2.28 per depositary unit. For the three months ended December 31, 2017, revenues were $2.5 billion and net income attributable to Icahn Enterprises was $298 million, or $1.76 per depositary unit, including $279 million from continuing operations, or $1.65 per depositary unit. For the three months ended December 31, 2018, Adjusted EBITDA attributable to Icahn Enterprises was a loss of $104 million compared to a loss of $96 million for the three months ended December 31, 2017. For the three months ended December 31, 2018, Adjusted EBIT attributable to Icahn Enterprises was a loss of $176 million compared to a loss of $177 million for the three months ended December 31, 2017.

For the year ended December 31, 2018, indicative net asset value increased to $8.2 billion compared to $7.9 billion as of December 31, 2017.

*     *     *

## Distribution

Icahn Enterprises has a long history of endeavoring to return capital to its unitholders by declaring and paying significant and consistent annual distributions. As a reminder –

> Icahn Enterprises estimated annual distribution of $8.00 per depositary unit for fiscal year 2019
>
> Icahn Enterprises declared annual distributions of $7.00 per depositary unit for fiscal year 2018
>
> Icahn Enterprises declared annual distributions of $6.00 per depositary unit for fiscal year 2017
>
> Icahn Enterprises declared annual distributions of $6.00 per depositary unit for fiscal year 2016

> Icahn Enterprises declared annual distributions of $6.00 per depositary unit for fiscal year 2015
>
> Icahn Enterprises declared annual distributions of $6.00 per depositary unit for fiscal year 2014

Most recently, on February 26, 2019, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit ($8.00 per unit annualized) which will be paid on or about April 17, 2019 to depositary unitholders of record at the close of business on March 11, 2019. Depositary unitholders will have until April 8, 2019 to make an election to receive either cash or additional depositary units; if a holder does not make an election, it will automatically be deemed to have elected to receive the dividend in cash. Depositary unitholders who elect to receive additional depositary units will receive units valued at the volume weighted average trading price of the units on NASDAQ during the 5 consecutive trading days ending April 15, 2019. No fractional depositary units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any holders electing to receive depositary units. Any holders that would only be eligible to receive a fraction of a depositary unit based on the above calculation will receive a cash payment.

Icahn Enterprises L.P., a master limited partnership, is a diversified holding company engaged in eight primary business segments: Investment, Energy, Automotive, Food Packaging, Metals, Real Estate, Home Fashion and Mining.

23.     On February 28, 2020, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2019 Financial Results." Therein, the Company, in relevant part, stated:

> Icahn Enterprises L.P. (NASDAQ:IEP) is reporting fourth quarter 2019 revenues of $2.6 billion and net loss attributable to Icahn Enterprises of $157 million, or $0.74 per depositary unit, including a loss from continuing operations of $149 million, or $0.70 per depositary unit. For the three months ended December 31, 2018, revenues were $2.8 billion and net income attributable to Icahn Enterprises was $930 million, or $8.01 per depositary unit, including a loss from continuing operations of $439 million, or $2.30 per depositary unit. For the three months ended December 31, 2019, Adjusted EBITDA attributable to Icahn Enterprises was $111 million compared to $(108) million for the three months ended December 31, 2018. For the three months ended December 31, 2019, Adjusted EBIT attributable to Icahn Enterprises was $22 million compared to $(188) million for the three months ended December 31, 2018.

For the year ended December 31, 2019 revenues were $9.0 billion and net loss attributable to Icahn Enterprises was $1.1 billion, or $5.38 per depositary unit, including a loss from continuing operations of $1.1 billion, or $5.23 per depositary unit. For the year ended December 31, 2018, revenues were $11.8 billion and net income attributable to Icahn Enterprises was $1.5 billion, or $11.33 per depositary unit, including a loss from continuing operations of $238 million, or $1.29 per depositary unit. For the year ended December 31, 2019, Adjusted EBITDA attributable to Icahn Enterprises was $(462) million compared to $557 million for the year ended December 31, 2018. For the year ended December 31, 2019, Adjusted EBIT attributable to Icahn Enterprises was $(818) million compared to $224 million for the year ended December 31, 2018.

For the year ended December 31, 2019, indicative net asset value decreased to $7.07 billion compared to $8.15 billion as of December 31, 2018.

On February 26, 2020, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 28, 2020 to depositary unitholders of record at the close of business on March 20, 2020. Depositary unitholders will have until March 17, 2020 to make an election to receive either cash or additional depositary units; if a unitholder does not make an election, it will automatically be deemed to have elected to receive the distribution in cash. Depositary unitholders who elect to receive additional depositary units will receive units valued at the volume weighted average trading price of the units on NASDAQ during the 5 consecutive trading days ending April 24, 2020. No fractional depositary units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive depositary units. Any unitholders that would only be eligible to receive a fraction of a depositary unit based on the above calculation will receive a cash payment.

24.     On February 26, 20121, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2020 Financial Results." Therein, the Company, in relevant part, stated:

Icahn Enterprises L.P. (Nasdaq:IEP) is reporting fourth quarter 2020 revenues of $2.8 billion and net income attributable to Icahn Enterprises of $146 million, or $0.61 per depositary unit. For the three months ended December 31, 2019, revenues were $2.6 billion and net loss attributable to Icahn Enterprises was $157 million, or a loss of $0.74 per depositary unit, including a loss of $149 million from continuing operations, or a loss of $0.70 per depositary unit. For the three months ended December 31, 2020, Adjusted EBITDA attributable to Icahn Enterprises was $420 million compared to $111 million for the three months ended December 31, 2019. For the three months ended December 31, 2020, Adjusted EBIT attributable to

Icahn Enterprises was $328 million compared to $22 million for the three months ended December 31, 2019.

For the year ended December 31, 2020, revenues were $6.1 billion and net loss attributable to Icahn Enterprises was $1.7 billion, or a loss of $7.33 per depositary unit. For the year ended December 31, 2019, revenues were $9.0 billion and net loss attributable to Icahn Enterprises was $1.1 billion, or a loss of $5.38 per depositary unit, including a loss of $1.1 billion from continuing operations, or $5.23 per depositary unit. For the year ended December 31, 2020, Adjusted EBITDA attributable to Icahn Enterprises was $(738) million compared to $(462) million for the year ended December 31, 2019. For the year ended December 31, 2020, Adjusted EBIT attributable to Icahn Enterprises was $(1.1) billion compared to $(818) million for the year ended December 31, 2019.

On February 24, 2021, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 28, 2021 to depositary unitholders of record at the close of business on March 26, 2021. Depositary unitholders will have until April 16, 2021 to make an election to receive either cash or additional depositary units; if a holder does not make an election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units on Nasdaq during the 5 consecutive trading days ending April 23, 2021. No fractional depositary units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any holders electing to receive depositary units. Any holders that would only be eligible to receive a fraction of a depositary unit based on the above calculation will receive a cash payment. For distributions declared by the Board in prior quarters, the default election (for holders that did not make an election) was a cash distribution. The default election (for holders that do not make an election) for the distribution to be paid on or about April 28, 2021 will be a distribution paid in additional depository units, a change from prior quarters.

25.    On February 25, 2022, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2021 Financial Results." Therein, the Company, in relevant part, stated:

Icahn Enterprises L.P. (Nasdaq: IEP) is reporting fourth quarter 2021 revenues of $2.3 billion and net loss attributable to Icahn Enterprises of $396 million, or a loss of $1.72 per depositary unit. For the three months ended December 31, 2020, revenues were $2.8 million and net income attributable to Icahn Enterprises was $146 million, or $0.61 per depositary unit. For the three months ended December

31, 2021, Adjusted EBITDA attributable to Icahn Enterprises was ($443) million compared to $423 million for the three months ended December 31, 2020.

For the year ended December 31, 2021, revenues were $11.3 billion and net loss attributable to Icahn Enterprises was $518 million, or a loss of $2.32 per depositary unit. For the year ended December 31, 2020, revenues were $6.1 billion and net loss attributable to Icahn Enterprises was $1.7 billion, or a loss of $7.33 per depositary unit. For the year ended December 31, 2021, Adjusted EBITDA attributable to Icahn Enterprises was $273 million compared to ($735) million for the year ended December 31, 2020.

The full-year 2021 results were negatively impacted by losses of $1.3 billion on IEP's Investment segment short positions (used to hedge our long positions). Other losses included $435 million of RINs expense and $205 million of Automotive transformation losses and inventory write-downs.

For the twelve months ended December 31, 2021, indicative net asset value increased by $1.6 billion to $5.1 billion despite the headwinds mentioned above. The change in indicative net asset value includes, among other things, changes in the fair value of certain subsidiaries which are not included in our GAAP earnings reported above. In addition, in the third and fourth quarters of 2021, we revised how we estimate the fair value of our Automotive segment's owned real estate to reflect the improvement of its real estate leasing operations and its Services business to reflect current market multiples which better reflects the fair value of the assets, both of which contributed to the positive change in indicative net asset value.

On February 23, 2022, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 27, 2022, to depositary unitholders of record at the close of business on March 18, 2022. Depositary unitholders will have until April 14, 2022, to make a timely election to receive either cash or additional depositary units. If a unitholder does not make a timely election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or who are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units during the five consecutive trading days ending April 22, 2022. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive (or who are deemed to have elected to receive) depositary units.

26.     On February 24, 2023, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter 2022 Financial Results." Therein, the Company, in relevant part, stated:

Icahn Enterprises L.P. (Nasdaq:IEP) is reporting revenues of $14.1 billion and net loss attributable to Icahn Enterprises of $183 million, or $0.57 per depositary unit, for the twelve months ended December 31, 2022. For the twelve months ended December 31, 2021, revenues were $11.3 billion and net loss attributable to Icahn Enterprises was $518 million, or $2.32 per depositary unit. Adjusted EBITDA attributable to Icahn Enterprises was $758 million for the twelve months ended December 31, 2022, compared to $273 million for the twelve months ended December 31, 2021.

Fourth quarter 2022 revenues were $3.1 billion and net loss attributable to Icahn Enterprises was $255 million, or a loss of $0.74 per depositary unit. For the three months ended December 31, 2021, revenues were $2.3 billion and net loss attributable to Icahn Enterprises was $396 million, or a loss of $1.72 per depositary unit. For the three months ended December 31, 2022, Adjusted EBITDA attributable to Icahn Enterprises was a loss of $54 million compared to a loss of $443 million for the three months ended December 31, 2021.

For the twelve months ended December 31, 2022, indicative net asset value increased by $522 million to $5.6 billion. The change in indicative net asset value includes, among other things, changes in the fair value of certain subsidiaries which are not included in our GAAP earnings reported above.

On February 22, 2023, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 19, 2023, to depositary unitholders of record at the close of business on March 13, 2023. Depositary unitholders will have until April 6, 2023, to make a timely election to receive either cash or additional depositary units. If a unitholder does not make a timely election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or who are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units during the five consecutive trading days ending April 14, 2023. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive (or who are deemed to have elected to receive) depositary units.

27.     The above statements identified in ¶¶ 21-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Icahn Enterprises was inflating its net asset value; (2) that the Company was using money taken in from new investors to pay out dividends to old investors; (3) that, as a result, the Company would become

the subject of criminal and/or regulatory scrutiny; and (4) that as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

28.     May 2, 2023, Hindenburg Research published a report alleging, among other things, that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." The report also claimed that the Company operates a "ponzi-like economic structure" and "has been using money taken in from new investors to pay out dividends to old investors." In greater part, the report stated:

> Icahn Enterprises (IEP) is an ~$18 billion market cap holding company run by corporate raider and activist investor Carl Icahn, who, along with his son Brett, own approximately 85% of the company.
>
> ***Our research has found that IEP units are inflated by 75%+ due to 3 key reasons: (1) IEP trades at a 218% premium to its last reported net asset value (NAV), vastly higher than all comparables (2) we've uncovered clear evidence of inflated valuation marks for IEP's less liquid and private assets (3) the company has suffered additional performance losses year to date following its last disclosure.***
>
> Most closed-end holding companies trade around or at a discount to their NAVs. For comparison, vehicles run by other star managers, like Dan Loeb's Third Point and Bill Ackman's Pershing Square, trade at discounts of 14% and 35% to NAV, respectively.
>
> We further compared IEP to all 526 U.S.-based closed end funds (CEFs) in Bloomberg's database. Icahn Enterprises' premium to NAV was higher than all of them and more than double the next highest we found.
>
> A reason for IEP's extreme premium to NAV, based on a review of retail investor-oriented media, is that average investors are attracted to (a) IEP's large dividend yield and (b) the prospect of investing alongside Wall Street legend Carl Icahn. Institutional investors have virtually no ownership in IEP.
>
> Icahn Enterprises' current dividend yield is ~15.8%, making it the highest dividend yield of any U.S. large cap company by far, with the next closest at ~9.9%.

As a result of the company's elevated unit price, its annual dividend rate equates to an absurd 50.5% of last reported indicative net asset value.

The company's outlier dividend is made possible (for now) because Carl Icahn owns roughly 85% of IEP and has been largely taking dividends in units (instead of cash), reducing the overall cash outlay required to meet the dividend payment for remaining unitholders.

The dividend is entirely unsupported by IEP's cash flow and investment performance, which has been negative for years. IEP's investment portfolio has lost ~53% since 2014. The company's free cash flow figures show IEP has cumulatively burned ~$4.9 billion over the same period.

Despite its negative financial performance, IEP has raised its dividend 3 times since 2014. IEP's most recent dividend increase came in 2019, when it raised quarterly distributions from $1.75 to $2.00 per unit. IEP's free cash flow was negative $1.7 billion in the same year.

Given that the investment and operating performance of IEP has burned billions in capital, the company has been forced to support its dividend using regular open market sales of IEP units through at-the-market (ATM) offerings, totaling $1.7 billion since 2019.

***In brief, Icahn has been using money taken in from new investors to pay out dividends to old investors. Such ponzi-like economic structures are sustainable only to the extent that new money is willing to risk being the last one "holding the bag".***

Supporting this structure is Jefferies, the only large investment bank with research coverage on IEP. It has continuously placed a "buy" rating on IEP units. In one of the worst cases of sell-side research malpractice we've seen, Jefferies' research assumes in all cases, even in its bear case, that IEP's dividend will be safe "into perpetuity", despite providing no support for that assumption.

Since 2019, one bank has run all of IEP's $1.7 billion in ATM offerings: Jefferies. In essence, Jefferies is luring in retail investors through its research arm under the guise of IEP's 'safe' dividend, while also selling billions in IEP units through its investment banking arm to support the very same dividend.

***Adding to evidence of IEP's unsustainability, we estimate that IEP's last reported indicative year-end NAV of $5.6 billion is inflated by at least 22%, due to a combination of overly aggressive marks on IEP's less liquid/private investments and continued year to date underperformance.***

***In one example, IEP owns 90% of a publicly traded meat packaging business that it valued at $243 million at year-end. The company had a market value of only $89 million at the time. In other words, IEP marked the value of its public company equity holdings 204% above the prevailing public market price.***

13

The mark is even more irregular given that IEP bought over a million shares of the company in December before immediately writing up the value of those shares by ~194% in the same month.

***In another instance, IEP marked its "Automotive Parts" division at $381 million in December 2022. Its key subsidiary declared bankruptcy a month later.***

IEP reported $455 million in "real estate holdings" in its most recent quarter. The reported values in this segment have been remarkably stable for years despite declining net income and despite including (i) the Trump Plaza in Atlantic City, which was razed to the ground in 2021; (ii) a country club that became nearly insolvent in 2020 before ownership reverted to its members in 2021; and (iii) a lack of transparency on other assets and valuations.

***The irregular valuation marks fit a pattern: In January of 2020, UBS dropped coverage of IEP citing a "lack of transparency" following its research showing marks that were "divergent from their public market values", among other issues.***

Beyond aggressive marks, Icahn's liquid portfolio has continued to generate losses. Our analysis of Icahn's latest December 2022 13-F filing indicates that IEP's long holdings have lost ~$471 million in value year to date, despite the S&P gaining ~9.2% in the same time frame.

IEP disclosed that its investment fund had a 47% notional short bet in its December 2022 filings. Given the positive market performance, we estimate this short bet has contributed at least a further $272 million in year-to-date losses.

***Overall, we estimate IEP's current NAV as being closer to $4.4 billion, or 22% lower than its disclosed year-end indicative NAV of $5.6 billion. The analysis suggests that units currently trade at a 310% premium to NAV, with an annual dividend rate of 64% of NAV.***

Tightening matters further, IEP is highly levered, with $5.3 billion in Holdco debt and maturities of $1.1 billion, $1.36 billion, and $1.35 billion due in 2024, 2025, and 2026, respectively.

IEP's debt covenants limit the company's financial flexibility: IEP is not permitted to incur additional indebtedness and is only allowed to refinance old debt. With interest rates having increased, IEP will need to pay significantly higher interest expenses on future refinancings.

Carl Icahn's ownership in IEP comprises about 85% of his overall net worth, according to Forbes, giving him limited room to maneuver with his own outside capital. We have assessed that Icahn has little ability or reason to bail out IEP with a capital injection, particularly at such elevated unit prices.

Further underscoring Icahn's limited financial flexibility, he has pledged 181.4 million units, ~60% of his IEP holdings, for personal margin loans. Margin loans are a risky form of debt often reliant on high share (or unit) prices.

Icahn has not disclosed basic metrics around his margin loans like loan to value (LTV), maintenance thresholds, principal amount, or interest rates. We think unitholders deserve this information in order to understand the risk of margin calls should IEP unit prices revert toward NAV, a reality we see as inevitable.

Given limited financial flexibility and worsening liquidity, we expect Icahn Enterprises will eventually cut or eliminate its dividend entirely, barring a miracle turnaround in investment performance.

Overall, we think Icahn, a legend of Wall Street, has made a classic mistake of taking on too much leverage in the face of sustained losses: a combination that rarely ends well.

(Emphasis added.)

29.    On this news, Icahn Enterprises' share price fell $10.06 per share, or 20%, to close at $40.36 per share on May 2, 2023.

30.    Then, on May 10, 2023, before the market opened, Icahn Enterprises filed its Quarterly Report on Form 10-Q with the SEC for the period ended March 31, 2023. Therein, the Company stated that the U.S. Attorney's office for the Southern District of New York contacted Icahn Enterprises on May 3, 2023 seeking production of information relating to the Company, certain of its affiliates' "corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials." The Company claimed it is "cooperating with the request" and is "providing documents in response to the voluntary request for information." In greater part, the Company stated:

The U.S. Attorney's office for the Southern District of New York contacted Icahn Enterprises L.P. on May 3, 2023 seeking production of information relating to it and certain of its affiliates' corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials. We are cooperating with the request and are providing documents in response to the voluntary request for information. The U.S. Attorney's office has not made any claims or allegations against us or Mr. Icahn with respect to the foregoing inquiry. We believe that we maintain a strong compliance program and,

while no assurances can be made and we are still evaluating the matter, we do not currently believe this inquiry will have a material impact on our business, financial condition, results of operations or cash flows.

31.    In the same quarterly report, Icahn Enterprises reported a $226 million charge related to Auto Plus, which Hindenburg had identified as an overvalued holding:

> With respect to our Automotive segment, we have invested significant resources in various initiatives to remain competitive and stimulate growth. Despite these efforts, in January 2023, Auto Plus filed the Chapter 11 Cases in Bankruptcy Court. As a result of this filing, the Company has determined that it no longer controls Auto Plus and has deconsolidated its investment in Auto Plus effective as of January 31, 2023 resulting in a non-cash charge of $226 million recorded in the three months ended March 31, 2023 and determined that our remaining equity investment in Auto Plus is now worth $0.

32.    On this news, Icahn Enterprises' share price fell $5.75 per share, or 15.1%, to close at $32.22 per share on May 10, 2023.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Icahn Enterprises securities between August 2, 2018 and May 9, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Icahn Enterprises' shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Icahn Enterprises shares were traded

publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Icahn Enterprises or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Icahn Enterprises; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

39.     The market for Icahn Enterprises' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Icahn Enterprises' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Icahn Enterprises' securities relying upon the integrity of the market price of the Company's securities and market information relating to Icahn Enterprises, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Icahn Enterprises' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Icahn Enterprises' business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Icahn Enterprises' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants'

materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.    During the Class Period, Plaintiff and the Class purchased Icahn Enterprises' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Icahn Enterprises, their control over, and/or receipt and/or modification of Icahn Enterprises' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Icahn Enterprises, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Icahn Enterprises' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Icahn Enterprises' securities traded at artificially inflated prices during the Class Period. On August 8, 2018, the Company's share price closed at a Class Period high of $79.48 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Icahn Enterprises' securities and market information relating to Icahn Enterprises, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Icahn Enterprises' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Icahn Enterprises' business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Icahn Enterprises and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Icahn Enterprises' securities was an efficient market for the following reasons, among others:

(a)      Icahn Enterprises shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, Icahn Enterprises filed periodic public reports with the SEC and/or the NASDAQ;

(c)      Icahn Enterprises regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      Icahn Enterprises was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.    As a result of the foregoing, the market for Icahn Enterprises' securities promptly digested current information regarding Icahn Enterprises from all publicly available sources and reflected such information in Icahn Enterprises' share price. Under these circumstances, all purchasers of Icahn Enterprises' securities during the Class Period suffered similar injury through their purchase of Icahn Enterprises' securities at artificially inflated prices and a presumption of reliance applies.

49.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Icahn Enterprises who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Icahn Enterprises' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Icahn Enterprises' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Icahn Enterprises' financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Icahn Enterprises' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Icahn Enterprises and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Icahn Enterprises' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Icahn Enterprises' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Icahn Enterprises' securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

Icahn Enterprises was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Icahn Enterprises securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.    Individual Defendants acted as controlling persons of Icahn Enterprises within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Icahn Enterprises and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 11, 2023

Respectfully submitted,

*/s/ Leo W. Desmond*
Leo W. Desmond, Esquire
Florida Bar Number 0041920
**DESMOND LAW FIRM, P.C.**
601 21st Street, Suite 300
Vero Beach, Florida 32960
Telephone: 772-231-9600
Email: lwd@desmondlawfirm.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160
Email: rprongay@glancylaw.com
clinehan@glancylaw.com
prajesh@glancylaw.com

*Counsel for Plaintiff Osaneme Okaro*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*