**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case Nos. 1:23-cv-21773-MOORE-LOUIS;**
**1:23-cv-22009-ALTMAN-REID**

| |
|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>     v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br>            Defendants. |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>     v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br>            Defendants. |

**MEMORANDUM OF LAW IN SUPPORT OF COLIN OCHEL'S MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL AND LIAISON COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................................ 6

II.   MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE
CLASS ........................................................................................................................... 7

    A.    The PSLRA Standard For Appointing Lead Plaintiff ................................................ 7

    B.    Under the PSLRA, Movant Should be Appointed Lead Plaintiff .............................. 8

        1.    Movant Filed a Timely Motion ....................................................................... 8

        2.    Movant Has the Largest Financial Interest in the Relief Sought by the
Class ............................................................................................................... 9

        3.    Movant Meets Rule 23's Typicality and Adequacy Requirements .......... 10

III.  MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD
BE APPROVED ........................................................................................................... 12

CONCLUSION ....................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ...................................................................7, 8, 9

*Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................11

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
   No. 8:06-CV-T-23EAJ, 2007 WL 170556 (M.D. Fla. Jan. 18, 2007)....................................10

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................7

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ..................................................................8, 9, 10

*In re GE Sec. Litig.*,
   No. 09 Civ.1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ......................................9

*Kokkinis v. Aegean Marine Petroleum Network Inc.*,
   No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011).........................11

*Kornfield v. Opteum Inc.*,
   No. 07-14278-CIV-GRAHAM/LYNCH,
   2008 WL 11408525 (S.D. Fla. Sept. 29, 2008) .....................................................6, 7

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)....................................................................7

*Luczak v. Nat'l Beverage Corp.*,
   No. 0:18-cv-61631-KMM, 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018)...........................9, 11

*Mulvaney v. Geo Grp., Inc.*,
   No. 16-cv-81494-MIDDLEBROOKS,
   2016 WL 10519276 (S.D. Fla. Nov. 21, 2016)........................................................10

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002).........................................................................6

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................9

*Plymouth Cty. Ret. Sys. v. Carter's, Inc.*,
   No. 1:08-CV-2940-JOF, 2009 WL 692141 (N.D. Ga. Mar. 13, 2009) ....................................9

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ................................................................................................10

*Reitan v. China Mobile Games & Entm't Grp.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)........................................................................................12

*Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*,
  184 F.R.D. 688 (S.D. Fla. 1999)................................................................................................8

*In re Sunbeam Sec. Litig.*,
  No. 98-8258-CIV, 1998 WL 1990884 (S.D. Fla. Dec. 4, 1998)............................................6, 7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)........................................................................................9, 10

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................................................8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ...................................................................................................13

## Statutes

15 U.S.C. § 78u-4(a) ....................................................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 42(a) ....................................................................................................................2, 6

Fed. R. Civ. P. 23(a)(4)................................................................................................................11

Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*,
  Law360 (July 16, 2020) ...........................................................................................................15

Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex Class Litigation*,
  Bloomberg Law (July 30, 2020) ...............................................................................................15

Colin Ochel ("Movant") hereby moves this Honorable Court for an order: (1) consolidating the above-captioned actions ("Actions");[1] pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), for the entry of an order appointing Movant as Lead Plaintiff for the Action (defined below) and approving Movant's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and the law firm of Schlesinger Law Offices, P.A. (the "Schlesinger Firm") as Liaison Counsel.[2]

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of those who purchased or otherwise acquired Icahn Enterprises L.P. ("Icahn Enterprises" or the "Company," together with Carl C. Icahn, David Willetts, Ted Papapostolou, Keith Cozza, and Sunghwan Cho, the "Defendants") securities between August 2, 2018 and May 9, 2023, inclusive (the "Class Period"), which seek to recover damages caused by Defendants' violations of the Exchange Act.

---

[1] The following two Actions are pending before this Court: (1) *Okaro v. Icahn Enterprises L.P., et al.*, No. 1:23-cv-21773-KMM ("*Okaro*"), which was filed on May 11, 2023; and (2) *Levine v. Icahn Enterprises L.P., et al.*, No. 1:23-cv-22009-RKA ("*Levine*"), which was filed on May 31, 2023. The *Okaro* Action is brought on behalf of "persons and entities that purchased or otherwise acquired Icahn Enterprises securities between August 2, 2018 and May 9, 2023, inclusive . . . . pursu[ing] claims against the Defendants under the Securities Exchange Act of 1934[.]" *Okaro*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Okaro* Compl."). The *Levine* Action is brought on behalf of "persons and entities that purchased or otherwise acquired Icahn Enterprises securities between August 2, 2018 and May 9, 2023, inclusive . . . . pursu[ing] claims against the Defendants under the Securities Exchange Act of 1934[.]" *Levine*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Levine* Compl.").

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Jeffrey L. Haberman in Support of Movant's Motion for: (1) Consolidation of Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Counsel and Liaison Counsel filed herewith.

1

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $1,672,610.73, Movant, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Movant also satisfies Rule 23's typicality and adequacy requirements. Movant's claims are typical of the Class's claims because he suffered losses on his Icahn Enterprises investment as a result of Defendants' false and misleading statements. Further, Movant has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Movant is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Movant is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movant's motion should be granted in its entirety.

**FACTUAL BACKGROUND[3]**

Icahn Enterprises is a master limited partnership holding company owning subsidiaries engaged in the following operating businesses: Investment, Energy, Automotive, Food Packaging, Real Estate, Home and Fashion, and Pharma. ¶ 2. Icahn Enterprises is incorporated under the laws of Delaware with its principal executive offices located in Sunny Isles Beach, Florida. ¶ 13. The Company's Depository Units trade on the Nasdaq Global Select Market (the "NASDAQ") under the symbol "IEP." ¶ 13. Defendant Carl C. Icahn ("Icahn") and his affiliates owned approximately 85% of Icahn Enterprises' outstanding depository units as of December 31, 2022. ¶ 2.

On August 2, 2018, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Second Quarter 2018 Financial Results." ¶ 21. In the press release, the Company reported that as of June 30, 2018, the Company's indicative net asset value increased to $8.4 billion compared to $7.9 billion as of December 31, 2017. *Id*.

---

[3]      This information comes from the *Okaro* Complaint, but the *Levine* Complaint contains substantially similar information.

On February 28, 2019, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2018 Financial Results." ¶ 22. The press release reported that for the year ended December 31, 2018, the Company's indicative net asset value had increased to $8.2 billion. *Id*. The press release also reported that the Company's Board of Directors had declared a quarterly distribution of $2.00 per depository unit, or $8.00 per unit annualized. *Id*.

On February 28, 2020, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2019 Financial Results." ¶ 23. The press release reported that for the year ended December 31, 2019, the Company's indicative net asset value decreased to $7.07 billion. *Id*. The press release also reported that the Company's Board of Directors had declared a quarterly distribution of $2.00 per depository unit. *Id*.

On February 26, 2021, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2020 Financial Results." ¶ 24. The press release reported that the Company's Board of Directors had declared a quarterly distribution of $2.00 per depository unit. *Id*.

On February 25, 2022, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2021 Financial Results." ¶ 25. The press release reported that the Company's full-year 2021 financial results were negatively impacted by losses of $1.3 billion in the Company's Investment segment. *Id*. The Company also reported losses in the Company's Automotive segment. *Id*. The press release disclosed that as of December 31, 2021, the Company's indicative net asset value increased to $5.1 billion. *Id*. It further announced that the Company's Board of Directors had declared a quarterly distribution of $2.00 per depository unit. *Id*.

On February 24, 2023, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2022 Financial Results." ¶ 26. The press release reported that as of December 31, 2022, the Company's indicative net asset value had increased to $5.6 billion. *Id*. The press release also reported that the Company's Board of Directors had declared a quarterly distribution of $2.00 per depository unit. *Id*.

The Complaints allege that Defendants' statements were materially false and misleading and failed to disclose material adverse facts about the Company's business and operations. ¶ 27. Specifically, Defendants failed to disclose to investors that: (1) that Icahn Enterprises was inflating its net asset value; (2) that the Company was using money taken in from new investors to pay out dividends to old investors; (3) that, as a result, the Company could become the subject of criminal and/or regulatory scrutiny; and (4) that as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or lacked a reasonable basis. *Id*.

The truth began to emerge on May 2, 2023, when Hindenburg Research published a report alleging, among other things, that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." ¶ 28. The report went on to allege that the Company's units were inflated by more than 75%. *Id*. The report further alleged that the Company had been using money taken from new investors to pay dividends to old investors. *Id*. On this news, the Company's share price fell 20%. ¶ 29.

Then, on May 10, 2023, the Company filed its Quarterly Report on Form 10-Q with the SEC for the period ended March 31, 2023. ¶ 30. The Company stated that the U.S. Attorney's Office for the Southern District of New York contacted the Company on May 3, 2023, seeking production of information related to the Company and certain of its affiliates. *Id*. The Company

5

stated that it was cooperating with the request. *Id*. The same report disclosed that the Company had reported a $226 million charge related to Auto Plus, one of the holdings identified as overvalued by Hindenburg Research. ¶ 31. On this news, the Company's share price declined 15.1%. ¶ 32.

Through the Actions, Movant seeks to recover for himself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

<b>ARGUMENT</b>

## I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *In re Sunbeam Sec. Litig.*, No. 98-8258-CIV, 1998 WL 1990884, at *2 (S.D. Fla. Dec. 4, 1998); *Kornfield v. Opteum Inc.*, No. 07-14278-CIV-GRAHAM/LYNCH, 2008 WL 11408525, at *2 (S.D. Fla. Sept. 29, 2008).

The *Okaro* and *Levine* Actions at issue here clearly involve common questions of fact and law. These Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements that artificially inflated the price of Icahn Enterprises securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the *Okaro* and *Levine* Actions is therefore appropriate. *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The class actions currently before the Court are ideally

6

situated for consolidation.  The complaints present virtually identical claims for relief based upon a single course of conduct during the Class Period."); *Sunbeam*, 1998 WL 1990884, at *2 ("Consolidation of related complex actions, and securities cases in particular, is commonplace and an effective use of judicial resources."); *Kornfield*, 2008 WL 11408525, at *2.

## II.  MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.  The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)

(describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

**B.      Under the PSLRA, Movant Should be Appointed Lead Plaintiff**

As discussed below, Movant should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Movant holds the largest financial interest of any movant, and Movant otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.      Movant Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Osaneme Okaro published notice of the lead plaintiff deadline via *Business Wire* on May 11, 2023. *See* Ex. A; *see Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*, 184 F.R.D. 688, 692 (S.D. Fla. 1999) (finding publication in Business Wire sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before July 10, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movant's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movant timely signed and submitted the requisite certification, identifying all of his relevant Icahn Enterprises trades

8

during the Class Period, and detailing Movant's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

### 2. Movant Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Luczak v. Nat'l Beverage Corp.*, No. 0:18-cv-61631-KMM, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018); *Plymouth Cty. Ret. Sys. v. Carter's, Inc.*, No. 1:08-CV-2940-JOF, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009); *Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No. 09 Civ.1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Movant purchased 88,481 total IEP shares, expended $1,626,509.08 in net funds and suffered losses of $1,672,610.73 attributable to the fraud. *See* Ex.

C. Movant is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.      Movant Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Mulvaney v. Geo Grp., Inc.*, No. 16-cv-81494-MIDDLEBROOKS, 2016 WL 10519276, at *2 (S.D. Fla. Nov. 21, 2016) ("[A]t the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate.").

Typicality is established where each class member's claim share "the same essential characteristics as the claims of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278-79 n.14 (11th Cir. 2000). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

Movant's claims are clearly typical of the Class's claims. Movant purchased Icahn Enterprises securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Icahn Enterprises and certain of its officers under the federal securities laws. Because the factual and legal bases of Movant's claims are similar to those of the Class's claims, Movant necessarily satisfies the typicality requirement. *See Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, No. 8:06-CV-T-23EAJ, 2007 WL 170556, at *3 (M.D. Fla. Jan. 18, 2007) (typicality satisfied where members of proposed lead plaintiff group "purchased Jabil shares during the class period

10

in reliance on allegedly false and misleading statements issued by Defendants and suffered financial losses allegedly due to Defendants' conduct.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Luczak*, 2018 WL 9847842, at *2 ("To satisfy the adequacy requirement, Luczak must make a preliminary showing that (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy" (quoting *Miller v. Dyadic Intl'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008)).

As evidenced by the representations in his certification, *see* Ex. B, Movant's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (same). Contemporaneously with the filing of the instant motion, Mr. Ochel has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Movant is a U.S. citizen residing in New Jersey. *See* Ex. D. He has a Bachelor of Fine Arts degree from Syracuse and currently works as a self-employed consultant and recently served as

11

Lead UX/UI Strategist / Architect / Product Designer for New York Life.   He has been investing for approximately twenty-five years and manages his own investments. *Id*.

Movant has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Movant is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Movant respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

### III.   MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movant has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.") (citation omitted). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement);

*Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re: Revolution Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No.

CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of United Health Group Inc. and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (where, as sole lead counsel for the class, the firm obtained final approval of $712,500 settlement); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In re Lumen Techs., Inc. Sec. Litig.*, No. 3:23-CV-00286-TAD-KDM (W.D. La.) (appointed co-lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.) (appointed sole lead counsel for the class); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *In re Tahoe*

14

*Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[4] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[5] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

The Schlesinger Firm, liaison counsel, is similarly experienced in complex civil litigation. *See* https://www.schlesingerlawoffices.com/. The firm has a demonstrated track record of involvement in high-profile actions. The Schlesinger Firm has been repeatedly recognized by

---

[4]      *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[5]      *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

their peers and the courts and has served in a variety of counsel roles. The firm's knowledge of the Court will benefit Movant and the Class in a positive way.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the related Actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the Faruqi Firm as Lead Counsel and the Schlesinger Firm as Liaison Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  July 10, 2023                                    Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
        Jonathan R. Gdanski (FL. Bar No. 32097)
        Jeffrey L. Haberman (FL. Bar No. 98522)

**SCHLESINGER LAW OFFICES, P.A.**
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:  Jonathan@schlesingerlawoffices.com
        JHaberman@schlesingerlawoffices.com

James M. Wilson, Jr. (*pro hac vice* forthcoming)
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and
[Proposed] Lead Counsel for the putative Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: */s/ Jeffrey L. Haberman*
Jeffrey L. Haberman (FL. Bar No. 98522)

17