**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| OSANEME OKARAO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br> Defendants. | No. 1:23-cv-21773-KMM |
| MICHAEL LEVINE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br> Defendants. | No. 1:23-cv-22009-KMM |

**MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BRETT MORRIS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page:**

MOTION..................................................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................................ 2

   I.  PRELIMINARY STATEMENT ...................................................................................... 2

   II.  PROCEDURAL BACKGROUND................................................................................... 3

   III. FACTUAL BACKGROUND.......................................................................................... 4

   IV. ARGUMENT .................................................................................................................. 6

      A.  The Court Should Consolidate the Related Actions ............................................. 6

      B.  Mr. Morris is the Presumptive "Most Adequate Plaintiff" and
         the Court Should Appoint Him Lead Plaintiff...................................................... 7

         1.  Mr. Morris Filed a Timely and Procedurally Complete
            Motion for Lead Plaintiff.......................................................................... 8

         2.  Mr. Morris Has the Largest Known Financial Interest
            in the Relief Sought .................................................................................. 9

         3.  Mr. Morris "Otherwise Satisfies" the *Prima Facie*
            Requirements of Rule 23 .......................................................................... 9

      C.  Mr. Morris's Claims are Typical of the Claims of All Class Members........................... 10

      D.  Mr. Morris Will Adequately Represent the Class................................................. 10

      E.  The Court Should Approve Mr. Morris's Choice of Counsel ......................................... 11

   V.  CONCLUSION............................................................................................................... 12

CERTIFICATE REGARDING GOOD FAITH CONFERENCE................................................ 12

<u>**TABLE OF AUTHORITIES**</u>

**Page(s):**

**Cases**

*Brustein v. Lampert*,
    No. 04-cv-61159, 2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) .............................. 9

*In re Sunbeam Sec. Litig.*,
    No. 98-cv-8258, 1998 U.S. Dist. LEXIS 21490 (S.D. Fla. Dec. 4, 1998) .............................. 6, 7

*Mulvaney v. GEO Group, Inc.*,
    No. 16-cv-81494, 2016 U.S. Dist. LEXIS 193402 (S.D. Fla. Nov. 18, 2016)......................... 11

*Newman v. Eagle Bldg. Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002) ............................................................................................ 6

*Nghiem Tran v. Erba Diagnostics, Inc.*,
    No. 15-cv-24440, 2016 U.S. Dist. LEXIS 186864 (S.D. Fla. Apr. 8, 2016) .............................. 9

*Prado-Steinman ex rel. Prado v. Bush*,
    22 F.3d 1266 (11th Cir. 2000)............................................................................................... 10

*Sherleigh Associates, LLC v. Windmere-Durable Holdings, Inc.*,
    184 F.R.D. 688 (S.D. Fla. 1999) ............................................................................................ 7

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    No. 14-cv-20880, 2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016)............................. 9

**Statutes**

15 U.S.C. § 78u-4(a)(1) ................................................................................................................. 7

15 U.S.C. § 78u-4(a)(2)(A)............................................................................................................ 8

15 U.S.C. §78u-4(a)(3)(B) ...................................................................................................... passim

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Third) § 20.123 (1995)........................................................ 6

**Rules**

Fed. R. Civ. P. 23(a)(3)................................................................................................................. 10

Fed. R. Civ. P. 23(a)(4)................................................................................................................. 10

Fed. R. Civ. P. 6............................................................................................................................ 8

**MOTION**

Brett Morris ("Movant" or "Mr. Morris"), by and through his counsel, will and does hereby move this Court, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure Rule 42 ("Rule 42") for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Mr. Morris as Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Icahn Enterprises L.P. ("Icahn Enterprises" or the "Company") securities between August 2, 2018 and May 9, 2023, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Lead Plaintiff's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class.

## MEMORANDUM OF LAW

Mr. Morris respectfully submits this Memorandum of Law in support of his motion to: (1) consolidate the Related Actions against Icahn Enterprises and other related Defendants; (2) appoint Mr. Morris as Lead Plaintiff in the Consolidated Action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act ("PLSRA"); (3) approve Mr. Morris's selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

## I.    PRELIMINARY STATEMENT

The PSLRA provides that a court must appoint as lead plaintiff of a securities class action the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i). Mr. Morris is the most adequate plaintiff in this matter because he timely moved to be lead plaintiff, has the largest financial interest in the litigation, and otherwise satisfies the representative requirements set forth in Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). For the reasons summarized herein and discussed more fully below, Mr. Morris's Motion should be approved in its entirety.

Mr. Morris fully understands his duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification and Loss Chart attached to the Declaration of C. Mark Whitehead III in Support of Mr. Moriss's Motion to Consolidate Related Actions, Be Appointed Lead Plaintiff, and to Approve Proposed Lead Plaintiff's Selection of Counsel ("Whitehead Decl.") at Exhibit A (Morris PSLRA Certification) and Exhibit B (Morris Loss Chart), Mr. Morris has suffered substantial losses as a result of his purchases of Icahn Enterprises securities between August 2, 2018 and May 9, 2023, inclusive (the "Class Period"). *See* Whitehead Decl. at Ex. A, Ex. B. To the best of his knowledge, Mr. Morris has sustained the largest losses of any investor(s) seeking to be appointed Lead Plaintiff.

2

In addition to evidencing the largest financial interest in the outcome of this litigation, Mr. Morris's Declaration, submitted herewith, demonstrates his intent to serve as Lead Plaintiff in this matter, including his cognizance of the duties of serving in that role. *See* Whitehead Decl. at Exhibit D (Morris Declaration). Moreover, Mr. Morris satisfies both the applicable requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 23 of the Federal Rules of Civil Procedure.

Accordingly, Mr. Morris respectfully submits this memorandum of law in support of his motion, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), for an Order: (1) consolidating the Related Actions; (2) appointing Movant as Lead Plaintiff in the Consolidated Action; and (3) approving his selection of KSF as Lead Counsel for the Class.

## II.   PROCEDURAL BACKGROUND

The first lawsuit against Defendants, *Osaneme Okaro v. Icahn Enterprises L.P. et al.*, No. 1:23-cv-21773-KMM (the "*Okaro* Action"), was filed in the Southern District of Florida on May 11, 2023. Pursuant to 15 U.S.C § 78u-4(a)(3)(A)(i), that same day, the first notice that a class action had been initiated against Defendants was published over *Business Wire*, a widely circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than July 10, 2023. *See* Whitehead Decl. at Exhibit C (Statutory Notice). Thereafter, on May 31, 2023, a second lawsuit against the same Defendants, *Michael Levine v. Icahn Enterprises L.P. et al.*, No. 1:23-cv-22009-KMM (the "*Levine* Action"), alleging similar conduct and claims as the *Okaro* Action, was filed in this District.

Mr. Morris is a Class Member who has timely filed this motion within the 60-day period following publication of the May 11, 2023 Notice. *See* Whitehead Decl. at Ex. C.

3

### III.    FACTUAL BACKGROUND[1]

Icahn Enterprises is a master limited partnership holding company owning subsidiaries with operating businesses focused on investment, energy, automotive, food packaging, real estate, home fashion, and pharmaceuticals. ¶¶ 1, 20. As of December 31, 2022, Defendant Carl C. Icahn ("Icahn") and his affiliates owned approximately 85% of Icahn Enterprises' outstanding depositary units. *Id.*

On August 2, 2018, the first day of the Class Period, the Company issued a press release disclosing the Company's financial results for the second quarter of fiscal year 2018 (the "2Q18 Earnings Release"). ¶ 21. The 2Q18 Earnings Release stated, in relevant part, that "[f]or the six months ended June 30, 2018 indicative net asset value increased to $8.4 billion compared to $7.9 billion as of December 31, 2017." *Id.* Subsequently, on February 28, 2019, the Company issued a press release disclosing the Company's financial results for the fourth quarter and fiscal year of 2018 (the "FY18 Earnings Release"). ¶ 22. The FY18 Earnings Release also stated, in relevant part, that "[f]or the year ended December 31, 2018, indicative net asset value increased to $8.2 billion compared to $7.9 billion as of December 31, 2017." *Id.* The FY18 Earnings Release further revealed that, "on February 26, 2019, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit ($8.00 per unit annualized)…." *Id.*

Defendants continued to make similar statements throughout the Class Period regarding the Company's net asset value and dividends.

---

[1] These facts were derived from the Complaint filed in the *Okaro* Action. All "¶ __" references herein are to the *Okaro* Complaint.

These and other alleged statements were materially false and/or misleading because Defendants failed to disclose material adverse facts regarding the Company's business, operations, and prospects, and specifically: (i) that Icahn Enterprises was inflating its net asset value; (ii) that the Company was using money taken in from new investors to pay out dividends to old investors; (iii) that, as a result, the Company would become the subject of criminal and/or regulatory scrutiny; and (iv) that as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

The truth began to be revealed when, on May 2, 2023, Hindenburg Research published a report alleging, among other things, that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." ¶ 28. The Hindenburg Report also claimed the Company operates a "ponzi-like economic structure" and "has been using money taken in from new investors to pay out dividends to old investors." *Id.* Importantly, the Hindenburg Report noted that "IEP marked its "Automotive Parts" division at $281 million in December 2022," but that the "key subsidiary [of that division] declared bankruptcy a month later." *Id.* On this news, Icahn Enterprises' share price fell $10.06 per share, or 20% to close at $40.36 per share on May 2, 2023. ¶ 29.

Finally, on May 10, 2023, before the market opened, Ichan Enterprises filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2023 (the "1Q23 10-Q"). ¶ 30. Therein, the Company stated that the U.S. Attorneys' Office for the Southern District of New York contacted Icahn Enterprises on May 3, 2023 seeking production of information related to the Company and certain of its affiliates' "corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials." *Id.* The 1Q23 10-Q further reported a $226 million charge related to Auto Plus, which Hindenburg had identified as

an overvalued holding. ¶ 31. On this news, Icahn Enterprises' share price fell $5.75 per share, or 15.1%, to close at $32.22 per share on May 10, 2023. ¶ 32.

## IV.     ARGUMENT

### A.     The Court Should Consolidate the Related Actions

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a), "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also* MANUAL FOR COMPLEX LITIGATION (Third) § 20.123 (1995); *In re Sunbeam Sec. Litig.*, No. 98-cv-8258, 1998 U.S. Dist. LEXIS 21490, at *8 (S.D. Fla. Dec. 4, 1998) (consolidating actions "alleg[ing] substantially similar claims that share common questions of fact and law").

The *Okaro* and *Levine* Actions, both pending before the United States District Court for the Southern District of Florida, make substantially similar allegations on behalf of Icahn Enterprises investors. The Related Actions were brought against Icahn Enterprises and certain of its officers and directs in connection with alleged violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Icahn Enterprises' securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The class actions currently before the Court are ideally situated for consolidation. The

complaints present virtually identical claims for relief based upon a single course of conduct during the Class Period."); *Sunbeam*, 1998 U.S. Dist. LEXIS 21490, at *7-*8 ("Consolidation of related complex actions, and securities cases in particular, is commonplace and an effective use of judicial resources.").

In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

### B. Mr. Morris is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint Him Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i);.

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court must then consider any motion made by class members and appoint as lead plaintiff that movant the Court determines to be most capable of adequately representing the interests of class members. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)  has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Sherleigh Associates, LLC v. Windmere-Durable Holdings, Inc.*, 184 F.R.D. 688, 693 (S.D. Fla. 1999).

7

Mr. Morris respectfully submits that he should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a lead plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

      1.     <u>Mr. Morris Filed a Timely and Procedurally Complete Motion for Lead Plaintiff</u>

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B). Here, notice was published on *Business Wire* on May 11, 2023, and specified that applications for appointment as Lead Plaintiff were to be made no later than July 10, 2023. *See* Whitehead Decl. at Ex. C.

In light of the fact that the original notice was published on May 11, 2023, the appropriate deadline for application to be lead plaintiff is July 10, 2023. *See* Whitehead Decl. at Ex. C; Fed. R. Civ. P. 6. Mr. Morris has therefore timely filed his motion. Moreover, with that motion, Mr. Morris has signed and submitted the required Certification in which he certifies his trading history during the Class Period and confirms his willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. § 78u-4(a)(2)(A). *See* Whitehead Decl. at Ex. A. Additionally, Mr. Morris has executed a Declaration detailing, *inter alia*, his biographical information, professional credentials, and investment experience. *See* Whitehead

Decl. at Ex. D. Accordingly, Mr. Morris has filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the statutory requirements.

    2.  <u>Mr. Morris Has the Largest Known Financial Interest in the Relief Sought</u>

During the Class Period, as evidenced by the accompanying signed Certification, Mr. Morris purchased Icahn Enterprises securities in reliance upon Defendants' materially false and misleading statements and omissions and was injured thereby. *See* Whitehead Decl. at Ex. A. In addition, Mr. Morris incurred a substantial loss on his transactions in Icahn Enterprises securities. *See* Whitehead Decl. at Ex. B. To the best of his knowledge, Mr. Morris thus has the largest financial interest in the relief sought. Therefore, Mr. Morris satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in the Related Actions and should be appointed Lead Plaintiff pursuant to and 15 U.S.C. § 78u-4(a)(3)(B).

    3.  <u>Mr. Morris "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23</u>

In addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate. *See, e.g.*, *Brustein v. Lampert*, No. 04-cv-61159, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005); *Nghiem Tran v. Erba Diagnostics, Inc.*, No. 15-cv-24440, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016); *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 33637, at *18 (S.D. Fla. Mar. 16, 2016). That *prima facie* determination should be based on the information the movant has provided in its pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. Here, Mr. Morris easily satisfies these minimal, *prima facie* requirements.

**C.      Mr. Morris's Claims are Typical of the Claims of All Class Members**

Under Federal Rule of Civil Procedure 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims have the "same essential characteristics as the claims of the class at large." *See Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000).

In this case, the typicality requirement is met because Mr. Morris's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. Mr. Morris and all the other Class Members: (1) purchased Icahn Enterprises securities during the Class Period; (2) purchased Icahn Enterprises securities in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the unit price. Mr. Morris's claims are typical of those of other Class Members since his claims and the claims of other Class Members resulted from the same illegal practices.

**D.      Mr. Morris Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the movants to the existence of any conflicts between the interests of the movants, on the one hand, and the members of the Class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, Mr. Morris is an adequate representative of the Class. As evidenced by the injuries suffered by Mr. Morris, who purchased Icahn Enterprises securities at prices that were artificially

10

inflated by Defendants' materially false and misleading statements and was harmed when the truth was revealed and the artificial inflation was removed from the price of those securities, his interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between Mr. Morris's interests and those of the other members of the Class. Furthermore, Mr. Morris has retained competent and experienced counsel to prosecute these claims. Mr. Morris's proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Mr. Morris *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

### E.    The Court Should Approve Mr. Morris's Choice of Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiffs shall, subject to court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u4(a)(3)(B)(iii)(II)(aa); *see also Mulvaney v. GEO Group, Inc.*, No. 16-cv-81494, 2016 U.S. Dist. LEXIS 193402, at *8 (S.D. Fla. Nov. 18, 2016).

Here, Mr. Morris has selected KSF to be Lead Counsel for the Class. As reflected in its firm resume, KSF is more than qualified to work as lead counsel to prosecute the claims of the class. *See* Whitehead Decl. at Exhibit E (KSF Firm Resumé). With lawyers in Louisiana, New York, Chicago, New Jersey, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. Id.

KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions. *See* Whitehead Decl. at Ex. E, citing *Pearlstein*

11

*v. BlackBerry Limited, et al.*, No. 13-cv-7060 (S.D.N.Y.) (final approval of $165 million settlement – the fourth largest securities class action settlement of 2022 – granted after 9 years of litigation on September 29, 2022); *In re Chicago Bridge & Iron Co. N.V. Secs. Litig.*, No. 17-cv-1580 (S.D.N.Y) (final approval of $44 million settlement granted on August 2, 2022); Farrar v. Workhorse Group, et al., 21-cv-02072 (C.D. Cal.) (preliminary approval of $35 million settlement granted on February 14, 2023). KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 02-cv-1152 (N.D. Tex.), a case that resulted in a $100 million settlement after two trips to the Supreme Court on class certification issues. As these cases demonstrate, KSF possesses the requisite experience and knowledge litigating complex securities cases.

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## V.   CONCLUSION

For all of the foregoing reasons, Mr. Morris respectfully requests that this Court: (1) appoint Mr. Morris to serve as Lead Plaintiff; (3) approve his selection of KSF as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

### CERTIFICATE REGARDING GOOD FAITH CONFERENCE

Pursuant to Local Civil Rule 7.1(a)(3), counsel for Brett Morris states that they could not confer with counsel for the opposing movant(s) prior to filing the instant motion. The statutory framework of the PSLRA requires all motions seeking Lead Plaintiff appointment to be filed within sixty days of the publication of the notice of pendency of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). No such motions were filed meaningfully in advance of Mr. Morris's motion, and it was not possible to confer with counsel for the other movants to determine whether the instant motion would be opposed or to attempt to resolve the issues raised by the motion. Under

12

these circumstances, Mr. Morris respectfully requests that the conferral requirement of Local Rule 7.1(a)(3) be waived.

DATED: July 10, 2023                     Respectfully submitted,

**THE WHITEHEAD LAW FIRM, L.L.C.**

*/s/ C. Mark Whitehead III*
C. Mark Whitehead III
(FL Bar Roll #559881)
1330 West Avenue, Suite C402
Miami Beach, FL 33139
Telephone: (337) 740-6006
Facsimile: (337) 205-7754
cmw@whiteheadfirm.com

*Local Counsel for Lead Plaintiff Movant Brett Morris*

**KAHN SWICK & FOTI, LLC**

Kim E. Miller
250 Park Ave., 7th Floor
New York, NY 10177
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Brett Morris and Proposed Lead Counsel for the Class*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2023, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

/s/ C. Mark Whitehead III
C. Mark Whitehead III

14