# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | Case No. 1:23-cv-21773-KMM-LFL |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | Case No. 1:23-cv-22009-RKA-LMR |

## RESPONSE IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

011171-11/2315401 V1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..........................................................................................................1

II.   ARGUMENT................................................................................................................3

    A.    Rather than Establishing Financial Interest, Kosowsky's Deficient
         Submission Confirms His Inability to Meet Rule 23's Adequacy
         Requirement......................................................................................................4

         1.    Kosowky Failed to Supply Any Information About Himself
               or His Ability to Serve as Lead Plaintiff.......................................................4

         2.    Kosowsky Submitted an Incomplete and False Certification .....................6

    B.    Kosowsky's Unorthodox Trading Subjects Him to Disqualifying
         Unique Defenses .............................................................................................10

III.  CONCLUSION...........................................................................................................13

011171-11/2315401 V1

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*In re 21st Century Holding Co. Sec. Litig*.,
    2007 WL 9220955 ...................................................................................................................1

*In re Bally Total Fitness Sec. Litig*.,
    2005 WL 627960 (N.D. Ill. Mar. 15, 2005).........................................................................10

*In re Boeing Co. Aircraft Sec. Litig*.,
    2020 WL 476658 (N.D. Ill. 2020) ......................................................................................2, 9

*Camp v. Qualcomm Inc*.,
    2019 WL 277360 (S.D. Cal. 2019)......................................................................................2, 9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)....................................................................................................4

*In re Conseco, Inc. Sec. Litig*.,
    120 F. Supp. 2d 729 (S.D. Ind. 2000) .....................................................................................6

*Eastwood Enterprises v. Farha*,
    2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ..........................................................................1

*Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc*.,
    2007 WL 170556 (M.D. Fla. Jan. 18, 2007)............................................................................1

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ..............................................................................................4

*Galmi v. Teva Pharms. Indus*.,
    302 F. Supp. 3d 485 (D. Conn. 2017)....................................................................................11

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig*.,
    209 F.R.D. 447 (C.D. Cal. 2002) ............................................................................................5

*Gross v. AT&T Inc*.,
    2019 WL 3500496 (S.D.N.Y. July 31, 2019) ........................................................................10

*Howard v. Liquidity Servs.*,
    322 F.R.D. 103 (D.D.C. 2017)...............................................................................................11

*Karp v. Diebold Nixdorf, Inc*.,
    2019 WL 5587148 (S.D.N.Y. 2019)......................................................................................2, 9

- ii -

*In re Netflix, Inc., Sec. Litig*.,
   2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ........................................................................10

*Perez v. HEXO Corp*.,
   2020 WL 905753 (S.D.N.Y. Feb. 25, 2020 ............................................................................6

*Piven v. Sykes Enterprises, Inc*.,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) .................................................................................6

*Rodriguez v. DraftKings Inc*.,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021).....................................................................3, 12

*Schlimm v. Welbilt, Inc*,
   2019 WL 3815149 (M.D. Fla. July 3, 2019) ...........................................................................1

*Springer v. Code Rebel Corp*.,
   2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) .............................................................................4

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp*.,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...........................................................................10

*Stoopler v. Direxion Shares ETF Tr*.,
   2010 WL 3199679 (S.D.N.Y. Aug. 12, 2010).......................................................................12

*Takata v. Riot Blockchain, Inc*.,
   2018 WL 5801379 (D.N.J Nov. 6, 2018) ................................................................................4

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) ......................................................................................9

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   2007 WL 2683636 (D.N.J. Sept. 7, 2007) ..............................................................................9

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021) ...........................................................................9

- iii -

## I.      INTRODUCTION

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can ***only*** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the presumptive "most adequate plaintiff"—i.e., the presumptive Lead Plaintiff— are movants John Haworth and James Gillespie, having suffered approximately $2,556,775.64 in aggregated losses in connection with their Class Period purchases of Ichan securities as a result of the Defendants' alleged fraud (ECF No. 23-2 at p. 2), and having made a *prima facie* demonstration of their adequacy and typicality under Rule 23 (ECF No. 23).[1]

One competing movant, Philip Kosowsky ("Kosowsky"), purports to have suffered a larger loss than Haworth and Gillespie. But as explained herein, Kosowsky's faulty submissions and unorthodox trading patterns render render him atypical and inadequate, and thus ineligible for appointment irrespective of his financial interest in this litigation.

---

[1] *See In re 21st Century Holding Co. Sec. Litig*., 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007 ("aggregation of individual losses to form a small group is acceptable and derives from the language of the PSLRA"); *Schlimm v. Welbilt, Inc*, 2019 WL 3815149, at *2 (M.D. Fla. July 3, 2019) ("Further, the Court agrees that here, the aggregation of losses is appropriate to form a group of plaintiffs for purposes of lead plaintiff status."); *Eastwood Enterprises v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008) ("District courts within the Eleventh Circuit have allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff."); *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc*., 2007 WL 170556, at *2 (M.D. Fla. Jan. 18, 2007) ("The idea that plaintiffs may aggregate their losses into a group to show the largest financial interest derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person or group of persons.') (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

011171-11/2315401 V1

*First*, Kosowky has failed to make even a preliminary showing of typicality and adequacy. Kosowksy's motion neglects to provide even the most elemental information about himself beyond his PSLRA certification (ECF No. 20-1).  Moreover, Kosowsky's sworn PSLRA certification is materialy deficient. The certification fails to set forth all of Mr. Kosowsky's transactions in Icahn securities during the Class Period as the PSLRA unambiguously requires. 15 U.S.C.A. § 78u- 4(a)(2)(iv). Instead, the certification appends contradictory and confusing "First-In-First-Out" (FIFO) and "Last-In-First-Out" (LIFO) loss charts prepared by his counsel. ECF No. 20-1.  Given the loss charts' attempts to match and account for Mr. Kosowsky's sales of Icahn shares held prior to August 2, 2018, it is difficult (if not impossible) to determine the transactions Mr. Kosowsky actually made during the Class Period.

Further, the loss charts are riddled with errors of deliberate obfuscation. Mr. Kosowsky attests to having entered into at least 20 separate transactions at prices outside of the range within which Icahn shares traded on the dates in question.  Ex. 1 attached hereto.  Courts routinely deny motions on the basis of such errors, which call into question the movant's preparedness to supervise a complex securities class action and serve as a class fiduciary.[2]

*Second*, even if the Court were to look past the numerous errors and omissions in Kosowsky's initial submission, his unconventional trading strategy subjects him to unique

---

[2] *See, e.g., Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, *6 (S.D.N.Y. 2019) (finding that a movant who "provided the Court with little to go on with respect to their alleged capacity to manage this litigation" had also "exaggerated loss totals" by "some 34%" in their initial submission and delayed filing a correction); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, *2 (N.D. Ill. 2020) (noting that joint movants "provided virtually no information about" themselves, and also "revealed a curious trading history with regard to [defendant's] shares that the [movants'] 'pleadings and declarations' did nothing to explain"); *Camp v. Qualcomm Inc.*, 2019 WL 277360, *3 (S.D. Cal. 2019) (finding that a movant who "failed to include any basic details about himself" in his motion and also had "significant errors in the transaction records and loss calculations accompanying [his] motion") (internal quotation marks omitted).

011171-11/2315401 V1

defenses that make him an inappropriate lead plaintiff.  Unlike typical members of the putative

Class that he seeks to represent, Mr. Kosowsky engaged in a frenetic day trading strategy

throughout the Class Period—repeatedly purchasing blocks of Icahn shares only to then

immediately sell those shares, sometimes all within a single trading day. The volume and

frequency of these buy and sell trades demonstrate that Kosowsky (or a programmed bot

investing on his behalf) traded on daily market volatility rather than in reliance upon the

Defendants' alleged misrepresentations.[3]

Accordingly, Haworth and Gillespie respectfully submit that the Court should grant their

motion in its entirety and deny the competing motions.

## II.    ARGUMENT

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members

of the purported plaintiff class that the court determines to be most capable of adequately

representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts are to "adopt

a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a

complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief

sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class" and that "the

representative parties will fairly and adequately protect the interests of the class." 15 U.S.C.

§ 78u-4(a)(3)(B)(iii)(II).

---

[3] *See, e.g., Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *11 (S.D.N.Y. Nov. 12, 2021) (declining to appoint movant who submitted erroneous PSLRA certification and engaged in frenetic day trading).

011171-11/2315401 V1

Of the competing movants, Haworth and Gillespie claim the second-largest loss, but, unlike the movant with purportedly larger losses (Kosowsky), they have demonstrated their adequacy to represent the class. Accordingly, Haworth and Gillespie has the "largest financial interest" of the demonstrably adequate movants to represent Icahn investors.

**A.      Rather than Establishing Financial Interest, Kosowsky's Deficient Submission Confirms His Inability to Meet Rule 23's Adequacy Requirement**

A "'movant's financial interest is just a beginning point.'" *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012) [citation omitted]. "To qualify as the presumptive lead plaintiff, in addition to possessing a significant financial interest, a lead plaintiff must also 'satisf[y] the requirements of Rule 23.'" *Id.*

Importantly, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class's satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001). Rather, movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil Procedure 23." *Springer v. Code Rebel Corp.*, 2017 WL 838197, at *2 (S.D.N.Y. Mar. 2, 2017).

**1.      Kosowky Failed to Supply Any Information About Himself or His Ability to Serve as Lead Plaintiff**

A movant's failure to include facts in their moving papers detailing their adequacy "could, by itself, be a basis for denying lead plaintiff status." *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J Nov. 6, 2018). In this case, Haworth and Gillespie's declaration sets forth basic facts about themselves relevant to assessing their ability to steward this litigation. ECF No. 23-4. Gillespie has told the Court that he previously owned and operated a door company in La Grange, Texas, obtained an undergraduate degree from the University of Texas at Austin, was a Certified Public Accountant at one time, and has over 30 years of investing

- 4 -

experience. *Id*. at ¶ 4. Likewise, Mr. Haworth has told the Court that he runs a successful roofing and building supply business with locations across Central Texas and has 30 years of investment experience. *Id*. at ¶ 3. Haworth and Gillespie further detail their long-time business and personal relationship (*Id*. at ¶¶ 3-4), their experience with investing in Icahn (*id*. at ¶ 4), their due diligence and joint decision to retain counsel (*id*. at ¶¶ 4-5), their knowledge of a lead plaintiff's obligation and commitment to fulfilling these responsibilities (*id*. at ¶¶ 6-9, 12, 14), their rationale for moving jointly as lead plaintiff (¶¶ 10-11, 14), and their formulation of a decision-making structure should their motion be granted. *Id*. at ¶ 6.

In contrast, the Court knows absolutely nothing about Kosowsky or his ability to serve as lead plaintiff in this case. Kosowsky has not submitted any information explaining who he is, his age, where he lives, his educational and professional background, criminal or civil history, or his understanding of the  lead plaintiff's responsibilities. Given this dearth of information, after Kosowsky filed his motion, counsel for Haworth and Gillespie were unable to run a basic background report on Kosowsky's criminal or civil litigation history.

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig*., 209 F.R.D. 447 (C.D. Cal. 2002) is instructive here. There, the court denied the movants' lead plaintiff motion on adequacy grounds where the movants similarly provided no evidence that they were competent to serve as lead plaintiffs. The *Gemstar* Court observed:

> There is no evidence that the Gads possess the requisite sophistication to supervise this litigation. Nor is there any evidence that the Gads have the resources to supervise and participate fully in this litigation. Moreover, the court is unconvinced that the Gads appreciate the nature of the role which they seek to perform in this litigation. In their own sparse declarations, the Gads represent that they have no experience serving as lead plaintiffs in class actions within the past three years. In short, the Gads provide no briefing and proffer no declarations concerning their ability to act as lead plaintiffs.

*Id*. at 452 (internal citations omitted).

011171-11/2315401 V1

Here, like the Gads in *Gemstar*,  Kosowsky has failed to supply any information about his ability to perform the role of lead plaintiff diligently and effectively. Accordingly, the Court should deny Kosowsky's motion on this ground alone. *See also, Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom.* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) (denying lead plaintiff motion "given Wong's failure to provide any information regarding his experience in his preliminary motion, the Court questions whether Wong will meaningfully oversee and control the prosecution of this consolidated class action."); *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) ("There is a dearth of information regarding Westwind in the record. It is not even known where Westwind is located, what its business is, if it is a foreign company, and who controls it. Westwind repeatedly asserts that it is 'a large institutional investor,' but has not proffered any information regarding its identity, resources, and experience."); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (declining to appoint applicant with largest loss where applicant relied on bare certification that did not provide "confidence that as a sole individual investor, he is capable of adequately representing the purported class and controlling lead counsel.")

## 2.      Kosowsky Submitted an Incomplete and False Certification

The PSLRA requires that each lead plaintiff movant provide a sworn certification that "***sets  forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint***." 15 U.S.C.A. § 78u- 4(a)(2)(iv). Here, Mr. Kosowsky's sworn certification does not do so. Instead of supplying a schedule of all his transactions in Icahn securities during the Class Period, the certification appends unreconciable "First-In-First-Out" (FIFO) and "Last-In-First-Out" (LIFO) loss charts prepared by his counsel. Given the loss charts' attempts to match and account for Kosowsky's sales of

- 6 -

Icahn shares held prior to August 2, 2018, counsel cannot decipher the actual or complete state of the transactions Kosowsky made during the Class Period.

For example, the sale column for both the FIFO and LIFO loss charts neglect to provide the date for scores of sales transactions throughout the Class Period; instead, the charts confusingly denote the date of these sales as "Retained." Moreover, dates for these "Retained" sale transaction in the FIFO and LIFO charts are inconsistent. For example, in the FIFO chart, "Retained" sales appear to occur after April 18, 2023, while in the LIFO chart "Retained" sales occur throughout the Class Period. Given the inconsistencies, it is therefore unclear when these "Retained" transactions occurred, or if these notations are just accounting entries related to the FIFO and LIFO loss calculations.

Further, the loss charts are rife with errors. For example, in the LIFO chart, Mr. Kosowsky attests to having entered into at least 9 separate purchase transactions at prices outside of the range within which Icahn shares traded on the dates in question:

| Date | No. Shares Purchased | Loss Chart Purchase Price | Daily High – Low Range | Notes |
|---|---|---|---|---|
| 8/21/2018 | 478 | 77 | 78.400002 - 77.199997 | $0.19 below lowest traded price |
| 8/1/2019 | 80 | 76.9 | 79.370003 - 77 | $0.10 below lowest traded price |
| 5/8/20 | 1000 | 48.1 | 51 - 48.5 | $0.40 below lowest traded price |
| 2/25/2022 | 1000 | 53 | 54.849998 - 53.09 | $0.09 below lowest traded price |
| 9/26/2022 | 688 | 48.5 | 50.200001 - 48.75 | $0.25 below lowest traded price |

011171-11/2315401 V1

| Date | No. Shares Purchased | Loss Chart Purchase Price | Daily High – Low Range | Notes |
|---|---|---|---|---|
| 9/26/2022 | 312 | 48.5 | 50.200001 - 48.75 | $0.25 below lowest traded price |
| 5/2/2023 | 1000 | 50 | 48.150002 - 36.799999 | $1.85 above highest traded price |
| 5/2/2023 | 1000 | 49.5 | 48.150002 - 36.799999 | $1.35 above highest traded price |
| 5/2/2023 | 1000 | 49 | 48.150002 - 36.799999 | $0.85 above highest traded price |

*See* Ex. 1 attached hereto.

Similarly, in the LIFO chart, Kosowsky identifes 11 separate sale transactions at prices outside of the range within which Icahn shares traded on the dates in question:

| Date | No. Shares Sold | Loss Chart Sale Price | Daily High – Low Range | Notes |
|---|---|---|---|---|
| 5/26/2020 | 1000 | 50.5 | 50.48 - 49.58 | $0.02 higher than daily high |
| 6/5/2020 | 899 | 50.4 | 51.73 - 50.47 | $0.07 lower than daily low |
| 7/2/2020 | 137 | 49.5 | 49.11 - 48.05 | $0.4 higher than daily high |
| 7/2/2020 | 863 | 49.5 | 49.11 - 48.05 | $0.4 higher than daily high |
| 3/8/2021 | 750 | 62 | 61.85 - 60.01 | $0.15 higher than daily high |
| 4/6/2021 | 19 | 57.23 | 57.18 - 56.17 | $0.05 higher than daily high |
| 12/1/2021 | 1 | 51.37 | 51.1 - 49.76 | $0.27 higher than daily high |
| 1/3/2022 | 171 | 50.29 | 52.2 - 49.85 | $0.09 higher than daily high |
| 1/3/2022 | 555 | 50.29 | 52.2 - 49.85 | $0.09 higher than daily high |

| Date | No. Shares Sold | Loss Chart Sale Price | Daily High – Low Range | Notes |
|------|-----------------|-----------------------|------------------------|-------|
| 1/3/2022 | 140 | 50.29 | 52.2 - 49.85 | $0.09 higher than daily high |
| 2/14/2022 | 78 | 55 | 54.99 - 54.1 | $0.01 higher than daily high |

*See* Ex. 1 attached hereto.

These evident inaccuracies render Kosowsky's Certification facially false. Courts routinely disqualify movants from appointment as lead plaintiff on the basis of errors in their PSLRA certification, alone. *See*, *e.g.*, *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (denying lead plaintiff motion where errors in loss charts "speak to a level of carelessness" that raise doubt that applicant possesses "the necessary adequacy and sophistication to be lead plaintiff"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *8, n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation").

Kosowsky's failure to provide any information about himself, combined with his incomplete and erroneous PSLRA certification, confirm his failure to make a prima facie showing of adequacy and typicality. *See, e.g., Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021) (denying movant Li's application where "there is a lack of detail for the Court to determine the sophistication and suitability of [movant] as Lead Plaintiff" and "aspects of Li's motion and documents submitted in support thereof also raise concern for the Court."); *Diebold Nixdorf*, 2019 WL 5587148 at *6; *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658 at *2; *Qualcomm Inc.*, 2019 WL 277360, *3.

- 9 -

**B.     Kosowsky's Unorthodox Trading Subjects Him to Disqualifying Unique Defenses**

The PSLRA precludes the appointment of a lead plaintiff who is "subject to unique defenses that render [him] incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also Gross v. AT&T Inc.*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019). ("Before disqualifying a potential lead plaintiff [as subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed. Rather, 'many courts have rejected appointments of lead plaintiffs based on potential risks.'") (quoting *Schaffer v. Horizon Pharma PLC*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016).[4]

Here, Kosowsky engaged in unorthodox trading strategies during the Class Period. Kosowsky traded prolifically, entering over 500 buy and sell transctions during the Class Period. Far from taking a long view on the Company, Kosowsky bought shares and sold shares on the same day on 51 separate occasions during the Class Period. *See* Ex. 2 attached hereto. Moreover, Kosowsky was a serial in-and-out trader of Icahn stock during the Class Period.  For example, viewing just an exercept of his Class Period transactions, between August 10, 2018 through June

---

[4] *See also*, *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole."); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012), (denying motion by lead plaintiff movants subject to unique defense, "declin[ing] to decide [the issue] at this time," because "[t]o decide the lead plaintiff motions, the Court need only decide whether the issue of standing is a unique defense that is ***likely*** to become a major focus at litigation") (emphasis added).

011171-11/2315401 V1

18, 2020, Kosowsky had bought and then completely sold out of that Class Period position 60 separate times.  *See* Ex. 3 attached hereto.

If the Court were to appoint Kosowsky as Lead Plaintiff, then this unusual day trading strategy will give the Defendants ample ammunition at the class certification stage of this litigation, when they will, inevitably, argue that Kosowsky plainly cannot be entitled to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market."

As noted in *Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017):

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

The *Basic* court held that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248 (emphasis added). In that case, which involved news of a corporate merger, the court stated, for example, that a plaintiff who was aware of the truth of the merger discussions "but sold his shares nevertheless because of unrelated concerns . . . *could not be said to have relied upon the integrity of the price he knew had been manipulated*." *Id.* at 249. Here, on *Basic's* rationale, Kosowsky's day trading would undercut his reliance on the Defendants' alleged misstatements in this litigation because it suggests that his trading was driven by a desire to capitalize on relatively short-term fluctuations in the price of Icahn stock—*i.e.*, that he would have engaged in these transactions *despite the Defendants' positive statements*. *See, e.g.*, *Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485,

504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff."); *see also Stoopler v. Direxion Shares ETF Tr.*, 2010 WL 3199679, at \*4 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (day traders potentially subject to unique defenses).

The Southern District of New York's decision in *DraftKings*, 2021 WL 5282006, at \*10, is instructive. There, the *DraftKings* Court declined to appoint as lead plaintiff movant Tim Kaintz ("Kaintz"), who like Kosowsky, both submitted an erroneous PSLRA certification and engaged in day trading activities throughout the Class Period.  Judge Englemeyer observed that the fact that other courts had appointed lead plaintiffs or certified classes by litigants who engaged in day trading was inconsequential, reasoning:

> But while Kaintz might ultimately succeed in persuading the Court that his idiosyncrasies ought not defeat class certification or harm his claims' prospects on the merits, the interests of the class disfavor exposing it to the risk that his history will dog him. The question whether Kaintz's trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation. That potential to distract militates against his appointment. [Citation]. As the court in *Galmi* aptly put the point: "The question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation." 302 F. Supp. 3d at 504 n.10 [Citation].

*Id*. at \* 11.  The *DraftKings* Court then concluded, "The Court finds Kaintz's unique trading patterns and slapdash submissions to the Court to militate strongly against finding him the best suited putative class representative here. Considering all of these reasons, the Court declines to appoint Kaintz as lead plaintiff."

The same rationale applies here.  Like Kaintz in *DraftKings*, Kosowsky's transactions in Icahn securities are at best idiosyncratic. If Kosowsky is appointed as Lead Plaintiff, Defendants will foreseeably attempt to rebut the *Basic* presumption by demonstrating that Kosowsky's unorthodox investment decisions were ***not*** made in reliance upon the Defendants' alleged

- 12 -

misrepresentations, but rather as opportunistic trading designed to capitalize on short-term price fluctuations. In the worst-case scenario, Defendants will succeed in doing so, to the obvious prejudice of the Class. Even in the best-case scenario, Kosowsky will be forced to devote considerable time and energy to litigating issues that are unique to his own Class Period investment strategy, at the expense of prosecuting the Class's fraud claims. There is no reason to saddle the Class in this litigation with a Lead Plaintiff subject to these unique defenses and risks to class certification.

## III.    CONCLUSION

For the foregoing reasons and the reasons set forth in his motion brief (ECF No. 23), Haworth and Gillespie respectfully request that the Court issue an Order granting their motion in all respects and denying the competing motions.

DATED: July 24, 2023

Respectfully submitted,

MADERAL BYRNE & FURST PLLC

By: **John R. Byrne**
    John R. Byrne (0126294)
Rachel Wagner Furst (45155)
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 520-5690
john@maderalbyrne.com
rachel@maderalbyrne.com

Reed R. Kathrein (262161)
Lucas E. Gilmore (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*

- 13 -

011171-11/2315401 V1