**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-21773-Moore/Louis
Case No. 1:23-cv-22009-Altman/Reid

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br> Defendants. | <u>CLASS ACTION</u> |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, <br><br> Defendants. | <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF ALVARO ARANDA'S MOTION FOR
CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD
<u>PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.      THE PSLRA REQUIRES THAT A "LEAD PLAINTIFF" BE APPOINTED TO LEAD THE LITIGATION. ........................................................................................ 3

    II.     MR. ARANDA IS ENTITLED TO THE "MOST ADEQUATE PLAINTIFF" PRESUMPTION. .................................................................................................... 4

           A.      Mr. Aranda Possesses the "Largest Financial Interest" in the Action. ...................... 4

           B.      Mr. Aranda Meets the Adequacy and Typicality Standards under Rule 23. .............. 7

    III.    KOSOWSKY IS INADEQUATE AND IS SUBJECT TO A UNIQUE DEFENSE. ...... 9

    IV.    HAWORTH AND GILLESPIE PROPOSE AN UNWORKABLE PLAN FOR PROPERLY MANAGING THE LITIGATION. ........................................................ 15

    V.     ALL OTHER COMPETING MOTIONS SHOULD BE DENIED ............................... 20

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
Case No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) .................. 18

*Alkhoury v. Lululemon Athletica, Inc.*,
No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105 (S.D.N.Y. Oct. 1, 2013) .............................. 6

*Applestein v. Medivation Inc.*,
2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010) .................................................... 12, 13

*Bang v. Acura Pharms., Inc.*,
No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011).................................... 12

*In re Bard Assocs., Inc.*,
No. 09-6243, 2009 U.S. App. LEXIS 26289 (10th Cir. Dec. 2, 2009)....................................... 3

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).............................................................................................................. 2, 10

*Batter v. Hecla Mining Co. et al.*,
Nos. 19-cv-4883 (ALC); 19-cv-05719 (ALC), 2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. Mar.
25, 2020) ................................................................................................................................... 13

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 U.S. Dist. LEXIS 198259 (N.D. Ill. Nov. 15, 2019) ............................ 15

*Brody v. Zix Corp.*,
Civil Action No. 3:04-CV-1931-K, 2005 U.S. Dist. LEXIS 13871 (N.D. Tex. July 11, 2005)... 5

*Brustein v. Lampert*,
No. 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005)
...................................................................................................................................... 3, 7, 9

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000)................................................................................. 4, 5

*Cambridge Ret. Sys. v. Mednax, Inc.*,
2018 U.S. Dist. LEXIS 207064 (S.D. Fla. Dec. 6, 2018) .......................................................... 2

*Cambridge Ret. Sys. v. Mednax, Inc.*,
Case No. 18-61572-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 207064 (S.D. Fla.
Dec. 6, 2018)........................................................................................................................ 4, 20

*Carvelli v. Ocwen Fin. Corp.*,
No. 17-cv-80500, 2017 U.S. Dist. LEXIS 128862 (S.D. Fla. Aug. 14, 2017) ............................ 7

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .................................................................................... 3, 4, 20

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ............................................................................... *passim*

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,*
    Nos. 17 CV 1677, 1958, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017) ............... 5, 6

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.,*
    No. 20-cv-2031 (JSR), 2020 U.S. Dist. LEXIS 90814 (S.D.N.Y. May 22, 2020) ...................... 9

*City Pension Fund v. Aracruz,*
    No. 08-23317-CIV-LENARD/GARBER, 2009 U.S. Dist. LEXIS 140999 (S.D. Fla. Aug. 7,
    2009) ...................................................................................................................... 8

*Clair v. DeLuca,*
    232 F.R.D. 219 (W.D. Pa. 2005) ................................................................................ 14

*Crass v. Yalla Grp. Ltd,*
    21 Civ. 6854 (PAE), 2021 U.S. Dist. LEXIS 216088 (S.D.N.Y. Nov. 8, 2021) ........................ 17

*In re Doral Fin. Corp. Sec. Litig.,*
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) ........................................................................... 7

*Eastwood Enters., LLC v. Farha,*
    No. 8:07-cv-1940-T-24 MSS, 2008 U.S. Dist. LEXIS 19127 (M.D. Fla. Mar. 11, 2008) ......... 15

*Eichenholtz v. Verifone Holdings, Inc.,*
    No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ................... 18

*In re Elan Corp. Sec. Litig.,*
    No. 1:08-cv-08761, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 11, 2009) .......................... 7

*In re Enzymotec Ltd. Sec. Litig.,*
    Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) ..................... 14

*Gross v. AT&T Inc.,*
    No. 1:19-cv-02892-VEC, (S.D.N.Y. June 24, 2019) ......................................................... 15

*Huang v. Depomed, Inc.,*
    289 F. Supp. 3d 1050 (N.D. Cal. 2017) ........................................................................ 19

*Juliar v. Sunopta Inc.,*
    No. 08 Civ. 933, 2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009) ............................... 7

*Kapur v. USANA Health Scis., Inc.,*
    No. 2:07CV177DAK, 2007 U.S. Dist. LEXIS 77258 (D. Utah Oct. 17, 2007) ........................ 4

*Karp v. Diebold Nixdorf, Inc.*,
   19 Civ. 6180(LAP); 19 Civ. 6514(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019) .................................................................................................................................... 14

*Khunt v. Alibaba Group Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)..................................................................................... 16

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir.1984) ................................................................................................. 8

*Lako v. Loandepot, Inc.*,
   8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063 (C.D. Cal. May 2, 2022) ................... 17

*In re Level 3 Communs., Inc. Secs. Litig.*,
   Nos. No. 09-cv-00200-PAB-CBS, et al., 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009)
   ................................................................................................................................................ 18

*In re LightInTheBox Holding Co., Sec. Litig.*,
   13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013)...................... 17

*Marcus v. J.C. Penney Co.*,
   Nos. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) ........................ 13

*Miller v. Dyadic Int'l, Inc.*,
   Case No. 07-80948-WPD, 2008 U.S. Dist. LEXIS 32271 (S.D. Fla. April 18, 2008)................. 5

*Nakamura v. BRF S.A.*,
   18-cv-2213 (PKC), 2018 U.S. Dist. LEXIS 110187 (S.D.N.Y. July 2, 2018) ........................... 19

*In re Netflix, Inc., Sec. Litig.*,
   Nos. 12–0225 SC, et al., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) .................. 14

*Newman v. Eagle Building Technologies*,
   209 F.R.D. 499, 503-04 (S.D. Fla. 2002) ................................................................................. 15

*Perez v. Hexo Corp.*,
   19 Civ. 10965 (NRB); 20 Civ. 00196 (NRB), 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) ...................................................................................................................................... 14

*In re Petrobras Secs. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015)..................................................................................... 18

*In re Pfizer Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ............................................................................................. 7

*Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.*,
   No. 06 Civ. 5797, 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ......................... 5, 6

*Prado-Steiman v. Bush*,
   221 F.3d (11th Cir. 2000) ............................................................................................... 8

*Randall v. Fifth Street Fin. Corp.*,
   15-cv-7759, 2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb. 1, 2016) ......................................... 7

*Rodriguez v. Draftkings Inc.*,
   Nos. 21 Civ. 5739 (PAE); 21 Civ. 6497 (PAE), 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov.
   12, 2021) ................................................................................................................... 2

*Schaffer v. Horizon Pharma plc*,
   No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016) ................. 13

*Scheller v. Nutanix, Inc.*,
   2021 U.S. Dist. LEXIS 112372 (N.D. Cal. June 10, 2021) ......................................................... 10

*Shaffer v. Digit. Generation, Inc.*,
   No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461 (N.D. Tex. Sept. 19, 2013) ................. 12

*Stein v. Match Grp., Inc.*,
   No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995 (N.D. Tex. June 9, 2016) ........................... 19

*Tan v. NIO Inc.*,
   Nos. 19-CV-1424 (NGG) (VMS), et al., 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)
   ................................................................................................................................. 16

*TDH Partners. LLP v. Ryland Group, Inc.*,
   2006 U.S. Dist. LEXIS 36084 (N.D. Tex. June 2, 2006) ........................................................... 5

*Tran v. Erba Diagnostics, Inc.*,
   No. 15-cv-2440- COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864 (S.D. Fla. Apr. 8, 2016) . 4

*Tsirekidze v. Syntax-Brillian Corp.*,
   Nos. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008) 12, 13, 18

*White Pine Investments v. CVR Refining, LP*,
   No. 20 CIV. 2863 (AT), 2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021) ....................... 19

*Zaker v. Ebang International Holdings Inc., et al.*,
   No. 21-cv-3060 (KPF) (S.D.N.Y. July 21, 2020) ..................................................................... 17

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23(a) .............................................................................................. *passim*

## PRELIMINARY STATEMENT

Icahn Enterprises L.P. ("IEP") is a public company controlled by the billionaire investor Carl C. Icahn. The company is a diversified holding company that owns businesses operating in various industries. Its shares have historically traded on the Nasdaq stock exchange at relatively stable prices and paid steady dividends. Investors in the company, like Lead Plaintiff -movant Alvaro Aranda, purchased IEP shares at prices equal to or greater than $50 per share. Then, on May 2, 2023, Hindenburg Research published a research report arguing that IEP had inflated its net asset values by more than 20%. The very next day, on May 3, 2023, the U.S. Attorney's office for the Southern District of New York commenced an investigation. These events sent IEP shares into a tailspin, falling almost $20 per share and resulting in millions of dollars of losses for Mr. Aranda and other similarly situated shareholders. Mr. Aranda now seeks to recover these damages under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Before this case can get underway though, a Lead Plaintiff must be appointed to oversee the litigation and represent the class. Mr. Aranda seeks to be appointed as the Lead Plaintiff for this case.

The Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), sets forth a clear directive in terms of appointing Lead Plaintiff s to serve in securities fraud class actions. It instructs courts to appoint as "Lead Plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with (1) the "largest financial interest in the relief sought by the class" who (2) also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u–4(a)(3)(B)(iii)(I).

Mr. Aranda is the movant with the "largest financial interest" in the outcome of the litigation who *also* satisfies Rule 23's typicality and adequacy requirements. Financial interest is

assessed using the *Lax* factors, which consider the number of shares purchased by a shareholder, the number of shares retained by the shareholder at the end of the class period ("net shares"), the net funds expended, and the approximate loss sustained. *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, *10 (S.D. Fla. Dec. 6, 2018). Mr. Aranda bought 205,134 shares, held 129,601 shares through the end of the class period, spent $5,959,476.69 and lost over $2,311,000. *See* ECF No. 12-4 ("Alvaro Loss Chart").

Using the four *Lax* factors as required, Mr. Aranda has the "largest financial interest" in the litigation relative to any other shareholder, with one exception. One movant, Philip Kosowsky, has a larger "financial interest" under three of the four factors. However, as explained below, Kosowsky's trading history in IEP renders him atypical and vulnerable to unique defenses that preclude him from serving as the Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Kosowsky engaged in day-trading strategies that will subject the class to prejudicial defenses during class certification proceedings and could jeopardize the class's ability to succeed in this lawsuit. *See Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *26-27 (S.D.N.Y. Nov. 12, 2021) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 228 (1988)).

No other shareholder has a larger financial interest than Mr. Aranda. This includes movants Andrew Goldstein and the shareholder "group" consisting of John Haworth and James Gillespie. Goldstein purchased fewer shares, retained fewer shares at the end of the class period, and spent less money on his investment. That he incurred a *de minimus* larger loss than Mr. Aranda (<5%) does not outweigh the other *Lax* factors. Likewise, Haworth and Gillespie each have smaller financial interests than Mr. Aranda across all the *Lax* factors and while they ask that their losses be considered collectively, their motion papers do not support such treatment. They have proven themselves incapable of operating as a "cohesive" group capable of "fairly and adequately

2

protect[ing] the interests of the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). If their motion is considered at all, Haworth and Gillespie's bids to be Lead Plaintiff should be considered independently, as they in fact request in the alternative.

In sum, Mr. Aranda is the movant with the largest financial interest in the action that also satisfies Rule 23's typicality and adequacy requirements. He is best suited to oversee its prosecution, given his professional background and experience. Moreover, he appears to be the only movant to have negotiated a favorable fee agreement with proposed class counsel and, therefore, has proven himself the correct choice for Lead Plaintiff.

<u>**ARGUMENT**</u>

**I.      THE PSLRA REQUIRES THAT A "LEAD PLAINTIFF" BE APPOINTED TO LEAD THE LITIGATION.**

The PSLRA requires district courts to appoint a "Lead Plaintiff" at the outset of every class action lawsuit alleging a violation of the federal securities laws. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Lead Plaintiff  is the "person" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Bard Assocs., Inc.,* No. 09-6243, 2009 U.S. App. LEXIS 26289, at *2 (10th Cir. Dec. 2, 2009) ("The PSLRA instructs district courts to appoint as Lead Plaintiff  the class member that 'it determines to be most capable of adequately representing the interests of class members.'"); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (the presumptive Lead Plaintiff  is the movant "who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23"). The movant that has the largest financial interest must make a *prima facie* showing of adequacy and typicality under Rule 23. *See Brustein v. Lampert,* No. 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005); *Tran v.*

*Erba Diagnostics, Inc.,* No. 15-cv-2440- COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016).

After a presumptive plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the movant with the "largest financial interest" either fails to "satisf[y] the requirements of Rule 23" or is otherwise at risk of being "subject to a unique defense[]" such that the presumption of "most adequate plaintiff" is rebutted, then that movant is disqualified and the analysis is performed again beginning with the movant with the next "largest financial interest" in the litigation. *See In re January 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2021 U.S. Dist. LEXIS 199545, *33 (S.D. Fla. Oct. 14, 2021) (quoting *In re Cavanaugh*, 306 F.3d at 732).

## II.       MR. ARANDA IS ENTITLED TO THE "MOST ADEQUATE PLAINTIFF" PRESUMPTION.

### A.       Mr. Aranda Possesses the "Largest Financial Interest" in the Action.

When evaluating financial interests, courts in the Eleventh Circuit typically examine "1) the number of shares purchased during the class period, 2) the amount of investment, and 3) the alleged loss sought to be recovered[.]" *Cambridge Ret. Sys. v. Mednax, Inc.,* Case No. 18-61572-CIV-DIMITROULEAS/SNOW,* 2018 U.S. Dist. LEXIS 207064, at *10 (S.D. Fla. Dec. 6, 2018). A fourth factor is also considered, the "number of net shares purchased." *Id*. at *10-*11, n. 8 (citing *Burke v. Ruttenberg,* 102 F. Supp. 2d 1280, 1341 (N.D. Ala. 2000)); *see also Lax v. First Merchants Acceptance Corp.,* No. 97-c-2715, 1997 U.S. Dist. LEXIS 12432, at *18 (N.D. Ill. Aug. 11, 1997)); *Miller v. Dyadic Int'l, Inc.,* Case No. 07-80948-WPD, 2008 U.S. Dist. LEXIS 32271

(S.D. Fla. April 18, 2008) (citing *Burke*, 102 F. Supp. 2d at 1341) (collectively, the "*Lax* factors").

The *Lax* factors are examined holistically. *See Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, **22-23 (considering all factors when evaluating alleged financial interest, and appointing movant who won on two of the four *Lax* factors, net shares and net funds expended); *see also TDH Partners. LLP v. Ryland Group, Inc.*, 2006 U.S. Dist. LEXIS 36084, at *32 (N.D. Tex. June 2, 2006) (considering Lax factors "as a whole" before appointing Lead Plaintiff ); *Brody v. Zix Corp.*, Civil Action No. 3:04-CV-1931-K, 2005 U.S. Dist. LEXIS 13871, at *5 (N.D. Tex. July 11, 2005) (appointing Lead Plaintiff  after "looking at all four factors"); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,* Nos. 17 CV 1677, 1958, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio Dec. 4, 2017) ("[T]he Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.,* No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007) ("Indeed, some courts have held that "losses" may be more relevant to this determination than the other *Lax* factors…The very slight difference, however, between the [movants] losses [] is only 2% [and] cannot dictate such an important result").

As set forth in the following table, Mr. Aranda has the second largest financial interest after Kosowsky, who, as explained *infra*, is inadequate and subject to unique defenses and therefore cannot serve as the Lead Plaintiff :

5

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| Philip Kosowsky | 304,718 | 119,000 | $6,244,906.63 | $2,974,111.00 |
| *Alvaro Aranda* | *205,134* | *129,601* | *$5,959,476.69* | *$2,311,131.40* |
| Andrew Goldstein | 137,972 | 82,452 | $4,805,118.45 | $2,480,854.52 |
| Haworth & Gillespie | | | | |
| John Haworth | 77,500 | 77,500 | $3,987,370.57 | $1,805,291.90 |
| James Gillespie | 34,000 | 34,000 | $1,708,782.76 | $751,483.74 |
| Colin Ochel | 78,481 | 0 | $1,602,024.70 | $1,670,711.98 |
| John Diefendorf | 68,007 | 48,001 | $2,629,506.56 | $1,285,830.00 |
| Brian Harris | 51,729 | 51,729 | $2,828,816.39 | $1,179,993.24 |
| Jason Carlson | 110,390 | 21,500 | $1,705,495.00 | $1,100,055.00 |
| Ron Heider | 25,609 | 25,609 | $1,383,678.36 | $666,804.75 |
| Brett Morris | 18,170 | 9,464 | $605,812.69 | $309,523.42 |

Given the above *Lax* factor analysis, Mr. Aranda has the largest financial interest in the outcome of the action. *See City of Hollywood Firefighters' Pension Fund*, 2017 U.S. Dist. LEXIS 199868, at *9 ("the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Pio v. General Motors Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) (the Court "declines the invitation to ignore all but the fourth Lax factor in deciding which movant has the largest financial interest in this litigation"); *Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105, at *3-4 (S.D.N.Y. Oct. 1, 2013) (appointing movant that had smaller loss because first three factors weighed in its favor); *Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.,* No. 06 Civ. 5797, 2007 U.S. Dist. LEXIS 97959, at *5-7 (S.D.N.Y. Feb. 21, 2007) (same).

Relying on the first three factors is particularly appropriate where, as here, the difference in "claimed losses" between Mr. Aranda and Mr. Goldstein (the movant with the next "largest financial interest") is relatively inconsequential. *See e.g., Carvelli v. Ocwen Fin. Corp.,* No. 17-cv-80500, 2017 U.S. Dist. LEXIS 128862, at *7 (S.D. Fla. Aug. 14, 2017) ("difference [between movants losses] is small enough to shrink the persuasiveness of the presumption that the plaintiff with the largest financial interest is the most adequate"); *Randall v. Fifth Street Fin. Corp.,* 15-cv-7759, 2016 U.S. Dist. LEXIS 15719, at *9 (S.D.N.Y. Feb. 1, 2016) (competing reported losses within $15,000 to $20,000 were "approximately equal" and determining that "[a]s the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption."); *In re Elan Corp. Sec. Litig.,* No. 1:08-cv-08761, 2009 U.S. Dist. LEXIS 39859, at *4 (S.D.N.Y. May 11, 2009) (appointing movant with smaller loss because a $653,000 difference was "basically equal"); *Juliar v. Sunopta Inc.,* No. 08 Civ. 933, 2009 U.S. Dist. LEXIS 58118, at *1-2 (S.D.N.Y. Jan. 30, 2009) (describing an approximately $30,000 loss difference as "minimal"); *In re Doral Fin. Corp. Sec. Litig.,* 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (finding losses of $2.3 million and $1.9 million, or 17% to be "roughly equal"); *In re Pfizer Sec. Litig.,* 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (considering $22.8 million and $22.4 million as "roughly equal"). Mr. Arando lost $2,311,131 while Mr. Goldstein lost $2,480,854, a difference of approximately 5%. Accordingly, the fourth *Lax* factor (claimed loss) does not outweigh the three other *Lax* factors weighing in Mr. Aranda's favor.

**B.** **Mr. Aranda Meets the Adequacy and Typicality Standards under Rule 23.**

Pursuant to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also make the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Brustein*, 2005 U.S. Dist.

LEXIS 51106, at *14 (citing *Cendant*, 364 F.3d at 263);*City Pension Fund v. Aracruz,* No. 08-23317-CIV-LENARD/GARBER, 2009 U.S. Dist. LEXIS 140999, at *8 (S.D. Fla. Aug. 7, 2009) (The PSLRA "requires the Lead Plaintiff status to make a *prima facie* showing of typicality and adequacy"). Mr. Aranda has easily made the *prima facie* showing of the typicality and adequacy requirements of Rule 23, thus triggering the statutory presumption of Lead Plaintiff in his favor.

Mr. Aranda purchased 205,134 shares of Ichan during the class period at prices artificially inflated by Defendants' misrepresentations and omissions and did not begin selling those shares until after the first corrective disclosure was publicized on May 2, 2023. *See* ECF No. 12-4, Aranda Loss Chart. Mr. Aranda's purchase history ensures that he has standing to pursue all claims throughout the Class Period. Due to purchasing Icahn shares during the Class Period, Mr. Aranda was damaged in the same manner as all other Class members. *See Prado-Steiman v. Bush*, 221 F.3d at 1279 n.14 (11th Cir. 2000) ("'A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory'") (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984)). Mr. Aranda has also evidenced that he is an adequate, capable individual that will actively oversee this litigation. He owns and operates his own digital marketing business and actively invests in real estate. *See* ECF No. 12-6, ¶2 (Declaration of Alvaro Aranda). In his capacity as the owner of a company and his investment properties, Mr. Aranda routinely works with and oversees attorneys and will have no issue overseeing and managing class counsel when appointed Lead Plaintiff . *Id.* He also considers himself to be an experienced investor, having been investing in the stock market for more than six years. *Id.*

Further, Mr. Aranda selected highly experienced counsel to prosecute the action and also negotiated a competitive fee agreement with counsel on behalf of the Class. "[O]ne of the best

8

ways for a court to ensure that [the proposed Lead Plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to . . . negotiate a reasonable retainer agreement with . . . counsel." *See Cendant*, 264 F.3d at 265-66; *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.,* No. 20-cv-2031 (JSR), 2020 U.S. Dist. LEXIS 90814, at *7-8 (S.D.N.Y. May 22, 2020) (rejecting Lead Plaintiff applicant upon evidence he failed to negotiate a retainer agreement). The fee agreement reached between Mr. Aranda and his selected counsel, Levi & Korsinsky, LLP, is well-below the one-third benchmark often awarded in securities fraud class action lawsuits. Upon request, Mr. Aranda and his counsel will make the retainer agreement available to the Court for *in camera* review.

Mr. Aranda has the largest financial interest in the relief sought by the class and otherwise satisfies Rule 23's typicality and adequacy requirements. He is, therefore, the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA. To overcome the presumption entitling Mr. Aranda to appointment as Lead Plaintiff , the PSLRA requires "proof" that the presumptive Lead Plaintiff  is inadequate or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). The competing movants cannot do this. No such proof exists to rebut the presumption in favor of Mr. Aranda, nor is he subject to a unique defense that would otherwise detract attention from the allegations of the action. Accordingly, his motion should be granted in its entirety.

## III.      KOSOWSKY IS INADEQUATE AND IS SUBJECT TO A UNIQUE DEFENSE.

When a district court appoints a Lead Plaintiff, it must ensure that the movant is both adequate and typical of the class. *Brustein*, 2005 U.S. Dist. LEXIS 51106, at *14. A movant that "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses

that render such plaintiff incapable of adequately representing the class" cannot be appointed. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Specifically, shareholders that engage in high-frequency or day-trading strategies pose a unique "reliance" issue, as their trading pattern suggests they did not rely on the alleged misstatements and omissions. Reliance is a necessary element for the application of the "fraud on the market" doctrine under *Basic v. Levinson*, *supra*, and the Section 10(b) and Rule 10b-5 claims asserted against Defendants. *See Apache,* 566 F. Supp. 3d at 71; *see also Scheller v. Nutanix, Inc.,* 2021 U.S. Dist. LEXIS 112372, at *17 (N.D. Cal. June 10, 2021) (disqualifying movant in light of "fraud-on-market reliance" arguments).

Although Kosowsky claims the largest financial interest of all Lead Plaintiff movants, he is inadequate, atypical, and subject to unique defenses. First and foremost, Kosowsky failed to provide a complete list of his transactions to the Court, as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv) ("Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . set[ting] forth all of the transactions"). Instead, Kosowsky provided charts containing transaction information in LIFO and FIFO format, meaning that only Kosowsky's *purchases* were readily identifiable from the information he provided. *See* ECF No. 20-1, ("Kosowsky Certification"). To identify Kowsowky's *sales* from the information he provided, counsel needed to reverse-engineer the LIFO and FIFO formatting.

Counsel undertook this analysis when reviewing Kosowsky's motion. For each purchase that was "matched" with a sale, counsel analyzed the trade information to identify the complete sale transaction and then listed it separate and apart from the purchase. The result of this analysis revealed a transaction history containing ***nearly 800 transactions*** during the Class Period. *See* Kosowsky Transaction History, Exhibit A to Declaration of Adam M. Apton. Moreover, while not readily apparent from Kosowsky's opening motion papers, many of these trades are ***day-trades***

10

seemingly executed pursuant to ***high-frequency trading strategies***. *See id.* (identifying day-trades in light blue highlight). For example, counsel's analysis revealed the following trades on May 28 and 29, 2020, which show that Kosowsky profited by buying and selling 1,000 shares on May 28, 2020 and then again on May 29, 2020:

| 5/28/2020 | P | 863 | $ 49.2000 | 863 |
| 5/28/2020 | P | 17 | $ 49.2000 | 880 |
| 5/28/2020 | P | 120 | $ 49.2000 | 1,000 |
| 5/28/2020 | S | -1000 | $ 49.7000 | 0 |
| 5/29/2020 | P | 863 | $ 49.2000 | 863 |
| 5/29/2020 | P | 5 | $ 49.2000 | 868 |
| 5/29/2020 | P | 12 | $ 49.2000 | 880 |
| 5/29/2020 | P | 120 | $ 49.2000 | 1,000 |
| 5/29/2020 | S | -1000 | $ 49.8000 | 0 |

*See id.*

Counsel's analysis of Kosowsky's transaction history also revealed ***twenty-one*** trades that inexplicably fell outside the daily historical price ranges on the dates provided. *See id* (identifying trades outside of historical price ranges in red font). Three trades, in particular, appear to be associated with purchases pursuant to option contracts rather than open market transactions. These trades occurred on May 2, 2023 for cost bases of $50.00, $49.50 and $49.00. According to Kosowsky's counsel, the atypical pricing for these trades was due to the trades being made outside market hours, which in and of itself further suggests atypical trading behavior. *See* Aranda's Counsel's Letter, Exhibit B to the Declaration of Adam M. Apton; Kosowsky's Counsel's Response Letter, Exhibit C to the Declaration of Adam M. Apton.

Kosowsky's day-trading and after-market purchasing strategies suggests he is atypical and focused "'on technical price movements rather than price,' and therefore [Kosowsky is] subject to a defense [that he] would have purchased the stock at issue 'regardless of the misstatements/omission.'" *Applestein v. Medivation Inc.,* 2010 U.S. Dist. LEXIS 98255, at *9-10

11

(N.D. Cal. Sept. 20, 2010) (rejecting high volume trader as Lead Plaintiff ); *see also Apache*, 566 F. Supp. 3d at 719 (rejecting movant whose high-frequency trading "raise[s] serious concerns about [his] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions").

The court's analysis in *Apache* is instructive. There, the court disqualified the Lead Plaintiff movant with the largest financial interest because he "repeatedly bought and sold" stock during the class period, including multiple purchases of shares that were resold "on the same day or within a matter of days." 566 F. Supp. 3d at 719-20. Specifically, the court concluded that the movant's "frenzied trading activity in [company] stock renders him atypical and subject to unique defenses" that "he was trading in response to information other than the alleged misstatements and omissions," and precludes his appointment as lead. plaintiff. *Id*. at 719; *see also, e.g., Shaffer v. Digit. Generation, Inc*., No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461, at *8-9 (N.D. Tex. Sept. 19, 2013) (rejecting movant whose "high volume trading activity, including buying and selling [company] stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses"); *Bang v. Acura Pharms., Inc.,* No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."); *Tsirekidze v. Syntax-Brillian Corp.,* Nos. CV–07–2204-PHX-FJM, et al., 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 7, 2008) (rejecting movant because its "frantic trading belies any true reliance on company reports or even the integrity of the stock price itself").

Similar to the Lead Plaintiff movant in *Apache*, Kosowsky bought and sold shares of Ichan during the class period, many of which were resold on the same day or within a matter of days.

12

Such in-and-out trading appears to be reflective of Kosowsky's overall trading strategy designed to capitalize "on the market's daily volatility" and "relies more on speculation rather than investing." *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *21-22 (E.D. Tex. Feb. 28, 2014) (rejecting movant engaged in "rapid trading activity," as "[t]his activity would not be typical of the class because the proposed class's damages stem. from reliance on Defendant's financial statements"). Indeed, while the "record before the court may be insufficient to establish that [Kosowsky] was a day-trader *qua* day-trader," it "is sufficient, however, to raise serious concerns about [his] typicality and about [his] susceptibility to the defense that [he] was trading in response to information other than the alleged misstatements and omissions made by [defendants]." *Applestein*, 2010 U.S. Dist. LEXIS 98255, at *9-10; *Tsirekidze,* 2008 U.S. Dist. LEXIS 118562, at *18 ("While a day trader is not ipso facto disqualified from the Lead Plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class."); *see also Draftkings,* 2021 U.S. Dist. LEXIS 219489, at *27 ("[T]here is a real risk that the idiosyncrasies of [Kosowsky's] purchases would become just such a distraction at trial, were [Kosowsky] appointed lead plaintiff, with his trading history inhibiting his ability to serve as an untarnished proxy for the class.")

Courts across the country have repeatedly recognized that the mere possibility that a unique defense could become the focus of the litigation is enough to rebut the most adequate plaintiff presumption. *See Batter v. Hecla Mining Co. et al.,* Nos. 19-cv-4883 (ALC); 19-cv-05719 (ALC), 2020 U.S. Dist. LEXIS 51665, at *22 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a potential that the presumptively most adequate Lead Plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma plc,* No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected

13

appointments of Lead Plaintiff s based on *potential* risks.") (emphasis in original); *In re Enzymotec Ltd. Sec. Litig.*, Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *7 (D.N.J. Mar. 3, 2015) ("[T]he competing plaintiff must show simply that there is some degree of probability that the defense might 'become a major focus' in the case."); *In re Netflix, Inc., Sec. Litig.,* Nos. 12–0225 SC, et al., 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial."). Accordingly, "[t]here is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage" given the likelihood Defendants will argue that Kosowsky did not rely on their alleged misstatements in making his investment decisions. *Apache*, 566 F. Supp. 3d at 720.

Moreover, even if the Court overlooked Kosowsky's atypical trading strategy (it should not), the Court and Class know nothing about Kosowsky, nor his ability to serve as Lead Plaintiff in this case. Indeed, "[s]imply making a motion for Lead Plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task." *Clair v. DeLuca,* 232 F.R.D. 219, 226-27 (W.D. Pa. 2005). Courts routinely find that movants who only provide their name, and nothing more, have failed to make the preliminary Rule 23 showing. *See Perez v. Hexo Corp.,* 19 Civ. 10965 (NRB); 20 Civ. 00196 (NRB), 2020 U.S. Dist. LEXIS 32381, at *6 (S.D.N.Y. Feb. 25, 2020) (denied appointing movant with largest loss for providing no information about themselves in opening motion, despite filing a supplemental declaration including additional information); *Karp v. Diebold Nixdorf, Inc.,* 19 Civ. 6180(LAP); 19 Civ. 6514(LAP), 2019 U.S. Dist. LEXIS 188670, at *16 (S.D.N.Y. Oct. 30, 2019) (denying Lead Plaintiff motion of individual investors who "have provided the Court with little to go on with respect to their alleged capacity to manage this litigation."); *In re Boeing Co. Aircraft Sec. Litig.,* No. 19 CV 2394, 2019 U.S. Dist.

14

LEXIS 198259, at *23-24 & n.10 (N.D. Ill. Nov. 15, 2019) (The failure to include any details in an individual investor's motion is a "red flag[]" because "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the Lead Plaintiff selection process."); *Gross v. AT&T Inc.,* No. 1:19-cv-02892-VEC, ECF No. 53 at 3 (S.D.N.Y. June 24, 2019) ("While the Court agrees with Pro-Alpha that mere speculation is not enough to disqualify a prospective Lead Plaintiff , it is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation.").

Kosowsky's motion presents numerous issues requiring the denial of his motion. Aside from obscuring his trading strategy, he has omitted any information about his background or qualifications. Mr. Aranda's Counsel requested confirmation about Kosowsky's background information to determine if he could meet the adequacy requirements of Rule 23 and confirm he has no conflicts with the Class, among other requests. *See* Exhibit B to the Declaration of Adam M. Apton. Kosowsky's counsel responded to the letter but declined to provide any background information for Mr. Kosowsky. *Id*., Exhibit C. To date, Mr. Kosowsky has now refused to give the Court and the Class nothing more than his name to determine his adequacy to represent the Class.

## IV.      HAWORTH AND GILLESPIE PROPOSE AN UNWORKABLE PLAN FOR PROPERLY MANAGING THE LITIGATION.

Florida courts follow the Third Circuit's decision in *Cendant* when evaluating the adequacy of a movant "group" for Lead Plaintiff. *See Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-24 MSS, 2008 U.S. Dist. LEXIS 19127, *6-7 (M.D. Fla. Mar. 11, 2008); *Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 503-04 (S.D. Fla. 2002). Critically, under *Cendant*, a

15

"group" cannot serve as the Lead Plaintiff in any securities litigation matter if "the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a Lead Plaintiff." *Cendant,* 264 F.3d at 266. Haworth and Gillespie's motion papers demonstrate an inability to properly manage this litigation and, therefore, their "group" cannot be appointed as the Lead Plaintiff .

In support of their motion, Haworth and Gillespie submitted a "Joint Declaration" in an effort to demonstrate their "adequacy" under *Cendant*. *See* ECF No. 23-4. Paragraph 6 states that while they intend to "make all decisions jointly," Haworth and Gillespie will "resolve . . . disagreement[s] through private mediation." *Id*. at ¶6. This is not reasonable or routine in terms of plans for managing the litigation and, according to the case law, evidences an inability to function as a cohesive "group" capable of adequately representing the class. *See*, *e.g.*, *Tan v. NIO Inc.*, Nos. 19-CV-1424 (NGG) (VMS), et al., 2020 U.S. Dist. LEXIS 36623, *15 (E.D.N.Y. Mar. 3, 2020) (rejecting as "boilerplate" the movant-group's proposal to "resolve any disputes" through a "neutral arbitrator" and noting that "side litigation contemplated by this provision would necessarily create inefficiencies in the prosecution of the action"); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) ("It is proper for courts to inquire into the depth and practicality of this planning process.").

Haworth and Gillespie's dispute-resolution mechanism is problematic for two reasons in particular. First, as U.S. District Judge Katherine Polk Failla pointed out in *Ebang International*, relying on a third-party neutral to resolve internal disputes is "concern[ing]" because it "betokens an abdication of the roles and responsibilities of a Lead Plaintiff , and that [] could potentially harm the class by imposing an inefficiency into the decision-making process in the event of a disagreement. Worse yet, I'm allowing a nonclass member to make or to have undue influence in

16

making key decisions on behalf of the class." *Zaker v. Ebang International Holdings Inc., et al.*, No. 21-cv-3060 (KPF) (S.D.N.Y. July 21, 2020), Transcript at 40:9-19 (attached to the Declaration of Adam M. Apton as Exhibit D).

Second, there are less than a handful of mediators experienced in the area of securities litigation and their schedules are extremely tight. For example, two of the most well-known and respected mediators among securities litigation practitioners are Mr. Robert Meyer, Esq., and Mr. Jed Melnick, Esq. As of Monday, July 17, 2023, Mr. Meyer's earliest availability for a mediation is September 20; Mr. Melnick's first availability is August 15. *See* Declaration of Adam M. Apton dated July 24, 2023, attached hereto. Thus, if Haworth and Gillespie needed assistance from an experienced mediator, the earliest they could receive it would likely be *weeks* from now. Litigation entails critical decisions sometimes on short notice; waiting weeks on end for the help of a mediator is unreasonable and could very well prejudice the class in any number of ways.

The unusual nature of Haworth and Gillespie's proposal is highlighted by several decisions from around the country. None of these courts has condoned anything close to what Haworth and Gillespie propose. To the contrary, disputes between "group" members are typically resolved by the shareholder with the "largest financial interest" in the litigation in accordance with the PSLRA. *See*, *e.g.*, *Crass v. Yalla Grp. Ltd*, 21 Civ. 6854 (PAE), 2021 U.S. Dist. LEXIS 216088, *18-19 (S.D.N.Y. Nov. 8, 2021) (approving "voting procedure" whereby group member with "largest loss" has "deciding vote"); *c.f. Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063, *17-18 (C.D. Cal. May 2, 2022) (rejecting "protocol" to "make decisions by majority vote"); *In re LightInTheBox Holding Co., Sec. Litig.*, 13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842, *5-6 (S.D.N.Y. Nov. 21, 2013) (rejecting "voting procedure . . . at odds with PSLRA's presumption that the movant with the largest financial interest will control the

litigation").

Contrary to these cases and the intent of the PSLRA, Haworth and Gillespie have decided to rely on a third-party to make decisions of potential great importance for the class. They have proven themselves inadequate to serve as the "Lead Plaintiff " in this action. *See In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 622-623 (S.D.N.Y. 2015) (rejecting group where "no agreement in place regarding the resolution of disputes amongst themselves"); *In re Level 3 Communs., Inc. Secs. Litig.*, Nos. No. 09-cv-00200-PAB-CBS, et al., 2009 U.S. Dist. LEXIS 44706, *16 (D. Colo. May 4, 2009) (rejecting group where "joint declaration does not articulate any actual mechanisms for cooperation, dispute resolution, or communication"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *29 (N.D. Cal. Aug. 22, 2008) (noting that the declaration "does [not] clarify how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation. Simply stated, this conclusory declaration has little or no substance.").

Haworth and Gillespie's motion is further undermined by their indecisiveness over serving as Co-Lead Plaintiffs or Lead Plaintiffs individually. In Paragraph 11 of their Joint Declaration, they write: "We consent to filing as Lead Plaintiffs jointly, or alternatively, as individuals." ECF No. 23-4 at ¶11. This admission contradicts the conclusion that Haworth and Gillespie's "group" is committed to functioning as a "cohesive" unit capable of adequately representing the class. *See Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15-16 ("The Farrukh Group moved for Lead Plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together."); *accord Abouzied v. Applied Optoelectronics, Inc.*, Case No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801, *15-16 (S.D. Tex. Jan. 22, 2018) (collecting cases).

18

The PSLRA seeks to place those with the "largest financial interest" in the litigation at its helm. While *Cendant* allows for the appointment of "groups" as the Lead Plaintiff, they must prove themselves capable of adequately representing the class. *Cendant,* 264 F.3d at 266. Rarely, if ever, does a "group" make this showing when its individual members do ***not*** have the largest financial interests in the litigation. *See*, *e.g.*, *White Pine Investments v. CVR Refining, LP*, No. 20 CIV. 2863 (AT), 2021 U.S. Dist. LEXIS 1199, at \*5 (S.D.N.Y. Jan. 5, 2021) ("[W]here the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy is not disserved by allowing those individuals to join together."); *Huang v. Depomed, Inc.,* 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (approving group where one member of group had largest individual loss); *Stein v. Match Grp., Inc.,* No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995, at \*17 (N.D. Tex. June 9, 2016) (when the losses of both group member "surpass[es] those of any other putative Lead Plaintiff ….[this removes] any real concern that this group of two class members was formed only to manufacture the greatest financial interest in order to be appointed Lead Plaintiff .").

Neither Haworth nor Gillespie has the "largest financial interest" in the litigation; only when combined can they possibly claim otherwise. Individuals who attempt to aggregate their losses by filing a collective motion, like Haworth and Gillespie have done here, are not exempt from the requirement to demonstrate their adequacy, regardless of their pre-existing relationships. *See, e.g., Nakamura v. BRF S.A.*, 18-cv-2213 (PKC), 2018 U.S. Dist. LEXIS 110187, at \*7-9 (S.D.N.Y. July 2, 2018). The court in *Nakamura* is illustrative. In that case, two brothers on behalf of their respective companies collectively moved for co-Lead Plaintiff status. Regardless of their familial ties and claims of collectively having done business together, the court found that "[w]hile their family ties are certainly evidence of a 'pre-litigation relationship between group members,'

19

they offer no specifics as to their history of business collaboration and how it positions them to advance the interests of the class." Here, Haworth and Gillespie fare no better. Not only do these men lack a familial bond that could "afford[] some weight to….the likelihood that they will act in unison" (*id.* at *8), they only know each other as business acquaintances, as Haworth's business has purchased items through Gillespie's former business. *See* Haworth & Gillespie Joint Decl. at ¶¶ 3-4. The absence of any common interest (other than a desire for a successful resolution in the case) weighs in favor of rejecting their motion.

## V.       ALL OTHER COMPETING MOTIONS SHOULD BE DENIED

Kosowsky is inadequate due to his high-frequency trading strategy. Haworth and Gillespie are inadequate because they improperly aggregated their losses. Of the remaining movants, Mr. Aranda has the largest financial interest and otherwise satisfies the typicality and adequacy requirements of Rule 23. *Mednax, Inc.,* 2018 U.S. Dist. LEXIS 207064, at *5 ("The Court must, therefore, address which of the proposed Lead Plaintiff s has the 'largest financial interest in the relief sought by the class' and whether that proposed Lead Plaintiff  satisfies the requirements of Rule 23, i.e., whether [his] claims 'are typical of the claims . . . of the class' and whether [he] 'will fairly and adequately protect the interests of the class.'" (citing Fed. R. Civ. P. 23(a)); *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential Lead Plaintiff s one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive Lead Plaintiff  is found inadequate or atypical."). No other movant can trigger the Lead Plaintiff presumption and therefore their motions should be denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the

20

Actions; (2) appoint Movant as Lead Plaintiff  for the Class; (3) approve Levi & Korsinsky as Lead Counsel and Cullin O'Brien as Liaison Counsel for the Class; and (4) grant such other relief as the Court may deem proper.

//

Dated: July 24, 2023                                      Respectfully submitted,

> */s/ Cullin O'Brien*
> Cullin O'Brien
> Florida Bar No. 0597341
> **CULLIN O'BRIEN LAW, P.A.**
> 6541 NE 21st Way
> Fort Lauderdale, Florida 33308
> Tel: (561) 676-6370
> Fax: (561) 320-0285
> E-mail: cullin@cullinobrienlaw.com
>
> *Proposed Liaison Counsel for Alvaro Aranda and the Class*
>
> Adam M. Apton (*pro hac vice* forthcoming)
> **LEVI & KORSINSKY, LLP**
> 55 Broadway, 4th Floor
> New York, NY 10006
> Tel: (212) 363-7500
> Fax: (212) 363-7171
> Email: aapton@zlk.com
>
> *Proposed Lead Counsel for Alvaro Aranda and the Class*

21

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on July 24, 2023, I electronically filed the foregoing document with

the Clerk of the Court CM/ECF.

*/s/ Cullin O'Brien*
Cullin O'Brien

22