**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-CV-21773-MOORE/LOUIS
Case No. 1:23-CV-22009-MOORE/LOUIS

|  |  |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | <u>CLASS ACTION</u> |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ANDREW GOLDSTEIN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, <u>AND IN OPPOSITION TO THE COMPETING MOTIONS</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 4

    A.  Kosowsky Fails to Satisfy the PSLRA's and Rule 23's Prerequisites for
        Appointment .................................................................................................. 5

        1.  Kosowsky's Haphazard and Unusual Trading Render Him Atypical,
            Inadequate, and Subject to Unique Defenses ............................................... 5

        2.  Kosowsky's Deficient Submission to the Court Demonstrates His
            Inadequacy ................................................................................................ 10

    B.  Haworth and Gillespie Also Should Not Be Appointed Lead Plaintiff ............... 13

    C.  Andrew Goldstein is the "Most Adequate Plaintiff" and Should Be Appointed as
        the Lead Plaintiff ......................................................................................... 14

III.  CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Applestein v. Medivation Inc.*,
  No. C 10–00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ......................... 2, 6, 8, 9

*Brustein v. Lampert*,
  No. 04-61159-CIV, 2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) ......................... 11

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  582 U.S. 497 (2017) ...................................................................................................................... 9

*City of Mia. Beach v. Aracruz Cellulose S.A.*,
  No. 08-23317-CIV, 2009 WL 10664427 (S.D. Fla. Aug. 7, 2009) ............................... 4, 10, 12

*Eichenholtz v. Verifone*,
  No. C 07–06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..................................... 6

*Erickson v. Snap, Inc.*,
  No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ................... 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ...................................................................................................................... 7

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ....................................................................................................... 5

*Hurst v. Enphase Energy, Inc.*,
  No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ................................. 6, 7

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) .................................................. 11

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ....................................................................................................... 4

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................................................... 4

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ....................................................................................... 13

*In re Opnext, Inc. Sec. Litig.*,
  Civ. A. No. 08-920 (JAP), 2008 WL 3285732 (D.N.J. Aug. 7, 2008) ...................................... 6

ii

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. Oct. 21, 2005) ............................................................... 13

*In re Snap Inc. Sec. Litig.*,
  No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ......................... 7

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ................................. 12

*Luczak v. Nat'l Beverage Corp.*,
  (*Nat'l Beverage*), 548 F. Supp. 3d 1256 (S.D. Fla. 2021) ................................................ *passim*

*Luczak v. Nat'l Beverage Corp.*,
  No. 18-cv-61631-KMM, 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ................................. 12

*Marcus v. J.C. Penney Co.*,
  No. 6:13-CV-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ........................................... 9

*Perez v. HEXO Corp.*,
  No. 19 CIV. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ............................... 12

*Plaut v. Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) .............................. 11

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
  566 F. Supp. 3d 712 (S.D. Tex. 2021) ........................................................... 6, 7, 14

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  No. 06 Civ. 5797(PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ................................ 13

*Porzio v. Overseas Shipholding Grp.*,
  No. 12 Civ. 7948(SAS), 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ....................................... 7

*Rodriguez v. DraftKings Inc.*,
  No. 21 Civ. 5739, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ...................................... 6, 10

*Sanchez v. Decision Diagnostics Corp.*,
  No. LA CV21-00418 JAK (JPRx), 2021 WL 4129263 (C.D. Cal. Aug. 20, 2021) .................. 5

*Siegmund v. Xuelian Bian*,
  No. 16-62506-CIV, 2018 WL 1611847 (S.D. Fla. Apr. 2, 2018) ............................................. 7

*Steppacher v. Alfi, Inc.*,
  No. 21-24232-CIV, 2022 WL 1115049 (S.D. Fla. Apr. 13, 2022) ........................................... 4

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) ...................................................................................... 11

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ...................................................... 8

**Statutes**

15 U.S.C. § 78u–4(a) ..................................................................................... 1, 2, 4, 10

Andrew Goldstein respectfully submits this response in further support of his motion for appointment as Lead Plaintiff (ECF No. 26) and in opposition to the remaining competing motions.[1]

## I.    INTRODUCTION

The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant that: (1) "has the largest financial interest in the relief sought by the class"; **and** (2) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Of the six remaining movants before the Court,[2] only Mr. Goldstein satisfies both of these requirements.  With a loss of $2.48 million, Mr. Goldstein is the movant with the largest financial interest who also unquestionably satisfies the requirements of Rule 23.  While two of the competing movants, Kosowsky and the Haworth and Gillespie Group, claim larger losses than Mr. Goldstein, they are unable to satisfy both of the PSLRA's requirements for appointment as lead plaintiff.

**First**, with regard to Kosowsky, his motion is beset by fundamental defects that render him atypical and inadequate under Rule 23.  Indeed, Kosowsky not only failed to provide any background about himself or his qualifications to serve as lead plaintiff, but he also failed to comply with the single most critical requirement of a lead plaintiff applicant under the PSLRA.

---

[1] Unless otherwise noted, all capitalized but undefined terms have the meanings ascribed in Mr. Goldstein's opening brief (ECF No. 26-1), all emphasis is added, and citations are omitted.  All references to "ECF No. ___" are to docket entries in *Okaro v. Icahn Enterprises L.P.*, No. 1:23-cv-21773 (S.D. Fla.).

[2] In addition to Mr. Goldstein, the competing movants are Philip Kosowsky ("Kosowsky") (ECF No. 20), John Haworth and James Gillespie ("Haworth and Gillespie") (ECF No. 23), Alvaro Aranda ("Aranda") (ECF No. 12), Colin Ochel ("Ochel") (ECF No. 28), John Diefendorf ("Diefendorf") (ECF No. 27), Brian Harris ("Harris") (ECF No. 25), Jason Carlson ("Carlson") (ECF No. 14), Ron Heider ("Heider") (ECF No. 10), and Brett Morris ("Morris") (ECF No. 21). Ochel withdrew his motion on July 13, 2023 (ECF No. 38), Diefendorf filed a notice of non-opposition on July 24, 2023 (ECF No. 40), Carlson filed a notice of non-opposition on July 21, 2023 (ECF No. 39), and Heider withdrew his motion on July 24, 2023 (ECF No. 41).

1

Specifically, Kosowsky failed to submit a list setting forth all of his Class Period transactions in IEP units, as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv) (describing transaction list requirement). Kosowsky's failure to do so does not appear accidental, as the information that Kosowsky did provide—namely, a chart of purchases and sales matched for loss calculation purposes—demonstrates that he engaged in extensive day trading and in-and-out transactions throughout the Class Period. *See* ECF No. 20-1 at 71-94. In fact, Kosowsky completed ***at least 519 trades*** over the Class Period, selling out of his entire Class-Period position on ***four occasions*** and engaging in numerous matching purchases and sales ***on the same day*** or within a handful of days on LIFO basis.

As this Court recently recognized in denying class certification in a securities class action, these "haphazard and highly unusual trading practices—which are anything but typical—[give] rise to unique defenses that would be raised solely against Plaintiff." *Luczak v. Nat'l Beverage Corp.* (*Nat'l Beverage*), 548 F. Supp. 3d 1256, 1267-69 (S.D. Fla. 2021) (Moore, J.) (noting lead plaintiff had bought and sold stock held "for periods as short as a single day"). Moreover, courts around the country routinely hold that trading practices such as those adopted by Kosowsky disqualify a lead plaintiff movant because they "raise[] serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by [defendants]." *Applestein v. Medivation Inc.*, No. C 10–00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010). Accordingly, Kosowsky's trading and the opaque nature of his motion preclude his appointment.

***Second***, with regard to Haworth and Gillespie, these individuals can only claim the second largest loss in this action by *combining* their losses, which represents a subversion of the PSLRA's intention that actions be led by the movant with the largest financial interest. While Haworth and

2

Gillespie claim a collective loss of $2,556,775 – a negligible $75,921 larger than Mr. Goldstein's claimed loss – their respective individual financial interests pale in comparison to that of Mr. Goldstein.  Indeed, as reflected in the chart below, Mr. Goldstein incurred a loss that is 37% larger than Haworth's individual loss of $1.8 million.  Moreover, Gillespie purchased IEP units following the May 2 disclosure and, given that Haworth and Gillespie only began purchasing IEP units in March 2023 and late-April 2023 – within two months of the disclosure in a five-year class period – they cannot represent the Class as effectively as Mr. Goldstein.

**Claimed LIFO Losses of Remaining Movants**

| | Kosowsky | Haworth and Gillespie | Mr. Goldstein | Aranda | Harris | Morris |
|---|---|---|---|---|---|---|
| | $2,974,111 | $2,556,776 | $2,480,855 | $2,311,131 | $1,179,993 | $309,523 |

Thus, as reflected above, Mr. Goldstein has by far the largest financial interest of any qualified movant, and he is entitled to a strong presumption that he is the most adequate plaintiff because he has demonstrated his typicality and adequacy.  Mr. Goldstein does not suffer from any of the typicality and adequacy issues associated with Kosowsky.  He has the largest financial interest of any qualified movant, has demonstrated his commitment to the vigorous prosecution of this litigation, and has selected Saxena White as Lead Counsel for the Class—a South Florida-

3

based law firm that has an extensive track record in successfully prosecuting complex actions on behalf of shareholders in this District and around the country.

Accordingly, Mr. Goldstein respectfully submits that he should be appointed Lead Plaintiff, that his motion should otherwise be granted, and that the motions of the remaining movants who lack the largest financial interest in this litigation should be denied. *See Steppacher v. Alfi, Inc.*, No. 21-24232-CIV, 2022 WL 1115049, at *6 (S.D. Fla. Apr. 13, 2022) (Williams, J.) (noting that while courts consider other factors in assessing financial interest, the most important factor is LIFO loss),

## II.    ARGUMENT

Pursuant to the PSLRA, where multiple proposed class members seek to be appointed Lead Plaintiff, the movant with the largest financial interest *who also otherwise satisfies* the requirements of Rule 23 is the "most adequate plaintiff" and the presumptive Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(iii)(I).  In other words, simply claiming the largest financial interest is not the stopping point in the presumptive lead plaintiff analysis as the movant "must demonstrate that they satisfy the [Rule 23] factors, in addition to having the largest financial interest." *Alfi*, 2022 WL 1115049, at *6.  The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, if the movant "with the greatest financial stake does not satisfy the [Rule 23] criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir. 2002); *see also City of Mia. Beach v. Aracruz Cellulose S.A.*, No. 08-23317-CIV, 2009 WL 10664427, at *3 (S.D. Fla. Aug. 7, 2009) (Lenard, J.) (finding

movant with largest loss "unable to adequately represent the interests of the class," and appointing movant that "is able to meet the requirements of Rule 23 and possesses a similar financial interest"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for *any* reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff").

### A. Kosowsky Fails to Satisfy the PSLRA's and Rule 23's Prerequisites for Appointment

Kosowsky has offered *zero* personal information and defectively limited trading information for the Court to use in assessing his qualifications to serve as Lead Plaintiff. Because courts are loath to appoint as lead plaintiff individuals who do not describe their qualifications, all of the movants who claimed the six largest losses in this matter provided information about their backgrounds with the exception of Kosowsky, whose refusal to do so stands out. From the limited trading information that Kosowsky has provided in a loss chart that does not list transactions, it is readily apparent that Kosowsky operated as a day trader and engaged in several in-and-out transactions during the Class Period. As a result, Kosowsky is not entitled to the "most adequate plaintiff" presumption regardless of his claimed loss because, as a day trader, Kosowsky is subject to a myriad of unique defenses that render him incapable of adequately representing the Class. Kosowsky's motion also should be rejected because he has neglected to timely provide basic information about his transactions and background.

#### 1. Kosowsky's Haphazard and Unusual Trading Render Him Atypical, Inadequate, and Subject to Unique Defenses

As courts throughout the country have recognized, Rule 23's typicality requirement is not satisfied when a proposed lead plaintiff is subject to a unique defense that could become "the focus

of the litigation." *Sanchez v. Decision Diagnostics Corp.*, No. LA CV21-00418 JAK (JPRx), 2021 WL 4129263, at *4 (C.D. Cal. Aug. 20, 2021) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *see also Nat'l Beverage*, 548 F. Supp. 3d at 1268 (finding representative atypical because "the time and attention [the representative] would be required to devote to the loss causation issue (not [only] to rebut a defense, but to prove [his] case) would distract it from the claims of the rest of the class"). In particular, "day-traders typically focus[ ] on technical price movements rather than price, and therefore are subject to a defense th[at] they would have purchased the stock at issue regardless of the misstatement/omission." *Applestein*, 2010 WL 3749406, at *3.

Courts have long been unwilling to burden the Class with "the vulnerability created by the unique day-trader defense" and routinely deny motions by movants who engaged in day trading during the Class Period. *Eichenholtz v. Verifone*, No. C 07–06140 MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008); *see also Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719-20 (S.D. Tex. 2021) (rejecting movant who engaged in repeated in-and-out stock transactions that "raise[d] serious concerns about typicality and about his susceptibility to the defense that he was trading in response to information other than [defendants'] alleged misstatements and omissions"); *Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739, 2021 WL 5282006, at *7, 10 (S.D.N.Y. Nov. 12, 2021) (rejecting day trader movant where "the interests of the class disfavor exposing it to the risk that his history will dog him"); *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *7 (N.D. Cal. Nov. 30, 2020) (rejecting motion of day traders, noting that "[c]ourts have long recognized an inherent conflict between the interests of day or in-and-out traders and those of retention traders"). As courts have explained "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged

losses." *In re Opnext, Inc. Sec. Litig.*, Civ. A. No. 08-920 (JAP), 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008). In fact, this Court recently denied class certification in a securities class action and found a lead plaintiff who, among other things, bought and sold stock held "for periods as short as a single day" subject to "unique defenses that would be raised solely against Plaintiff." *Nat'l Beverage*, 548 F. Supp. 3d at 126768. Here, the issues related to Kosowsky's haphazard and unusual trading are disqualifying because they give rise to unique defenses that would threaten to become the focus of this litigation if the Court were to appoint Kosowsky as Lead Plaintiff.

Likewise, courts recognize that "[r]epeated in-and-out stock transactions 'raise serious concerns about [a potential lead plaintiff's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions' of the Defendants." *Apache*, 566 F. Supp. 3d at 719. Courts routinely reject the motions of in-and-out movants because they have difficulty in proving reliance. *Porzio v. Overseas Shipholding Grp.*, No. 12 Civ. 7948(SAS), 2013 WL 407678, at *2-3 (S.D.N.Y. Feb. 1, 2013) (finding in-and-out traders "incapable of adequately representing the class"); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019) (rejecting presumptive lead plaintiff who partook in "in-and-out" trading). As reliance is an essential element of every securities fraud claim, any arguments about a class representative's lack of reliance would cast a dark shadow over the absent class members' claims. *See Siegmund v. Xuelian Bian*, No. 16-62506-CIV, 2018 WL 1611847, at *11 (S.D. Fla. Apr. 2, 2018) (Moreno, J.) ("The Supreme Court has emphasized that reliance by the Plaintiff upon Defendant's deceptive acts is an essential element of the § 10(b) private cause of action.").

Here, Kosowsky's highly unusual trading pattern is atypical, renders him inadequate and introduces unique defenses, including his ability to rely on the fraud-on-the-market presumption

of reliance that serves as bedrock for the Class's claims.[3]  *See Hurst*, 2020 WL 7025085, at *8 (disqualifying day trader movants where the Court had "serious concerns about their vulnerability to a defense that they were trading in response to information other than the alleged misstatements and omissions made").  During the Class Period, Kosowsky engaged in a frenzy of trading activity in which he repeatedly amassed and rapidly liquidated positions in IEP units—often on the same day or within days of the corresponding purchases.  Specifically, Kosowsky completely liquidated his positions on: (1) August 24, 2018; (2) May 1, 2019; (3) July 16, 2019; and (4) July 19, 2019.  *See* ECF No. 20-1 at 71-84.  And, on a LIFO basis, Kosowsky purchased and sold the same number of IEP units within five business days ***140 times*** during the Class Period, including ***69 times on the same day***.  Through these transactions, Kosowsky bought (and quickly sold) a total of 112,761 units of IEP securities—or ***37 percent*** of his total purchases during the Class Period.  *Id.*; *see also Applestein*, 2010 WL 3749406, at *3 (rejecting movant that engaged in frequent trading and sold out of his position "as many as three times").  Moreover, in many of these positions of short duration, Kosowsky sold his shares at a marginally higher price than he paid to purchase them, in some instances for a profit of as little as $0.02 to $0.30 per share.[4]  *Id.*  The active trading strategy evinced by these transactions, often completed at higher prices than preceding purchases, "belies

---

[3] *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (noting that a securities fraud plaintiff must prove reliance upon the defendants' alleged misrepresentation or omission as an essential element of a Section 10(b) claim).

[4] Indeed, as reflected in Kosowsky's loss chart, on eight occasions, he sold shares for the same price at which he purchased them, and on nine other occasions, he sold stock for a *de minimis* profit of less than $10 total, sometimes for as little as $1 or $2.  *See* ECF No. 20-1 at 85 (showing six wash transactions from sales on 7/24/2019, 7/23/2019, 5/1/2019, 4/16/2019, 7/16/2019, and 7/5/2019; and a sale on 3/19/2019 for a $9 profit); *id.* at 86 (showing a wash transaction from a sale on 2/20/2020, and sales on 11/4/2019 and 2/24/2020 for profits of $4 and $1 respectively); *id.* at 87 (showing sales on 10/29/2020, 10/28/2020, and 4/6/2021 for profits of $7, $3, and $2 respectively); *id.* at 89 (showing a sale on 12/1/2021 for a profit of $1); *id.* at 92 (showing a wash transaction from a sale on 12/14/2022); *id.* at 93 (showing a sale on 3/1/2023 for a profit of $2); and *id.* at 94 (showing a sale on 4/18/2023 for a profit of $1).

any true reliance on company reports or even on the integrity of the stock price itself." *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008).

Indeed, Kosowsky's flurry of trading strongly suggests a day trading strategy designed to capitalize "on the market's daily volatility" and that "relies more on speculation rather than investing." *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014). Kosowsky engaged in at least **519** transactions in IEP units during the Class Period. The records show that the volume of his trading ranged from a single trade to as many as 19 trades in five business days. *See* FINRA Rule 4210(f)(8)(B)(ii) (defining day trader as a customer who executes four or more day trades within five business days). On at least **140** occasions during the Class Period, Kosowsky bought and sold securities on the same day, or within one week. *See Applestein*, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (rejecting movant who engaged in 407 trades during the class period, including 44 trades in a single day, and buying and selling stock on the same day nine times).

Defendants would almost certainly argue at class certification that Kosowsky did not rely on their alleged misstatements in making his investment decisions, and instead speculated on short-term movements in the price of IEP shares.[5] This risk is particularly acute here. This Court denied class certification where a day trader "buys and sells hundreds of thousands of dollars' worth . . . of stock at once—holding that stock for periods as short as a single day, and does not recall why he chose to buy and sell so quickly, or whether he made or lost money on such transactions." *Nat'l Beverage Corp.*, 548 F. Supp. 3d at 1267. The lead plaintiff in *Nat'l Beverage Corp.* had filed the

---

[5] Dismissal of the class action or denial of class certification could leave absent class members without the ability to bring individual claims if either occurs after the expiration of the statute of repose period. *See, e.g., Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 514-16 (2017) (holding that statutes of repose are not subject to equitable tolling during the pendency of class action litigation).

initial complaint, and was the only movant, so issues pertaining to the trading were not raised at the lead plaintiff stage. However, the issues featured prominently during class certification, leading the Court to deny certification of the class of investors, finding "unique defenses that would be raised solely against Plaintiff" and "that Plaintiff has not met his burden of establishing he is typical of the Class." *Id.* Here, "the question whether [Kosowsky's] trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation" and "the interests of the class disfavor exposing it to the risk [of] [Kosowsky's day trading] history." *DraftKings Inc.*, 2021 WL 5282006, at *10. Accordingly, Kosowsky's unique trading patterns militate strongly against his appointment as Lead Plaintiff.[6]

### 2.    Kosowsky's Deficient Submission to the Court Demonstrates His Inadequacy

Kosowsky's failure to comply with one of the PSLRA's most basic prerequisites for lead plaintiff motion and failure to offer any background information about himself render him ineligible for appointment as Lead Plaintiff. Specifically, Kosowsky did not furnish the Court with a list of all of his transactions in IEP securities during the Class Period, instead only offering a list showing how his purchases and sales of IEP units match for purposes of a loss analysis. *See* 15 U.S.C. § 78u–4(a)(2)(A)(iv) ("Each plaintiff seeking to serve as a representative party on behalf

---

[6] The fact that Kosowsky also purchased 14,000 shares following the initial alleged disclosure of fraud on May 2, 2023, which caused a 20% decline in IEP's stock price, also could subject him to unique defenses as to reliance and causation that preclude him from serving as lead plaintiff. *See, e.g.*, *Aracruz*, 2009 WL 10664427, at *5 (rejecting presumptive lead plaintiff who bought shares "after a potential corrective disclosure, affecting issues of reliance and causation"); *Borteanu v. Nikola Corp.*, No. CV-20-01797-PHX-SPL, *vacated on other grounds*, 2020 WL 7392795, at *6 (D. Ariz. Dec. 15, 2020) (rejecting motion of day trader who also made purchases after a partial disclosure from a Hindenburg report because "taken with the nature of his style of trading, the purchases cast doubt on [the movant's] typicality"). Should Kosowsky be appointed as Lead Plaintiff, Defendants would likely put these issues directly in their crosshairs at class certification and during trial, thereby jeopardizing the interests of the Class.

of a class shall provide a sworn certification . . . [that] sets forth all of the transactions of the [movant] in the security that is the subject of the complaint during the class period specified in the complaint."). Kosowsky's presentation of his transactions grouped by purchase price and date and matched to sales is particularly concerning due to his pattern of day trading, and this maneuver may be designed to minimize the appearance of his active trading strategy. This submission raises questions regarding Kosowsky's forthrightness and fitness to supervise this securities class action. *See Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 415 (E.D. Pa. 2019) (explaining that errors in lead plaintiff movant's sworn declarations "causes the Court to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff"); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (rejecting movant as inadequate for submitting a certification with errors that "speak to a level of carelessness," among other adequacy issues). Should Kosowsky seek to address this key deficiency by belatedly filing a list of transactions, authority cited by Kosowsky himself notes that "[the PSLRA] does not allow an individual or group to supplement or amend its motion for lead plaintiff status after the expiration of the sixty-day deadline." *Brustein v. Lampert*, No. 04-61159-CIV, 2005 U.S. Dist. LEXIS 51106, at *15 (S.D. Fla. June 15, 2005) (Lenard, J.).

Further, the fact that Kosowsky neglected to proffer any information as to his background, such as his investment, employment, or educational history – information routinely provided with motions by individuals seeking lead plaintiff status – further precludes the necessary inquiry into whether Kosowsky has any conflicts with other Class members. *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *3 (N.D. Ill. Jan. 28, 2020) (rejecting movant that offered only information about their location in support of their motion because "a movant must supply some information about its ability to perform the role of lead plaintiff diligently and

11

effectively"). Courts "question[ ] whether [a movant] will meaningfully oversee and control the prosecution of [a securities class action]" when the movant "fail[s] to provide *any* information regarding his experience in his preliminary motion." *Perez v. HEXO Corp.*, No. 19 CIV. 10965 (NRB), 2020 WL 905753, at *2-3 (S.D.N.Y. Feb. 25, 2020) (emphasis in original); *see also Aracruz*, 2009 WL 10664427, at *4 (rejecting movant who "offers little aside from conclusory statements regarding its adequacy").

Also troubling is that in the information that Kosowsky did provide, he overstated his "net shares" held through the first alleged revelation of fraud by 56%—an error that Kosowsky has not yet corrected. *Compare* net shares figure of 185,718 in Kosowsky brief, ECF No. 20 at 11, *with* Exhibit A to the Declaration of Lester Hooker in Further Support of the Motion of Andrew Goldstein for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Counsel, and in Opposition to the Competing Motions, filed herewith. As the Court has previously noted, net shares are a secondary factor to loss that may be considered in evaluating financial interest. *See Luczak v. Nat'l Beverage Corp.*, No. 18-cv-61631-KMM, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018). Numerous issues in motion papers "[t]aken together," including with regard to claimed exposure to a fraud, "indicate to the Court a 'certain carelessness about detail that undermines the adequacy' of [a proposed movant] as a lead plaintiff." *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (rejecting motion of movant who exaggerated loss totals by 34% and provided no information about their qualifications for protecting the class's interests).

In sum, based on the materials Kosowsky offered to the Court, he is an opaque movant plagued by unique defenses, and thus ineligible for appointment. Kosowsky is not entitled to the "most adequate plaintiff" presumption and his motion should be denied.

12

### B.    Haworth and Gillespie Also Should Not Be Appointed Lead Plaintiff

With Kosowsky disqualified, Haworth and Gillespie together claim the next largest loss on transactions in IEP securities during the Class Period.  However as reflected in the chart above, their respective financial interests on an individual basis are far smaller than Mr. Goldstein's loss of $2.48 million—whose loss exceeds that of all other movants by hundreds of thousands of dollars.  Moreover, because the $75,921 difference between Mr. Goldstein's loss and the combined loss is *de minimis*—a difference of less than 3%—the Court should shift its analysis to Mr. Goldstein before considering the motion of Haworth and Gillespie.  *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (appointing movant with a claimed loss 16% smaller loss, finding that loss only "slightly lower" and the movants' losses to be "roughly equal"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. Oct. 21, 2005) (finding movant losses that differed by 1.7% to be "roughly equal" due to "the probable margin of error involved in the damage estimates before the Court").

Additionally, Gillespie purchased after the initial disclosure on May 2, 2023, which could also subject him to a unique defense.  *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797(PAC), 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (appointing movant with a claimed loss 2% below another movant, finding that difference in claimed loss not outcome determinative and "very slight" and noting that the movant with the largest claimed loss faced unique defenses).[7]  Courts express a strong preference for movants, such as Mr. Goldstein,

---

[7] Another movant's trading is even more concerning than that of Gillespie.  While competing movant Aranda may argue that his loss is only slightly below that of Mr. Goldstein and that the Court should give weight to other, secondary factors that support financial interest, such as net shares purchased and net expenditures, Aranda's motion fails because he purchased significantly more IEP units following the first partial disclosure of fraud that caused the largest share price reaction.  Specifically, after ***liquidating his entire position*** in IEP units in response to the May 2 Hindenburg report, in just two trading days, Aranda proceeded to purchase 129,601 IEP units—

13

with clean trading patterns who made their investments throughout the Class Period and not after partial corrective disclosures and continued to retain their positions as of the class period end.

### C.  Andrew Goldstein is the "Most Adequate Plaintiff" and Should Be Appointed as the Lead Plaintiff

Andrew Goldstein is the only movant who satisfies all prerequisites of the PSLRA and Rule 23. As set forth in his loss chart (ECF No. 26-4), Mr. Goldstein has a strong incentive to vigorously prosecute this litigation, having suffered a substantial loss of $2,480,854 on purchases of IEP units throughout the Class Period. He is a net purchaser of 82,541 depositary units of IEP, and held those units through both of the alleged disclosures of fraud. *Id.* In addition, Mr. Goldstein has provided detail about personal background, including his educational history and decades of experience investing in securities. *See* ECF No. 26-6, ¶ 3. He has retained experienced counsel and, as a result of his significant financial stake in this litigation, is ready, willing and able to provide vigorous prosecution of the claims in this litigation on behalf of absent Class members. *See* ECF No. 26-6, ¶¶ 5-11 (detailing Mr. Goldstein's commitment to "ensur[ing] that the IEP securities litigation will be vigorously prosecuted consistent with the lead plaintiff's obligations under the PSLRA and in the best interests of the class"). Moreover, there is no indication that Mr. Goldstein's claims are antagonistic to other Class members' claims. "There is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage if [Kosowsky] were appointed lead plaintiff. This is especially true given that there is a non-

---

well more than half of his 205,134 total units purchased during the Class Period. This trading pattern would subject Aranda to a unique defense regarding reliance that requires denial of his motion. *See, e.g.*, *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (rejecting movant who purchased more than 60% of his shares following a partial disclosure because purchasing a "disproportionately large percentage" of shares following a disclosure exposed him to unique defenses concerning reliance).

conflicted candidate for lead plaintiff available and willing to assume such responsibilities." *Apache*, 566 F. Supp. 3d at 720.

In sum, Mr. Goldstein has fully demonstrated that he will "fairly and adequately protect the interests of the class."  He is the "most adequate plaintiff," satisfies Rule 23(a)'s adequacy and typicality requirements and should be appointed as Lead Plaintiff.

## III.    CONCLUSION

For the foregoing reasons, Andrew Goldstein respectfully requests that the Court enter an Order: (1) consolidating the above-captioned actions; (2) appointing Mr. Goldstein as Lead Plaintiff; (3) approving his selection of Saxena White as Lead Counsel for the Class; and (4) denying all competing motions.

Dated:  July 24, 2023

Respectfully submitted,

*/s/ Lester R. Hooker*
Lester R. Hooker

**SAXENA WHITE P.A.**
Maya Saxena (FL Bar No. 95494)
Lester R. Hooker (FL Bar No. 32242)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Andrew Goldstein, and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice forthcoming*)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
brian@schallfirm.com

15

*Additional Counsel for Proposed Lead*
*Plaintiff Andrew Goldstein*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Lester R. Hooker, hereby certify that, on July 24, 2023, I authorized a true and correct copy of the foregoing to be electronically filed with the clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Lester R. Hooker*
Lester R. Hooker
