**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-21773-Moore/Louis
Case No. 1:23-cv-22009-Altman/Reid

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated, | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, | |
| Defendants. | |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated, | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, | |
| Defendants. | |

**ALVARO ARANDA'S BRIEF IN REPLY AND FURTHER SUPPORT OF MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD <u>PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.     KOSOWSKY'S IN-AND-OUT TRADING STRATEGY AND LACK OF
          CANDOR WITH THE COURT DISQUALIFY HIM FROM SERVING AS THE
          LEAD PLAINTIFF. .................................................................................................... 2

    II.    WITH KOSOWSKY DISQUALIFIED, MR. ARANDA HAS THE "LARGEST
          FINANCIAL INTEREST" IN THE LITIGATION. ....................................................... 4

    III.   MR. ARANDA IS NOT SUBJECT TO ANY UNIQUE DEFENSES. .......................... 7

CONCLUSION ........................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105 (S.D.N.Y. Oct. 1, 2013) .............................. 5

*Andrade v. Am. Apparel*,
No. CV 10-06352 MMM (RCx), 2011 U.S. Dist. LEXIS 160807 (C.D. Cal. Jan. 21, 2011)...... 4

*Cambridge Ret. Sys. v. Mednax, Inc.*,
Case No. 18-61572-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 207064 (S.D. Fla.
Dec. 6, 2018).................................................................................................................. 1, 4, 5

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio Jan. 26, 2005)................................................................................ 8

*Carvelli v. Ocwen Fin. Corp.*,
No. 17-cv-80500, 2017 U.S. Dist. LEXIS 128862 (S.D. Fla. Aug. 14, 2017) ............................ 6

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
Nos. 17 CV 1677, 1958, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017)................... 5

*City Pension Fund v. Aracruz,*
No. 08-23317-CIV-LENARD/GARBER, 2009 U.S. Dist. LEXIS 140999 (S.D. Fla. Aug. 7,
2009) ........................................................................................................................................ 7

*In re DaimlerChrysler AG Securities Litig.*,
216 F.R.D. 291 (D. Del. 2003) .................................................................................................. 8

*In re Doral Fin. Corp. Sec. Litig.,*
414 F. Supp. 2d 398 (S.D.N.Y. 2006)........................................................................................ 6

*In re Elan Corp. Sec. Litig.,*
No. 1:08-cv-08761, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 11, 2009) ........................... 6

*Erickson v. Snap, Inc.*,
No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sept. 18, 2017) ..... 9

*Gross v. AT&T Inc.*,
No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. Jun. 24, 2019)................... 4

*Kasper v. AAC Holdings, Inc*.,
No. 15-cv-00923-JPM-jsf, 2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. Jul. 14, 2017) ............. 8

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir.1984) .................................................................................................. 9

*Meyer v. Concordia Int'l Corp.*,

No. 16 Civ. 6467 (RMB), 2018 U.S. Dist. LEXIS 101691 (S.D.N.Y. May 23, 2018) ............... 8

*Perez v. Hexo Corp.,*
   No. 19 Civ. 10965 (NRB), 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) ................. 3

*In re Pfizer Sec. Litig.,*
   233 F.R.D. 334 (S.D.N.Y. 2005) ..................................................................................... 6

*Pio v. General Motors Co.*,
   No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ............................... 5

*Piven v. Sykes Enterprises, Inc.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ...................................................................... 3

*Plymouth Cty. Ret. Sys. v. Apache Corp.,*
   566 F. Supp. 3d 712 (S.D. Tex. 2021) ......................................................................... 3

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.,*
   No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007)................... 5

*Prado-Steiman v. Bush*,
   221 F.3d (11th Cir. 2000) ......................................................................................... 9

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010)......................................................................... 8

*Rodriguez v. Draftkings Inc.*,
   No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ................. 3

*In re Third Ave. Mgmt. LLC Secs. Litig.*,
   No. 16-cv-02758 (PKC), 2016 U.S. Dist. LEXIS 72344 (S.D.N.Y. May 13, 2016)................... 6

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) .................................................................................. 8

*White Pine Investments v. CVR Refining, LP*,
   No. 20 CIV. 2863 (AT), 2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021)......................... 6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................ *passim*

## **PRELIMINARY STATEMENT**

Movant Alvaro Aranda should be appointed as the lead plaintiff in this securities fraud class action lawsuit. He is the movant with the "largest financial interest" in the outcome of the action that also satisfies the typicality and adequacy requirements under Rule 23. No movant has come forward with "proof" capable of showing otherwise. By statute, Mr. Aranda is the "most adequate plaintiff" to serve as lead plaintiff and, therefore, his motion should be granted.

Three shareholder-movants presently oppose Mr. Aranda's motion: (1) Philip Kosowsky; (2) Andrew Goldstein; and (3) the shareholder-group of John Haworth and James Gillespie. As the opposition briefing made clear, Kosowsky is not typical of the class and would subject it to "unique defenses" if allowed serve as the lead plaintiff. Kosowsky engaged in day-trading throughout the class period, thereby jeopardizing the class's ability to utilize the "fraud-on-the-market" presumption of reliance at class certification and/or trial. Moreover, the manner in which he presented his transaction history appeared intended to conceal his day-trading from the Court and other members of the Class who necessarily would oppose his motion for lead plaintiff. Kosowsky also refused to share elemental information about his background and qualifications for representing the Class. Kosowsky's unique trading strategies and lack of candor preclude him from serving as the lead plaintiff.

With Kosowsky disqualified, Mr. Aranda becomes the movant with the "largest financial interest" in the action. Courts within the Eleventh Circuit evaluate "financial interests" in securities fraud cases by using four factors: 1) the number of shares purchased during the class period; 2) the cost of the shares purchased; and 3) number of net shares purchased (or shares retained at the end of the class period); and 4) the recoverable loss. *See Cambridge Ret. Sys. v. Mednax, Inc.,* Case No. 18-61572-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 207064, at *10-11 (S.D.

Fla. Dec. 6, 2018). The first three factors in this analysis weigh squarely in favor of Mr. Aranda. Only the last factor is capable of dispute and, at that, the difference in claimed losses is "negligible." Where, as here, the difference in claimed losses is relatively insignificant, the last factor does not outweigh the other three.

Mr. Aranda also makes the necessary showing of typicality and adequacy under Rule 23. Despite arguments to the contrary from Messrs. Kosowsky and Goldstein, nothing about Mr. Aranda's purchase of IEP stock after the first corrective disclosure renders him atypical or subject to a unique defense. Courts around the country widely agree that a shareholder is not rendered atypical simply because they "averaged down" their cost basis by buying after a corrective disclosure. Mr. Aranda's decision to purchase additional shares does not disqualify him from serving as the lead plaintiff.

Without any "proof" capable of showing Mr. Aranda is unable to represent the Class, the competing movants have no basis to oppose his motion. To the contrary, his background, qualifications, and ability to negotiate a favorable fee agreement for the benefit of the Class all show that he is the "most adequate plaintiff" to serve as the lead plaintiff. Respectfully, his motion should be granted in its entirety.

## ARGUMENT

I. **KOSOWSKY'S IN-AND-OUT TRADING STRATEGY AND LACK OF CANDOR WITH THE COURT DISQUALIFY HIM FROM SERVING AS THE LEAD PLAINTIFF.**

Shareholders must be transparent with the Court when moving to be appointed as the lead plaintiff under the PSLRA. They are required to provide a list of their transactions in the security at issue, state their financial interest in the action, and describe their background and/or

2

qualifications to serve as the lead plaintiff. *See Perez v. Hexo Corp.,* No. 19 Civ. 10965 (NRB), 2020 U.S. Dist. LEXIS 32381, at *6 (S.D.N.Y. Feb. 25, 2020) (denied appointing movant with largest loss for providing no information about themselves in opening motion, despite filing a supplemental declaration including additional information); *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (questioning "vigor with which [the Movant] intends to prosecute these claims" when "[t]here is a dearth of information regarding [the Movant] in the record"). Kosowsky failed to do this. He did not provide a list of his transactions, as required by statute, and did not provide any information about himself or his qualifications to serve as the lead plaintiff.

Kosowsky's lack of candor appears to be intentional. When analyzed, Kosowsky's transaction history revealed numerous in-and-out transactions during the Class Period. *See* ECF No. 47-2 (chart identifying in-and-out transactions). On nearly 80 occasions, Kosowsky bought IEP stock and then sold it within just a few hours. These transactions were not apparent initially because Kosowsky obscured them by presenting his trades in LIFO/FIFO format. *Compare* ECF No. 47-2 *with* ECF No. 20-1 at 71-94 (Kosowsky's LIFO/FIFO chart). Only after thorough analysis was it clear that Kosowsky's trading strategy was atypical relative to the class at large and problematic in terms of the "unique defenses" it creates for proving "reliance" at class certification and/or trial. *See Plymouth Cty. Ret. Sys. v. Apache Corp.,* 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (rejecting movant whose high-frequency trading "raise[s] serious concerns about [his] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions"); *Rodriguez v. Draftkings Inc.*, No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489, at *27 (S.D.N.Y. Nov. 12, 2021) ("[T]here is a real risk that the idiosyncrasies of [Kosowsky's] purchases would become just such a distraction at

3

trial, were [Kosowsky] appointed lead plaintiff, with his trading history inhibiting his ability to serve as an untarnished proxy for the class.").

Kosowsky also intentionally withholds information about his background and/or qualifications to serve as the lead plaintiff. Counsel for Mr. Aranda specifically requested this information from Kosowsky. *See* ECF No. 47-3 (Letter to Kosowsky's counsel). Kosowsky's counsel conspicuously ignored the request when responding. *See* ECF No. 47-4 (Letter from Kosowsky's counsel). Kosowsky's refusal to provide such elemental information further evidences his lack of transparency and precludes his appointment as the lead plaintiff. *See Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777, *5-6 (S.D.N.Y. Jun. 24, 2019) (denying motion for lead plaintiff where movant "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *Andrade v. Am. Apparel*, No. CV 10-06352 MMM (RCx), 2011 U.S. Dist. LEXIS 160807, *7-8 (C.D. Cal. Jan. 21, 2011) (granting discovery to determine whether movant was "suitable plaintiff" because of "'concerns about [shareholder's transparency and its trading practices'").

## II.    WITH KOSOWSKY DISQUALIFIED, MR. ARANDA HAS THE "LARGEST FINANCIAL INTEREST" IN THE LITIGATION.

Courts in the Eleventh Circuit evaluate "financial interest" using four factors: 1) the number of shares purchased during the class period; 2) the cost of the shares purchased; and 3) number of net shares purchased (or shares retained at the end of the class period); and 4) the recoverable loss. *See Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *10-11. The following table provides the "financial interest" for the remaining movants:

4

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| **Alvaro Aranda** | **205,134** | **129,601** | **$5,959,476.69** | **$2,311,131.40** |
| Andrew Goldstein | 137,972 | 82,452 | $4,805,118.45 | $2,480,854.52 |
| Haworth & Gillespie | | | | |
| John Haworth | 77,500 | 77,500 | $3,987,370.57 | $1,805,291.90 |
| James Gillespie | 34,000 | 34,000 | $1,708,782.76 | $751,483.74 |
| Total: | 111,500 | 111,500 | $5,696,153.33 | $2,556,775.64 |

Mr. Aranda's "financial interest" in the litigation is larger than the other movants' when considering the necessary factors. *See Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *22-23 (considering all factors when evaluating alleged financial interest, and appointing movant who won on two of the four *Lax* factors, net shares and net funds expended). Gross shares purchased, net shares retained, and net funds expended all favor Mr. Aranda. The only factor that does not favor Mr. Aranda is claimed loss, but the relative differences between the movants in that category is minimal. *See City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio Dec. 4, 2017) ("[T]he Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Pio v. General Motors Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) (the Court "declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation"); *Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105, at *3-4 (S.D.N.Y. Oct. 1, 2013) (appointing movant that had smaller loss because first three factors weighed in its favor); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.,* No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007) ("Indeed, some courts have held that 'losses' may be more relevant

5

to this determination than the other *Lax* factors…The very slight difference, however, between the [movants] losses [] is only 2% [and] cannot dictate such an important result").

Indeed, as one of the competing movants recognizes, the difference in losses is "negligible" and should not outweigh the other relevant "financial interest" factors. *See* ECF No. 48 (Goldstein arguing that difference of $75,921 is "negligible"). Mr. Aranda claims a loss of $2,311,131.40 while Mr. Goldstein claims $2,480,854.52; the difference is less than $170,000 or approximately 5%. The size of the difference is "small enough to shrink the persuasiveness of the presumption that the plaintiff with the largest financial interest is the most adequate." *See Carvelli v. Ocwen Fin. Corp.*, No. 17-cv-80500, 2017 U.S. Dist. LEXIS 128862, at *7 (S.D. Fla. Aug. 14, 2017); *accord In re Elan Corp. Sec. Litig.,* No. 1:08-cv-08761, 2009 U.S. Dist. LEXIS 39859, at *4 (S.D.N.Y. May 11, 2009) (appointing movant with smaller loss because a difference of approximately $653,000 or 15% was "basically equal"); *In re Doral Fin. Corp. Sec. Litig.,* 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (finding losses of $2.3 million and $1.9 million, or 17% to be "roughly equal"); *In re Pfizer Sec. Litig.,* 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (considering $22.8 million and $22.4 million as "roughly equal").

The same goes for Mr. Aranda's loss relative to Messrs. Haworth and Gillespie. Even if the Court accepts their aggregate combined loss (which it should not), the difference is less than $250,000 or less than 10%. Of course, their separate "financial interests" are much smaller than Mr. Aranda's. Thus, combining their interests for the sole purpose of amassing the "largest financial interest" in the action would be contrary to the PSLRA's intent. *See In re Third Ave. Mgmt. LLC Secs. Litig.*, No. 16-cv-02758 (PKC), 2016 U.S. Dist. LEXIS 72344, *7-8 (S.D.N.Y. May 13, 2016) (collecting cases holding group improper); *C.f. White Pine Investments v. CVR Refining, LP*, No. 20 CIV. 2863 (AT), 2021 U.S. Dist. LEXIS 1199, at *5 (S.D.N.Y. Jan. 5, 2021)

("[W]here the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy is not disserved by allowing those individuals to join together.").

### III.    MR. ARANDA IS NOT SUBJECT TO ANY UNIQUE DEFENSES.

Mr. Aranda also makes the requisite *prima facie* showing of typicality and adequacy under Rule 23. *See Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)); *City Pension Fund v. Aracruz,* No. 08-23317-CIV-LENARD/GARBER, 2009 U.S. Dist. LEXIS 140999, at *8 (S.D. Fla. Aug. 7, 2009) (The PSLRA "requires the Lead Plaintiff status to make a *prima facie* showing of typicality and adequacy"). Mr. Aranda purchased 205,134 shares of Ichan during the class period at prices artificially inflated by Defendants' misrepresentations and omissions and did not begin selling those shares until after the first corrective disclosure was publicized on May 2, 2023. *See* ECF No. 12-4 (Mr. Aranda's Loss Chart).

Two movants—Kosowsky and Goldstein—argue in opposition that Mr. Aranda's decision to purchase IEP shares after the first corrective disclosure is "concerning" and potentially disqualifying. *See* ECF No. 48 at 13 n.7; ECF No. 45 at 6 n.7. Their concerns are unfounded. Kosowsky and Goldstein fail to mention that Mr. Aranda purchased nearly 75,000 shares **before** the first corrective disclosure on May 2, 2023. *See* ECF No. 12-3 (Mr. Aranda's Certification with Transaction Schedule). Mr. Aranda then sold those shares and purchased more **before** the end of the Class Period. *See id*. This form of "averaging down" is **not** disqualifying and, in fact, has been allowed by courts around the country time and again. "Courts have repeatedly recognized that it is a common investment strategy for entities to engage in subsequent purchases [*i.e.*, to purchase

additional stock after the price of the stock decreases,] in order to decrease the average cost of their investment, and therefore, such investment strategies are not atypical for purposes of satisfying the requirements for class certification." *In re DaimlerChrysler AG Securities Litig.*, 216 F.R.D. 291, 298 (D. Del. 2003); *see also Meyer v. Concordia Int'l Corp.*, No. 16 Civ. 6467 (RMB), 2018 U.S. Dist. LEXIS 101691, at *7-9 (S.D.N.Y. May 23, 2018) (approving lead plaintiff who "averag[ed] down" cost with subsequent purchases); *Kasper v. AAC Holdings, Inc.*, No. 15-cv-00923-JPM-jsf, 2017 U.S. Dist. LEXIS 109608, *28-29 (M.D. Tenn. Jul. 14, 2017) ("our sister courts find that 'purchasing stock subsequent to a materially adverse disclosure, averaging down, is a common technique used to decrease the average cost of an investment and which cannot [automatically] be used to defeat a proposed class representative's typicality.'") (collecting cases); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1263 (S.D. Cal. 2010) ("The weight of authority recognizes that an investment strategy, such as averaging down . . . , does not rebut the fraud on the market presumption as a matter of law"); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 116-17 (S.D.N.Y. 2008) (subsequent purchases did not render shareholder atypical).

The cases cited by Kosowsky and Goldstein do not change the outcome on this issue. In *Cardinal Health* (cited by Kosowsky, ECF No. 45 at 6 n.7), the shareholder-movant sold over 400,000 shares in 2001 and did not transact again in the stock until three years later when the company itself "acknowledged that its accounting methodologies were under investigation." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Ohio Jan. 26, 2005). Unlike the movant's trading in *Cardinal Health*, Mr. Aranda's transactions were consistent with the widely-accepted "averaging down" trading strategy and, more importantly, did not occur close in time to any admissions from or by the company. To the contrary, Mr. Aranda's subsequent purchases occurred after the Hindenburg Research report as opposed to any acknowledgement of wrongdoing

from the company.

Similarly, in *Snap* (cited by Goldstein, ECF No. 48 at 13 n.7), the shareholder-movant purchased more than 60% of his stock after "news surfaced questioning the strength of the Company's daily active user growth." *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, *7 (C.D. Cal. Sept. 18, 2017). While Mr. Aranda purchased IEP shares after the first corrective disclosure, he purchased a significantly smaller percentage of his overall holdings; to be sure, the approximate 54,000 shares bought by Mr. Aranda after the first corrective disclosure to "average down" his cost basis accounted for only 30% of his total investment. *See* ECF No. 12-3 (Mr. Aranda's Certification with Transaction Schedule).

Mr. Aranda's purchase history ensures that he has standing to pursue all claims throughout the Class Period. *See Prado-Steiman v. Bush*, 221 F.3d at 1279 n.14 (11th Cir. 2000) ("'A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory'") (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984)). Mr. Aranda has also evidenced that he is an adequate, capable individual that will actively oversee this litigation. *See* ECF No. 12-6, ¶2 (Declaration of Alvaro Aranda). Out of all the movants, Mr. Aranda appears to be the only one who negotiated a competitive fee agreement with counsel on behalf of the Class. *See Cendant*, 264 F.3d at 265-66 ("[O]ne of the best ways for a court to ensure that [the proposed Lead Plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to . . . negotiate a reasonable retainer agreement with . . . counsel.").[1]

---

[1] Mr. Aranda and his counsel will make the retainer agreement available to the Court for *in camera* review upon request.

## CONCLUSION

Mr. Aranda has the largest financial interest in the relief sought by the class and otherwise satisfies Rule 23's typicality and adequacy requirements. He is, therefore, the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA. To overcome the presumption entitling Mr. Aranda to appointment as Lead Plaintiff, the PSLRA requires "proof" that the presumptive Lead Plaintiff is inadequate or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). The competing movants cannot do this. Accordingly, Mr. Aranda respectfully requests that his motion be granted in its entirety.

Dated: July 31, 2023                    Respectfully submitted,

                                        */s/ Cullin O'Brien*
                                        Cullin O'Brien
                                        Florida Bar No. 0597341
                                        **CULLIN O'BRIEN LAW, P.A.**
                                        6541 NE 21st Way
                                        Fort Lauderdale, Florida 33308
                                        Tel: (561) 676-6370
                                        Fax: (561) 320-0285
                                        E-mail: cullin@cullinobrienlaw.com

                                        *Proposed Liaison Counsel for Alvaro Aranda and the Class*

                                        Adam M. Apton (*pro hac vice* forthcoming)
                                        **LEVI & KORSINSKY, LLP**
                                        55 Broadway, 4th Floor
                                        New York, NY 10006
                                        Tel: (212) 363-7500
                                        Fax: (212) 363-7171
                                        Email: aapton@zlk.com

                                        *Proposed Lead Counsel for Alvaro Aranda and the Class*

10

## CERTIFICATE OF SERVICE

I HEREBY certify that on July 31, 2023, I electronically filed the foregoing document with

the Clerk of the Court CM/ECF.


*/s/ Cullin O'Brien*
Cullin O'Brien