# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | Case No. 1:23-cv-21773-KMM-LFL |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | Case No. 1:23-cv-22009-RKA-LMR |

**REPLY IN SUPPORT OF MOTION OF JOHN HAWORTH AND
JAMES GILLESPIE FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT  AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

011171-11/2317148 V5

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................................1

II.  ARGUMENT......................................................................................................................2

    A.  Kosowsky Has Failed to Substantiate His Financial Interest,
        Adequacy and Typicality ...................................................................................2

    B.  Haworth and Gillispie Are Entitled to the Most Adequate Lead
        Plaintiff Presumption .......................................................................................4

    C.  The Other Movants Have Not Rebutted the Presumption that
        Haworth and Gillespie Are the Most Adequate Lead Plaintiff..............................7

III.  CONCLUSION..................................................................................................................10

011171-11/2317148 V5

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re 21st Century Holding Co. Sec. Litig.*,
2007 WL 9220955 (S.D. Fla. Nov. 20, 2007)..........................................................................1, 5

*Abouzied v. Applied Optoelectronics, Inc*,
2018 WL 539362 (S.D. Tex. Jan. 22, 2018) .................................................................................9

*In re Boeing Co. Aircraft Sec. Litig.*,
2020 WL 476658 (N.D. Ill. 2020) ...........................................................................................3, 4

*Carvelli v. Ocwen Fin. Corp.*,
2017 WL 11068524 (S.D. Fla. July 14, 2017)............................................................................5

*Eastwood Enterprises v. Farha*,
2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ...............................................................................1

*Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*,
2007 WL 170556 (M.D. Fla. Jan. 18, 2007)................................................................................1

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004)................................................................................................6

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017).........................................................................................3

*George v. China Auto. Sys., Inc.*,
2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...............................................................................4

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)......................................................................................8, 9

*Hall v. Medicis Pharm. Corp.*,
2009 WL 648626 (D. Ariz. Mar. 11, 2009)................................................................................6

*Hessefort v. Super Micro Computer, Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ......................................................................................6

*Khunt v. Alibaba Group Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................................................9

*Kornfield v. Opteum Inc.*,
2008 WL 11408525 (S.D. Fla. Sept. 29, 2008) ...........................................................................7

011171-11/2317148 V5

*Nakamura v. BRF S.A.*,
   2018 WL 3217412 (S.D.N.Y. July 2, 2018) ...........................................................................10

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007).............................................................................8

*Schlimm v. Welbilt, Inc*,
   2019 WL 3815149 (M.D. Fla. July 3, 2019) ............................................................................1

*Steppacher v. Alfi, Inc.*,
   2022 WL 1115049 (S.D. Fla. Apr. 13, 2022) .......................................................................6, 7

*In re Tronox, Inc. Secs. Litig.*,
   262 F.R.D. 338 (S.D.N.Y.2009) ...............................................................................................8

*White Pine Invs. v. CVR Ref., LP*,
   2021 WL 38155 (S.D.N.Y. Jan. 5, 2021) .................................................................................9

*Zaker v. Ebang Int'l Holdings Inc., et al.*,
   No. 21-cv-3060 (KPF) (S.D.N.Y. July 21, 2020)....................................................................9

011171-11/2317148 V5

## I.      INTRODUCTION

After two rounds of briefing, it is now evident that Kosowsky, the lead plaintiff movant purporting to have the largest loss, is unfit to represent the Class. Kosowsky has still failed to set forth all of his transactions in Icahn securities during the Class Period, as the PSLRA unambiguously requires at the intial motion stage. 15 U.S.C.A. § 78u-4(a)(2)(iv). Despite requests from a competing applicant, Kosowsky refuses to provide any information about himself, thereby depriving the movants from running even a basic background check. ECF Nos. 47-3, 47-4. Moreover, given Kosowsky's frenetic in-and-out "day trading" in Ichan securities throughout the Class, Defendants will surely press the the unique defense that Kosowsky did not actually rely on Defendants' alleged misstatements. The plethora of red flags render Kosowsky an inappropriate lead plaintiff.

Haworth and Gillispie, having suffered $2,556,775.64 in combined losses in connection with their Class Period purchases of Ichan securities (ECF No. 23-2 at p. 2), have the next largest financial interest of the competing movants. In contrast to Kosowsky, none of the competing movants genuinely challenges Haworth's and Gillispie's adequacy or typicality. Rather, they argue that Haworth and Gillispie cannot aggregate their individual losses for purposes of establishing their financial interest. But Haworth and Gillispie are sophisticated retail investors with a longtime preexisting relationship who jointly chose to retain counsel and move together as co-lead plaintiffs. ECF No. 23-4. Under similar circumstances, district courts in the Eleventh Circuit have repeatedly acknowledged that aggregation of financial interests and losses is in line with the directives of the PSLRA and have appointed groups of movants as lead plaintiffs.[1]

---

[1] *See, e.g., In re 21st Century Holding Co. Sec. Litig.*, 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007); *Schlimm v. Welbilt, Inc*, 2019 WL 3815149, at *2 (M.D. Fla. July 3, 2019); *Eastwood Enterprises v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008); *Edward J.*

- 1 -

Accordingly, Haworth and Gillispie's motion should be granted in its entirety and the competing motions should be denied.

## II.   ARGUMENT

### A.   Kosowsky Has Failed to Substantiate His Financial Interest, Adequacy and Typicality

The limited information known about movant Kosowsky only serves to confirm that he cannot adequately represent the Class.

*First*, Kosowsky has failed to identify all his Class Period transactions in Icahn securities during the Class Period, which the PSLRA mandates must be provided by applicants at the motion stage. 15 U.S.C.A. § 78u-4(a)(2)(iv). Rather, Kosowsky has appended to his sworn certification contradictory LIFO and FIFO loss charts. As made clear in Haworth and Gillespie's response, Kosowsky's loss charts' attempts to match sales of shares Kosowsky held prior to the alleged Class Period makes it difficult (if not impossible) for the competing movants to determine the actual transactions Kosowsky made in Icahn securities during the alleged class period. Having failed to satisfy this basic prerequisite, Kosowsky's lead plaintiff motion is dead on arrival.

*Second*, despite Aranda's counsel's request (ECF No. 47-3), Kosowsky has mysteriously refused to provide basic information about himself, including a general description of his professional background, investment experience, and experience overseeing counsel. ECF No. 47-4. To date, neither the Court nor the movants know who Kosowsky is, his age, where he lives, his educational and professional background, criminal or civil history, or his understanding of the lead plaintiff's responsibilities. Kosowsky's curious refusal to provide no information about

---

*Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 2007 WL 170556, at \*2 (M.D. Fla. Jan. 18, 2007).

011171-11/2317148 V5

himself underscores his inadequacy. *See, e.g., In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, *2 (N.D. Ill. 2020) (observing that movants' submissions, which provided no information about the movants, supported finding of inadequacy).

*Third*, there are a multitude of apparent errors in the transaction history set forth in Kosowsky's loss charts. ECF No. 46-1. Specifically, there are over twenty trades that Kosowsky made that fall outside the daily historical price ranges of Icahn shares on the dates provided. *Id.* According to Kosowsky's counsel, the atypical pricing for these trades was due to the trades being made outside market hours. ECF No. 47-4. Nevertheless, Kosowsky has inexplicably refused Aranda's counsel's request to provide documentation substantiating the accuracy of this claim. *Id.*; *See also, In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *2 (movants' failure to produce trade confirmations to substantiate unusual trading activity further undermined movants' adequacy).

*Finally*, Kosowsky's loss charts reveal that he engaged in a frenetic day trading strategy throughout the Class Period. Kosowsky traded prolifically, entering into over 500 buy and sell transactions during the Class Period, buying shares and selling shares on the same day on 51 separate occasions during the Class Period. *See* ECF No. 46-2. Moreover, Kosowsky was a serial in-and-out trader of Icahn stock during the Class Period. For example, between just August 10, 2018 through June18, 2020, Kosowsky had bought and then completely sold out of that Class Period position 60 separate times. *See* ECF No. 46-3. Here, Kosowsky's unorthodox trading strategy suggests that his trading was driven by a desire to capitalize on short-term fluctuations in the price of Icahn stock—*i.e.*, that he would have engaged in these transactions ***despite the Defendants' positive statements***. *See, e.g.*, *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 505, n.10 (D. Conn. 2017). If the Court were to appoint Kosowsky as Lead Plaintiff, then

this unusual day trading strategy will give the Defendants ample ammunition at the class certification stage of this litigation, when they will, inevitably, argue that Kosowsky cannot be entitled to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market." Whether Defendants will prevail on this day trading defense is largely irrelevant for purposes of deciding the lead plaintiff motions. Rather, the pertinent question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation. *See George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *7 (S.D.N.Y. July 3, 2013). Here, the substantial evidence on record showing that Kosowsky may be subject to the unique defense that he did not actually rely on Defendants' alleged misstatements is more than sufficient for the Court to decline to appoint Kosowsky as lead counsel.

In sum, given that Kosowsky and his trading has raised so many red flags, Haworth and Gillespie respectfully submit that the Court cannot appoint him to lead this complex, significant, and highly public litigation on behalf of thousands of Icahn investors. *See In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *2 (observing that "the Wangs had raised so many red flags that the Court could not 'in good conscience appoint them to lead this complex, significant, and highly public litigation on behalf of thousands of Boeing investors.'").

**B.**      **Haworth and Gillispie Are Entitled to the Most Adequate Lead Plaintiff Presumption**

With Kosowsky disqualified, Haworth and Gillespie together claim $2,556,775.64 in combined losses - the next largest loss on transactions in IEP securities during the Class Period. Competing movants Goldstein and Aranda do not dispute this loss figure. Rather, Goldstein first argues that allowing Haworth and Gillespie to combine their losses would somehow represent a subversion of the PSLRA's intention that actions be led by the movant with the largest financial

- 4 -

interest. ECF No. 48 at pp. 2-3, 13-14. But courts in this Circuit have repeatedly rejected this argument, recognizing that "aggregation of individual losses to form a small group is acceptable and derives from the language of the PSLRA." *See, e.g., In re 21st Century Holding Co. Sec. Litig.*, 2007 WL 9220955, at *4 (collecting cases).

In limited instances, courts in this Circuit have refused to appoint as lead plaintiff a group claiming the largest loss, but only after finding that the group was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *See, e.g., Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524, at *5 (S.D. Fla. July 14, 2017), *objections overruled*, 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) (quoting *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001).

Here, any attempt to paint Haworth and Gillespie as a lawyer-driven, manufactured grouping would fail for several reasons. ***First***, Haworth and Gillespie are two highly knowledgeable and experienced retail investors who have maintained both a business and personal relationship long pre-dating their motion for appointment as lead counsel. ECF No. 23-4 at ¶¶ 3-5. ***Second***, Haworth and Gillespie independently decided to move together after jointly retaining counsel, participating in several meetings, and establishing a structure for decision-making in this action. *Id*. at ¶¶ 6, 10-11, 14. Indeed, Haworth and Gillespie submitted a joint declaration in connection with their motion, illustrating their cohesive structure and ability to communicate and coordinate efficiently and on an expedited basis. *Id*. ***Third***, Haworth and Gillespie have ***already*** worked to adequately advance the interests of the class by, *inter alia*, proactively directing their counsel's investigation of potential claims. *Id*. at ¶¶ 4-5.

- 5 -

Next, movant Goldstein argues that the $75,921 difference in losses between him and Haworth and Gillespie is "*de minimis*" or "negligible" and therefore should not control the selection of lead plaintiff. ECF No. 48 at 2, 13-14. But Goldstein provides no authority suggesting that the Court should minimize a plaintiff's financial share when its lead is small. To the contrary, courts have consistently concluded that any financial difference is meaningful in determining a lead plaintiff. *See, e.g., Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (rejecting movant's argument that since the difference in losses is *de minimis* it should not control the selection of lead plaintiff).[2]

Finally, acknowledging that Haworth and Gillespie claim a larger loss than him, movant Aranda contends the Court should minimize approximate losses importance to the financial interest inquiry and instead place greater weight on the three other *Lax/Olsen* factors: (1) the number of shares purchased by a shareholder, (2) the number of shares retained by the shareholder at the end of the class period ("net shares"), and (3) the net funds expended. ECF No. 47 at pp. 2, 5-6. But courts in this Circuit have consistently held that the fourth Lax factor, approximate losses, is the most important and have often rendered a determination based solely on that analysis. *See Steppacher v. Alfi, Inc.*, 2022 WL 1115049, at *6 (S.D. Fla. Apr. 13, 2022) (holding "of the three factors, '[m]ost courts accord the third factor, the estimated losses, the greatest weight.'") (Quoting *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at

---

[2] *See, e.g., Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) ("[T]he Court cannot rely on the fact that the difference between Steamfitters and Rand is only a few hundred dollars. Rand has a greater financial stake in the controversy, however minute that greater stake may be in relation to the overall damage claim."); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("Although the Massachusetts Group concludes that the 'de minimus' difference of $26,000 should not be conclusive on the financial interest determination, the Ninth Circuit has given no indication that courts are free to ignore the statutory presumption given to the plaintiff with the 'largest financial interest in the relief sought by the class.'").

- 6 -

*2 (S.D. Fla. Oct. 15, 2021); *Kornfield v. Opteum Inc.*, 2008 WL 11408525, at *4 (S.D. Fla. Sept. 29, 2008) (focusing on the applicants who suffered the greatest loss).

**C.      The Other Movants Have Not Rebutted the Presumption that Haworth and Gillespie Are the Most Adequate Lead Plaintiff**

In addition to establishing themselves as the movant with the largest financial interest, Haworth and Gillespie have also made a sufficient showing that "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See* ECF No. 23-4 (showing identical claims with class members, lack of conflict of interest with class members and commitment to fulfilling lead plaintiff responsibilities).

In order to rebut this presumption, a competing movant must provide proof that Haworth and Gillespie, as the presumptive most adequate plaintiff, "is subject to unique defenses or will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Alfi, Inc.*, 2022 WL 1115049, at *4. Here, the competing movants have presented no such evidence.

For example, movant Goldstein contends that because Gillespie purchased 2,000 shares (or only 5% of his Icahn holdings) after the publication of the Hindenburg Report on May 2, 2023, Gillespie could be subject to a unique defense. ECF No. 48 at 13. But this argument conflicts with the complaint's allegations and class definition. Although the Hindenburg Article made allegations regarding the underlying fraud, at the time of its publication, the article was merely a partial disclosure of the fraud in the form of a third-party report that remained unconfirmed by Icahn itself. As set forth in the complaints, the fraud was not fully revealed until May 10, 2023, when IEP announced that it recorded a non-cash charge of $226 million related to Auto Plus (one of the key segments Hindenburg claims Icahn was overvaluing) and said that its "remaining equity investment in Auto Plus is now worth $0." IEP also revealed that the U.S.

011171-11/2317148 V5

Attorney's office for the Southern District of New York was seeking production of information relating to it and certain of its affiliates' corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence, and other materials. Since the Hindenburg article was merely a partial disclosure of the fraud, Gillespie's purchases of a small portion of shares after publication of the Hindenburg Report does not render Gillespie atypical or subject him to unique defenses. *See, e.g., In re Tronox, Inc. Secs. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y.2009) (Finding that purchases following partial corrective disclosures that do not "sufficiently correct ... prior false and misleading statements" do not render proposed lead plaintiff atypical.)

In addition, given that Goldstein has himself adopted the complaint's alleged class period that extends until the date of Icahn's corrective disclosure on May 10, 2023, it does not follow that Gillespie's purchases made on May 2, 2023 would be atypical of those made by other class members. *See, e.g., Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 354–55 (S.D.N.Y. 2011) (appointing lead plaintiff who purchased stock after a third-party report accused company of fraud as lead plaintiff's transactions after alleged partial disclosure were consistent with alleged class definition).[3]

Next, Aranda claims that Haworth and Gillespie are inadequate because they propose that in the event a material disagreement arises, they will attempt to resolve such disagreement

---

[3] *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007), which Goldstein cites (ECF No. 48 at 13) is inapt. There, the court did not reject the Pension & Annuity Group's lead plaintiff application because it purchased after a mere partial disclosure. Rather, the Court observed that "the lion's share of the Pension & Annuity Group's claimed losses may be uncollectible or at least subject to unique defenses in that Central States may have sold most of its shares before SafeNet announced corrective measures." *Id*. Here, both Haworth and Gillespie undisputedly purchased and held all their shares through the alleged corrective disclosures, and therefore Defendants have no unique loss causation argument to their claims.

011171-11/2317148 V5

through private mediation. *Id*. But Aranda fails to identify anything about this type of voluntary mechanism that means they will be delegating lead plaintiff decision-making authority to the agreed upon mediator.[4] To the contrary, the next sentence states, "We recognize that even in [that event] the ultimate decision will necessarily be informed by consulting one another and our counsel." ECF No. 23-4 at ¶ 6. "[T]hese sort of concrete commitments and plans for cooperation have been found to be positive indications that a group will act cohesively." *See White Pine Invs. v. CVR Ref., LP*, 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021) (approving group's plan to use an arbitrator for deadlocked decisions).[5]

Further, Aranda claims that Haworth and Gillespie's consent to filing as Lead Plaintiffs jointly, or alternatively, as individuals somehow undermines their commitment to functioning as a "cohesive" unit capable of adequately representing the class. But if anything, the representation exhibits their commitment to serving the Class in whatever capacity the Court finds appropriate. And, once again, the authorities Aranda cites for this proposition are inapt. ECF No. 47 at 18, citing *Tsirekidze v. Syntax-Brillian Corp*., 2008 WL 942273, at *3,4 (D. Ariz. Apr. 7, 2008) and *Abouzied v. Applied Optoelectronics, Inc*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018). In both those cases, the court did not reject the group applicant because they indicated a willingness

---

[4] Aranda engages in further conjecture in arguing that if Haworth and Gillespie needed assistance from an experienced mediator, it would take weeks to consult with the mediator. ECF No. 47 at 17. Aranda improperly assumes Haworth and Gillespie would need to retain mediators such as Robert Meyer, Esq., and Jed Melnick, Esq. for a full day of mediation. *Id*.

[5] Contrary to his suggestion, Aranda's cited authorities do not hold that a group's plan to use a mediator in the event a disagreement arises renders the lead plaintiff group inadequate. ECF No. 47 at 16-17, citing *Tan v. NIO Inc*., 2020 WL 1031489, at *4 (E.D.N.Y. Mar. 3, 2020); *Khunt v. Alibaba Group Holding Ltd*., 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) and *Zaker v. Ebang Int'l Holdings Inc., et al*., No. 21-cv-3060 (KPF) (S.D.N.Y. July 21, 2020), Transcript at 40:9-19 (attached to the Declaration of Adam M. Apton as Exhibit D).  Rather, in each of those cases, the court rejected the group's motion because they were lawyer-driven groups who had no pre-existing relationship, no meaningful involvement in the litigation and lacked a plan to manage the case. Aranda has made no such showing here.

011171-11/2317148 V5

to move either individually or jointly. Rather, the courts' decisions were driven by the concerns that the group members had no pre-existing relationship, were cobbled together by counsel, and the group failed provide any mechanism for resolving disputes. No such record exists here.

Finally, Aranda's reliance on *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018), is misplaced. There, the court afforded the group movant's pre-existing relationship minimal weight given they that they "offer no specifics as to their history of business collaboration and how it positions them to advance the interests of the class." *Id*. Here, in contrast, Haworth and Gillespie describe how they have successfully partnered on construction projects and collaborated on their investment decision in Icahn. ECF No. 23-4 at ¶ 4. In addition, Haworth's investment experience and Mr. Gillespie's training as a CPA will assist each in benefiting the Class.

### III.   CONCLUSION

For the foregoing reasons and the reasons set forth in his motion brief (ECF No. 23) and response brief (ECF No. 46), Haworth and Gillespie respectfully request that the Court issue an Order granting their motion in all respects and denying the competing motions.

DATED: July 31, 2023                    Respectfully submitted,

MADERAL BYRNE & FURST PLLC

By:  **John R. Byrne**
    John R. Byrne (0126294)
Rachel Wagner Furst (45155)
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 520-5690
john@maderalbyrne.com
rachel@maderalbyrne.com

- 10 -

Reed R. Kathrein (262161)
Lucas E. Gilmore (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*

- 11 -