## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-CV-21773-MOORE/LOUIS
Case No. 1:23-CV-22009-MOORE/LOUIS

| | |
|---|---|
| OSANEME OKARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | CLASS ACTION |
| MICHAEL LEVINE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., CARL C. ICAHN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ANDREW GOLDSTEIN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

    A.    Andrew Goldstein Is the Presumptive Lead Plaintiff ............................................ 2

        1.    Mr. Goldstein Has the Largest Financial Interest of Any Movant ............. 3

        2.    Mr. Goldstein Unquestionably Satisfies Rule 23's Requirements.............. 4

    B.    The Competing Movants Are Not Entitled to Appointment.................................. 6

        1.    Kosowsky's Atypicality and Inadequacy Doom His Motion ..................... 6

        2.    Haworth and Gillespie Fail to Address Unique Defenses ......................... 8

        3.    Aranda Has the Smallest Loss and Cannot Demonstrate Reliance............. 9

III.  CONCLUSION........................................................................................................ 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Applestein v. Medivation Inc.*,
   2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .......................................................... 4, 6

*Atanasio v. Tenaris S.A.*,
   331 F.R.D. 21 (E.D.N.Y. 2019) ................................................................................. 9

*Borteanu v. Nikola Corp.*,
   507 F. Supp. 3d 1128 (D. Ariz. 2020) ...................................................................... 6

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018) ............................................................ 3, 7

*City Pension Fund for Firefighters & Police Officers in Miami Beach v. Aracruz Cellulose S.A.*,
   2009 WL 10664427 (S.D. Fla. Aug. 7, 2009) .......................................................... 3, 7

*Erickson v. Snap, Inc.*,
   2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ...................................................... 6, 10

*George v. China Auto. Sys., Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ............................................................ 8

*Hurst v. Enphase Energy, Inc.*,
   2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ........................................................ 6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ................................................................................... 3, 9

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   2021 WL 4840857 (S.D. Fla. Oct. 15, 2021) .......................................................... 3, 5, 9

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..................................................................... 4, 8

*Karp v. Diebold Nixdorf, Inc.*,
   2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ......................................................... 8

*Kornfield v. Opteum Inc.*,
   2008 WL 11408525 (S.D. Fla. Sept. 29, 2008) ...................................................... 3, 9

*Luczak v. Nat'l Beverage Corp.*,
   2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) .......................................................... 3

*Miller v. Dyadic Int'l, Inc.*,
2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ................................................................ 8

*Nicolow v. Hewlett Packard Co.*,
2013 WL 792642 (N.D. Cal. Mar. 4, 2013)................................................................. 9

*Perez v. HEXO Corp.*,
2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)................................................................. 8

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
566 F. Supp. 3d 712 (S.D. Tex. 2021) ................................................................. 6, 7

*Police & Fire Ret. Sys. of Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)................................................................. 9

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................. 3

*Shaffer v. Digital Gen., Inc.*,
2013 WL 12430537 (N.D. Tex. Sept. 19, 2013)................................................................. 6

*Steppacher v. Alfi, Inc.*,
2022 WL 1115049 (S.D. Fla. Apr. 13, 2022) ................................................................. 3, 9

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................. 3, 5

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................. 1

Andrew Goldstein respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff (ECF No. 26) ("Motion") and in response to the opposition briefs filed by competing lead plaintiff movants Kosowsky (ECF No. 45), Haworth and Gillespie (ECF No. 46), and Aranda (ECF No. 47).[1]

## I.      INTRODUCTION

Pursuant to the PSLRA, movants seeking to be appointed lead plaintiff for the Class are required to demonstrate they have "the largest financial interest in the relief sought by the class" *and* "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Of the four remaining movants,[2] only Andrew Goldstein qualifies under *both* prongs of the PSLRA's lead plaintiff requirements.  None of the remaining movants dispute that Mr. Goldstein satisfies *all* of the statutory requirements as he filed a timely motion and response, seeks recovery of a $2.48 million loss, and satisfies Rule 23's typicality and adequacy requirements.  Moreover, unlike the remaining movants, Mr. Goldstein is not subject to any unique defenses, has provided detailed information about his background and commitment to fulfilling the fiduciary role of Lead Plaintiff, and has already demonstrated his adequacy by selecting qualified counsel as proposed Lead Counsel for the Class.

For the reasons set forth below and in Mr. Goldstein's Opposition, neither Kosowsky, Haworth and Gillespie, nor Aranda can trigger the PSLRA's most adequate plaintiff presumption because they each suffer from disqualifying defects.  Kosowsky is an atypical day trader who has

---

[1] Unless otherwise noted, all capitalized but undefined terms have the meanings ascribed in Mr. Goldstein's opening brief (ECF No. 26-1) and opposition brief (ECF No. 48) ("Opposition"), all emphasis is added, and citations are omitted.  All references to "ECF No. __" are to docket entries in *Okaro v. Icahn Enterprises L.P.*, No. 1:23-cv-21773 (S.D. Fla.).

[2] As noted in the Opposition at 1, n.2, several movants declined to pursue their motions further. While Brett Morris and Brian Harris each filed motions (ECF Nos. 21, 25), neither of them submitted responses in further support of their motions or in opposition to the competing motions.

failed to make even a preliminary showing of adequacy by providing no information about himself and incomplete information about his transactions in IEP securities. Kosowsky's purchases following the alleged partial disclosure on May 2, 2023 underscore his atypicality. Haworth and Gillespie rightly point out the flaws in Kosowsky's submission, but they ignore that Gillespie purchased IEP units after the alleged partial disclosure of fraud. Given Gillespie's post-partial purchase exposes the pair to a unique defense that could undermine Class interests—and together they claim a nominal 3% greater LIFO loss than Mr. Goldstein who has no such exposure—Haworth and Gillespie's motion should be rejected. Lastly, Aranda has the smallest financial interest and the unique defenses to which he is subject are even more pronounced: his claims are not typical of those of the class as he purchased 62% of his total IEP shares after the partial disclosure and after having *sold out* of his position in IEP following that disclosure. Thus, he too is exposed to unique defenses that threaten to preoccupy the Class. Accordingly, Mr. Goldstein respectfully requests that the Court grant his Motion and deny the competing motions.

II.      **ARGUMENT**

    A.      **Andrew Goldstein Is the Presumptive Lead Plaintiff**

As established in his Motion and Opposition, Mr. Goldstein is the "most adequate plaintiff" and presumptive Lead Plaintiff because he has demonstrated his substantial financial interest in this litigation *and* his ability to satisfy all the prerequisites of the PSLRA and Rule 23. *See* ECF Nos. 26 and 48. Unlike the competing movants, Mr. Goldstein is not subject to unique defenses that may impede his ability to prosecute the claims on behalf of the Class because he did not purchase any IEP units following the partial disclosure of fraud and provided detailed information about his background. Indeed, Mr. Goldstein's clean trading history and qualifications are *unchallenged* by any competing movant.

### 1.      Mr. Goldstein Has the Largest Financial Interest of Any Movant

When analyzing which movant has the largest financial interest, courts consider four factors, including the number of shares purchased, the number of net shares purchased, the total net funds expended, and the alleged loss. *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018).[3] "*[M]ost courts accord . . . estimated losses[] the greatest weight*." *Steppacher v. Alfi, Inc.*, 2022 WL 1115049, at *6 (S.D. Fla. Apr. 13, 2022); *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at *2 (S.D. Fla. Oct. 15, 2021) (same); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478-79 (S.D.N.Y. 2011) (same); *Kornfield v. Opteum Inc.*, 2008 WL 11408525, at *4 (S.D. Fla. Sept. 29, 2008) (appointing movants with the greatest total losses). If the movant with the greatest financial interest does not also satisfy Rule 23, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies" Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing movant that did not initially claim the largest financial interest but was the first movant that satisfied "both prongs of Rule 23"); *City Pension Fund for Firefighters & Police Officers in Miami Beach v. Aracruz Cellulose S.A.*, 2009 WL 10664427, at *3 (S.D. Fla. Aug. 7, 2009) (same).

As detailed in the Opposition and below, Kosowsky is not entitled to the "most adequate plaintiff" presumption because he is an atypical day trader subject to unique defenses, and Kosowsky's deficient lead plaintiff submission establishes his *in*adequacy. *See* Opposition at 10-17. Haworth and Gillespie are not entitled to the "most adequate plaintiff" presumption because

---

[3] The four factors are often referred to as the "*Lax-Olsten*" factors for their namesake cases. *See Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *4, n.8 (S.D. Fla. Dec. 6, 2018).

although they claim an aggregated, de minimis 3% greater loss than Mr. Goldstein, Gillespie purchased after the May 2, 2023 partial disclosure of fraud. That purchase exposes Haworth and Gillespie—and the Class they seek to represent—to a unique defense. *Id.* at 18-19.

Mr. Goldstein, the movant with the next-largest financial loss, claims a loss of $2.48 million in connection with his purchases of IEP units throughout the Class Period. *See* ECF No. 26-4. Mr. Goldstein purchased 137,971 IEP units and expended $4.8 million in net funds on these investments. *Id.* Unlike Kosowsky and Gillespie—who respectively purchased 14,000 and 2,000 IEP units *after* the May 2, 2023 corrective disclosure (*see* ECF Nos. 20-1 at 94 and 23-1 at 5)—Mr. Goldstein purchased 82,541 net IEP units *and held* those units through both alleged corrective disclosures on May 2 and May 10, 2023. *See* ECF No. 26-4. Courts regularly prefer to appoint movants like Mr. Goldstein with a "clean" trading history unmuddied by purchases following corrective disclosures. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movants that purchased shares "after partial disclosures" because such purchases subject them to unique defenses and "raise serious questions" about their reliance on the alleged misrepresentations and omissions); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *3-4 (N.D. Cal. Sept. 20, 2010) (finding atypical movant with as many as 44 trades in a day and instead appointing investor with the "cleanest transactional history" of the movants).

### 2. Mr. Goldstein Unquestionably Satisfies Rule 23's Requirements

With such a clean trading history, Mr. Goldstein satisfies both the PSLRA's greatest financial interest requirement and Rule 23's typicality and adequacy requirements. Indeed, the presumption in favor of Mr. Goldstein remains unrebutted by the competing movants, who question neither the accuracy of Mr. Goldstein's financial interest calculations nor Mr. Goldstein's

typicality and adequacy.[4]   Unlike the competing movants, Mr. Goldstein seeks recovery of damages on IEP units purchased throughout the Class Period and did not purchase any shares following the May 2 partial disclosure, thus rendering his claims typical of those of the Class. Thus, Mr. Goldstein is fully capable of demonstrating reliance on Defendants' misrepresentations and omissions and is not subject to any unique defenses.

Importantly, Mr. Goldstein has detailed his credentials for serving as Lead Plaintiff. Among other qualifications, he has described his educational background, investment experience, and employment history.  *See* ECF No. 26-6, ¶ 3.  He has also described his dedication to prosecuting the Class's claims through resolution and his understanding of the obligations of a lead plaintiff under the PSLRA.  *See id.* ¶¶ 5-11.  The competing movants have not challenged in any way Mr. Goldstein's qualifications, commitment to serve as a fiduciary for the Class, or selection of qualified counsel, thereby conceding that Mr. Goldstein is eminently qualified to serve as Lead Plaintiff.  *See*, *e.g.*, *Syntax*, 2008 WL 942273, at *5 (appointing movant with the fourth greatest financial interest because it is the first that satisfies both prongs of Rule 23 and "opposing movants make no argument . . . other than pointing out" its lower financial stake).

---

[4] Kosowsky argues only that his loss is "19.887% higher" than Mr. Goldstein's, ECF No. 45 at 5, but as detailed herein and in the Opposition, Kosowsky is not entitled to the "most adequate plaintiff" presumption given his status as a day trader and his deficient submission.  Haworth and Gillespie do not advance any argument against Mr. Goldstein's appointment.  The Court should decline Aranda's invitation to weigh the three *Lax-Olsten* factors other than alleged loss in his favor, ECF No. 47 at 8, because Aranda concedes that Mr. Goldstein incurred a "larger loss" (*id.*) and does not challenge Mr. Goldstein's typicality and adequacy.  Because Mr. Goldstein alleges a greater loss—which "[m]ost courts accord . . . the greatest weight[,]" *Short Squeeze*, 2021 WL 4840857, at *2—the presumption in his favor "may be rebutted only upon proof" of his inadequacy or that he is subject to unique defenses. *Id.*  There is no such proof in the record or otherwise.

**B.     The Competing Movants Are Not Entitled to Appointment**

In contrast to the consensus around Mr. Goldstein's financial interest, typicality, and adequacy, competing movants Kosowsky, Haworth and Gillespie, and Aranda each face fatal flaws—including an array of unique defenses—that preclude them from being appointed under the PSLRA.  The appointment of any of the competing movants would all but guarantee that their unique issues would become the focus of the litigation, to the detriment of the Class.  *See*, *e.g.*, *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 720 (S.D. Tex. 2021) ("There is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage" where a non-conflicted candidate is available); *Erickson v. Snap, Inc.*, 2017 WL 11592635, at *4 (C.D. Cal. Sept. 18, 2017) (same).   Given Mr. Goldstein's undisputed qualifications to serve as Lead Plaintiff, the competing movants' motions must be denied.

**1.     Kosowsky's Atypicality and Inadequacy Doom His Motion**

Kosowsky is a day trader who cannot satisfy Rule 23's typicality and adequacy requirements.  *See Borteanu v. Nikola Corp.*, 507 F. Supp. 3d 1128, 1139 (D. Ariz. 2020) (disqualifying day trader when doubts about his adequacy were raised by trading that "seems to show he did not rely" on alleged fraudulent statements), *vacated on other grounds*, *In re Mersho*, 6 F. 4th 891 (9th Cir. 2021); *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020) (disqualifying day traders given "serious concerns about their vulnerability to a defense that they were trading in response to information other than the alleged misstatements and omissions"); *Medivation*, 2010 WL 3749406, at *3 (same); *Shaffer v. Digital Gen., Inc.*, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013) (disqualifying day trader whose "high[-]volume trading activity, ***including buying and selling [company] stock on the same day***, raises serious concerns about his typicality and his susceptibility to unique defenses").

Kosowsky's focus on the *Lax-Olsten* factors other than alleged loss, ECF No. 45 at 4-7, cannot save his motion.[5]  Instead of grappling with his unusual trading (*e.g.*, rapidly purchasing and selling the same number of IEP units within five business days 140 times during the Class Period, ***including 69 times on the same day***, Opposition at 13) and the deficiencies in his motion (*e.g.*, failing to provide a PSLRA-required list reflecting each transaction during the Class Period, *id.* at 16), Kosowsky maintains he is not aware of any conflicts nor of "any unique defenses Defendants could raise that would render him an inadequate representative of the proposed Class." ECF No. 45 at 8.  However, such "frenzied trading activity"—including "repeated in-and-out stock transactions"—renders Kosowsky atypical and subject to unique defenses, including a lack of reliance on the alleged misstatements and omissions.  *Apache*, 566 F. Supp. 3d at 719-20.[6]

Likewise, Kosowsky's omission of a complete transactions list as required by the PSLRA and failure to provide ***any*** information about his background or qualifications to serve as a fiduciary for the Class (in a declaration or otherwise) underscore his inadequacy and ineligibility to serve as Lead Plaintiff.  Beyond conclusory assertions "that he will adequately represent" Class interests (ECF No. 45 at 7), the only specifics in the record concern his lack of experience, *i.e.*, a generic representation that Kosowsky is neither currently nor in the past three years has served as a representative in any securities class actions.  *See* Certification of Philip Kosowsky, ECF No.

---

[5] Kosowsky oddly focuses on his FIFO losses (ECF No. 45 at 2, 6, n.3, and 7), when "[c]ourts have criticized the FIFO method because it does not account for the amount an investor recovers by selling shares during the Class Period at the allegedly inflated prices available to all investors." *Mednax*, 2018 WL 8804814, at *5 ("Courts prefer the [LIFO] method of accounting and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases").

[6] Given his silence on the issue in his papers, Kosowsky is also seemingly unaware of his susceptibility to unique defenses that arise from his purchase of 14,000 shares following publication of the Hindenburg report on May 2, 2023. *See*, *e.g.*, *Aracruz*, 2009 WL 10664427, at *5 (finding atypical trading, including "purchases after a potential corrective disclosure," disqualified movant given exposure to unique defenses and "issues of reliance and causation").

20-1 at 69, ¶ 4.  "Taken together," these errors and omissions evince "a certain carelessness about detail that undermines" Kosowsky's adequacy.  *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019).  Given his failure to make even a preliminary showing of adequacy, Kosowsky cannot be appointed.  *See Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) ("While the size, available resources or even experience of a candidate are not dispositive, . . . they are nonetheless relevant to reaching a determination as to whether a candidate" is adequate).[7]  To the extent Kosowsky seeks to supplement his motion with additional information filed together with his reply, the Court should reject such information as untimely.  *See Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) (rejecting supplementation after the "hard-and-fast" 60-day deadline).

### 2.      Haworth and Gillespie Fail to Address Unique Defenses

Haworth and Gillespie do not address their own exposure to the unique defense that Gillespie purchased 2,000 IEP units on May 2, 2023, ***after*** the first partial disclosure of fraud caused a 20% decline in IEP's stock price.  Courts routinely disqualify movants that purchase shares after corrective disclosures because such transactions "raise serious questions" about reliance on the alleged misrepresentations and omissions.  *Petrobras*, 104 F. Supp. 3d at 623; *see also George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6-7 (S.D.N.Y. July 3, 2013) (denying class certification where named plaintiffs continued to purchase securities after the fraud was revealed).  Given the $75,921, or 3%, difference between Haworth and Gillespie's collective LIFO loss and Mr. Goldstein's LIFO loss, the Court should first consider Mr. Goldstein—who is the

---

[7] Haworth and Gillespie cite similar issues and risks that Kosowsky would pose to the Class's interests including his failure to supply any information about himself or his ability to serve Class interests (ECF No. 46 at 8), his submission of an incomplete certification that is rife with errors (*id.* at 10), and his unorthodox trading strategy that exposes him to unique defenses (*id.* at 14).

only movant who lacks exposure to such unique defenses—before considering the motion of Haworth and Gillespie.  *See*, *e.g.*, *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at \*2 (S.D.N.Y. Feb. 21, 2007) ("very slight [2%] difference" between movants' losses "cannot dictate such an important result[,]" especially where movant with $40,000 greater loss is "subject to unique defenses").

### 3.      Aranda Has the Smallest Loss and Cannot Demonstrate Reliance

Among the four competing movants, Aranda has the smallest LIFO loss, which alone precludes his consideration for being the "most adequate plaintiff."  *Alfi*, 2022 WL 1115049, at \*6; *Short Squeeze*, 2021 WL 4840857, at \*2; *Opteum*, 2008 WL 11408525, at \*4.  Aranda argues that the $170,000 difference between his and Mr. Goldstein's claimed losses "is relatively inconsequential" and encourages the Court to weigh other, secondary factors to determine financial interest.  ECF No. 47 at 13.  However, the Court need not "repeat the inquiry" nor "consider[] the plaintiff with the next-largest financial stake" (*i.e.*, Aranda) because, reviewing motions in sequential order by loss, Mr. Goldstein, "who is both willing to serve and satisfies" Rule 23, should be appointed Lead Plaintiff.  *Cavanaugh*, 306 F.3d at 730.  Moreover, courts routinely reject arguments that the figures Aranda cites—total shares, net shares, and net funds expended—should be given priority over total loss in assessing movants' financial interests.  *See*, *e.g.*, *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 26-29 (E.D.N.Y. 2019) ("[a]lthough [movant] purchased a greater number of total and net shares during the class period and expended a greater amount of net funds, [competing movant] has a greater loss," which "is the most important factor"); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at \*5 (N.D. Cal. Mar. 4, 2013) (no reason "to bump a competing movant with significantly larger losses" in favor of other factors).

Even if the Court were to consider Aranda's motion, and it should not, Aranda effectively concedes that he must be disqualified because he agrees that "the ***mere possibility*** that a unique

9

defense could become the focus of the litigation is enough to rebut the most adequate plaintiff presumption." ECF No. 47 at 19. As detailed in the Opposition, after *liquidating his entire position* in IEP units in response to the May 2, 2023 partial disclosure of fraud, Aranda purchased 129,601 IEP units on May 4 and 5, 2023—a whopping 63% of the 205,134 total IEP units Aranda purchased during the Class Period. Aranda is exposed to the same type of unique defense that he maintains should disqualify Kosowsky (Mr. Goldstein concurs). *Id.* at 20 (highlighting the "likelihood Defendants will argue that Kosowsky did not rely on their alleged misstatements in making his investment decisions"). Here as in *Snap*, the fact that "[m]ore than 60%" of Aranda's shares were "purchased after the exact revelation of alleged fraud . . . expose[s] [Aranda] to unique defenses regarding whether [Aranda] actually relied on any alleged misrepresentations by" IEP. 2017 WL 11592635, at *3. The fact that Aranda purchased this significant position *after selling out* of IEP units in seeming reaction to the partial disclosure further emphasizes his atypicality.

## III.   CONCLUSION

Andrew Goldstein has a significant financial interest in this litigation and, critically, is the only movant whose appointment would comport with the typicality and adequacy requirements of Rule 23—a point conceded by competing movants Kosowsky, Haworth and Gillespie, and Aranda. Accordingly, Mr. Goldstein respectfully requests that the Court enter an Order: (1) consolidating the above-captioned actions; (2) appointing him as Lead Plaintiff for the Class; (3) approving his selection of Saxena White as Lead Counsel for the Class; and (4) denying all competing motions.

Dated:  July 31, 2023                                      Respectfully submitted,

                                                          */s/ Lester R. Hooker*
                                                          Lester R. Hooker

                                                          **SAXENA WHITE P.A.**
                                                          Maya Saxena (FL Bar No. 95494)
                                                          Lester R. Hooker (FL Bar No. 32242)
                                                          7777 Glades Road, Suite 300

Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Andrew Goldstein, and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice forthcoming*)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Proposed Lead Plaintiff Andrew Goldstein*

11

## CERTIFICATE OF SERVICE

I, Lester R. Hooker, hereby certify that, on July 31, 2023, I authorized a true and correct copy of the foregoing to be electronically filed with the clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Lester R. Hooker*
Lester R. Hooker

12