**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PHILIP KOSOWSKY and GARY COTON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ICAHN ENTERPRISES L.P., ICAHN ENTERPRISES HOLDINGS L.P., ICAHN ENTERPRISES G.P. INC., CARL C. ICAHN, ARIS KEKEDJIAN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br><br>    Defendants. | Case No. 1:23-cv-21773-KMM |

**LEAD PLAINTIFF'S MOTION TO STRIKE AND OBJECTION
RESPECTING DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

Lead Plaintiff Philip Kosowsky hereby moves to strike and objects to statements asserted in "Defendants' Reply in Support of the Motion to Dismiss the Consolidated Class Action Complaint" ("Reply") (i) regarding the wholly new argument raising a procedural basis for dismissal that Defendants could have raised in the opening brief they filed in support of their motion to dismiss, but did not, and (ii) raising contestable issues of fact that are not appropriate for judicial notice, consideration, or determination against Plaintiffs at this stage of the proceedings.

In support of this motion, Lead Plaintiff states:

1. On January 12, 2024, Lead Plaintiff filed the Consolidated Class Action Complaint ("CCAC") (Dkt. 85).

2. On March 12, 2024, Defendants filed a Motion to Dismiss the Consolidated Class Action Complaint ("Motion") and supporting Brief ("Opening Brief") (Dkt. 97).

3. With leave of Court (Dkt. 98), on April 11, 2024, Lead Plaintiffs timely filed their Response in Opposition ("P. Opp.") (Dkt. 99) to Defendants' Motion.

4. On May 13, 2024, Defendants filed their Reply (Dkt. 102). In Section II.A of their Reply, Defendants included a new argument, not raised in their Opening Brief, pertaining to the form of the pleading of the causes of action within the CCAC and seeking dismissal *with prejudice* on that basis. Defendants' failure to raise this argument in their Opening Brief constitutes waiver. *See, e.g., Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003) (refusing to consider an argument raised for the first time in an appellant's reply brief). Section II.A should be stricken from the Reply and should not be considered when the Court rules on Defendants' Motion to Dismiss.

5. At page 5 and in Section III. A. of their Reply, Defendants sought to use the contents of documents filed by Defendants with the U.S. Securities and Exchange Commission

("SEC") for the truth of the matters asserted within them, without having sought judicial notice of the documents for that purpose.  Such argument violates well-settled law in this Circuit and is further inappropriate under Fed. R. Evid. Rule 201.  As such, Defendants' arguments based on their counter-allegations of "fact" at page 5 and in Section III. A., as more fully identified below, should also be stricken from the Reply and should not be considered when the Court rules on Defendants' Motion to Dismiss.

6.　　　For the reasons stated in the below Memorandum of Law, Lead Plaintiff requests relief, as set forth more specifically in the concurrently filed [Proposed] Order.

**MEMORANDUM OF LAW**

**I.　　DEFENDANTS' REPLY IMPROPERLY SUBMITS A NEW ARGUMENT**

Pursuant to Local Rule 7.1(c), a "reply memorandum shall be strictly limited to the rebuttal of matters raised in the memorandum in opposition…" and where the movant fails to comply with this mandate, the Court may refuse to consider new material inappropriately raised. S.D. Fla. L. R. 7.1(c); see also *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (issues raised for the first time in a reply brief are not properly before the court and will not be considered); *Foley v. Wells Fargo Bank, N.A.*, 849 F.Supp.2d 1345, 1349-50 (S.D. Fla. Feb 17, 2012) (refusing to consider argument raised for first time in reply); *Willis v. DHL Global Customer Solutions (USA), Inc.*, 2011 WL 4737909 at *3 (S.D. Fla. Oct. 7, 2011) (it is not appropriate to raise new arguments in a reply and collecting cases).  As this Court very recently held, arguments raised for the first time in a reply are "forfeited."  *Escobar Soto v. That Certain 2002 Midnight Express Speed Boat*, 2024 WL 216548 at *2 n.2 (S.D. Fla. Jan. 19, 2024) (declining to address arguments in support of a motion to dismiss that the defendants raised, for the first time, in a reply brief and quoting *Louis*

*v. U.S.,* 2023 U.S. Dist. LEXIS 125329 at \*8 (S.D. Fla. Jul. 19, 2023) ("a court 'need not consider arguments raised for the first time in a reply.'").[1]

In their Reply at Section II.A. (Dkt. 102 at 14-15), Defendants argue that Lead Plaintiff's "Dividend Inducement Scheme" claim must be dismissed because the CCAC, as a matter of form, does not separately plead this claim for violating Rule 10b-5 subparts (a) and (c) in a count distinct from related claims for violation of Rule 10b-5 subpart (b).  This argument was not made in the Defendants' Opening Brief.  Rather, Defendants moved to dismiss the Dividend Inducement Scheme related claim in their Opening Brief on other grounds, but did not raise any procedural basis for dismissal of that claim.  As a result, Defendants have "forfeited" the argument, and Lead Plaintiff's motion to strike Section II. A of the Reply should be granted.[2]  *See Escobar Soto,* 2024 WL 216548 at \*2 n.2.

## II.   THE REPLY IMPROPERLY RELIES ON CONTENTIONS OF PURPORTED FACT OUTSIDE THE COMPLAINT

In the Eleventh Circuit, well-pleaded factual allegations of the Complaint, and all reasonable inferences arising therefrom, are to be accepted as true when considering a motion to dismiss.  *Worthy v. City of Phoenix*, 930 F.3d 1206, 1217 (11th Cir. 2019); *Grp. V. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). While a defendant may rely on the contents of SEC filings outside the Complaint to identify statements made to the market, on a motion to dismiss such statements may not be embraced for their truth.  *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d

---

[1] In *Louis,* this Court based its decision, in part, on a ruling of the Eleventh Circuit that it need not consider an appellant's argument raised for the first time in the appellant's reply brief. *Louis*, 2023 U.S. Dist. LEXIS 125329 at \*8-9 (citing, *inter alia, Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003)).

[2] Indeed, although in their Reply, Defendants seek dismissal of the CCAC *with prejudice* on this procedural grounds, they rely on a case in which a plaintiff's complaint was dismissed without prejudice and with leave to amend to correct a procedural defect.  *Gnanaraj v. Lillium,* 2023 WL 9064669 (S.D. Fla. Dec. 18, 2023).

1308, 1319 (M.D. Fla. 2002) ("a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the documents contain and ***not to prove the truth of the documents' contents***) of relevant public documents required to be filed with the SEC") (emphasis added); *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558, at *4–5 (M.D. Ga. Mar. 23, 2018) (same). *See also, Land Tr. Serv. Corp. for Tr. No. 1009CB v. MortgageIt, Inc.*, No. 14-CV-23885, 2014 WL 12605138, at *3 (S.D. Fla. Dec. 29, 2014) (refusing to taking judicial notice of an agreement to establish the truth of the matters asserted in the agreement, finding it a factual issue more appropriately addressed on a motion for summary judgment).

A court may exercise its discretion to take judicial notice of a fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination from sources whose accuracy cannot reasonably by questioned. Fed. R. Evid. 201(b). In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). If the fact is in dispute or is not incontrovertible, judicial notice is improper. *Id.*

Recognizing their inability to meet this standard, Defendants have not requested that the Court take judicial notice of *any* of the exhibits cited in their Opening Brief or Reply for the truth of the matters stated in those documents.[3] Instead, they have introduced "factual" statements from these exhibits, as if they are true facts, in order to contradict well-pleaded allegations of the CCAC. Two examples suffice to show Defendants' improper argument.

---

[3] In the Opposition Brief, Lead Plaintiff noted generally Defendants' improper use of the exhibits cited in their Opening Brief (*see* P. Opp. at 3 & n.7), but Defendants have seemingly ignored the objection to their improper references to such documents for the truth of the matters stated in them, by making even further arguments based on their counter-narrative "facts," necessitating this Motion to Strike and Objection.

*First*, citing to their press release issued on August 4, 2023, at the close of the Class Period, Defendants assert as a fact that Defendant Icahn chose to lower the quarterly dividend paid to IEP shareholders to $1 from $2 in order to "maintain[] its historical distribution yield of about 14%." Reply at 18-20. Defendants' two page discussion, including various calculations of "distribution yields," ignores the fact that there is no allegation before the Court that some formulaic "historical distribution yield" was the basis used by Icahn to set the amount of quarterly distributions, which were a constant $2 per quarter for 16 straight quarters amid unit trading price swings and inconsistent financial results.  CCAC ¶ 32.  Indeed, Defendants' assertion is directly contradicted by the CCAC, which sets forth Defendants' claimed stated bases for setting the quarterly distributions, and also accurately alleges that even after IEP's unit trading price fell significantly after the Hindenburg Report was issued on May 2, 2023, Defendants still maintained the $2 per unit quarterly dividend *See* CCAC at ¶¶ 23, 24.  Contrary to their assertion that they were maintaining its "historical distribution yield of about 14%," one consequence of setting the Q1'23 quarterly dividend at $2 – even as the unit trading price fell to $30.09 per unit immediately before the dividend was declared by the board – was that it amounted to a dividend yield at that time of a whopping 26.5 %. At bottom, it was only after delinking IEP's unit trading price margin call trigger from his $4.7 Billion margin loans that Defendant Icahn suddenly abandoned the Scheme and radically lowered the dividend to $1 without fear of a margin call.  CCAC at ¶¶ 27-29; P. Opp. at 2, 7, 9-10.  No "factual" inference favorable to Defendants arises from the allegations of the CCAC regarding the lowering of the quarterly dividend once de-linkage occurred, and amid inquiry by the United States Attorney's Office for the Southern District of New York.  Defendants' contention of any such inference in their favor from their alleged "fact" attempting to controvert the

allegations of the CCAC and any contention that Plaintiffs have fabricated their allegation respecting the dividend reduction immediately after de-linkage, must be stricken.

**Second**, Defendants contend in their Reply that any allegation that Mr. Icahn was motivated to engage in the Scheme and/or to falsely inflate the trading price of IEP units because, among other motives, he did not want to lose control of IEP, is "fabricated" out of whole cloth. Dkt. 102 at 5. Defendants further assert that any such loss of control was a "near impossibility" since a change of control requires the vote of at least 75% of the total IEP unitholders.[4] Reply at 5 and 8, fn.1. In other words, according to the Reply, "so long as Mr. Icahn continued to own more than 25% of IEP's outstanding units, he could not lose control," while also noting that as of December 31, 2022, he had pledged 181,439,167 units out of a total of 353,572,182 outstanding as collateral against his personal debts. Reply at 5. These factual contentions, asserted to contradict the allegations of the Complaint, are outside the four corners of the Complaint and cannot serve as a basis for Defendants' dismissal motion.[5]

Defendants' recitation of their supposed "facts" is not incontrovertible. Although it should not be considered at all, § 12.02(a) of the Partnership Agreement states the following:

> … Moreover, under the partnership agreement, the affirmative vote of Icahn Enterprises GP and unitholders owning more than 50% of the total number of all

---

[4] Defendants rely on the verbiage of a Partnership Agreement appended as D. Ex. to their Motion, notwithstanding that the Partnership Agreement was neither alleged nor relied upon in the CCAC, and that it is not a document executed by Plaintiffs. Further, the contents of the Agreement are not the subject of alleged false statements and are not related to an inquiry of what was or was not disclosed to the market. Thus, using the contents of D. Ex. 7 for any purpose would not comport with Fed. R. Evid., Rule 201 and, in any event, Defendants do not request judicial notice with respect to the Partnership Agreement.

[5] Defendants seek to prop up their argument by improperly asserting statements included in SEC filings as fact. For example, Defendants state that: "[i]n that same 10-K, IEP disclosed that Mr. Icahn personally owned an additional $4.9 billion in interests in the investment funds managed by IEP. Id. at 35. He therefore also had that $4.9 billion available to satisfy his personal loans." Reply at 5. It is not appropriate at this stage of the litigation, to assert this statement as uncontroverted fact.

outstanding depositary units then held by unitholders, including affiliates of Mr. Icahn, is required to approve, among other things, selling or otherwise disposing of all or substantially all of our assets in a single sale or in a related series of multiple sales, our dissolution or electing to continue Icahn Enterprises in certain instances, electing a successor general partner, making certain amendments to the partnership agreement or causing us, in our capacity as sole limited partner of Icahn Enterprises Holdings, to consent to certain proposals submitted for the approval of the limited partners of Icahn Enterprises Holdings. Accordingly, as affiliates of Mr. Icahn hold in excess of 50% of the depositary units outstanding, Mr. Icahn, through affiliates, will have effective control over such approval rights.

As Defendants' must concede, by the end of 2022, which was before issuance of the Hindenburg Report, Mr. Icahn had pledged IEP units in an amount greater than 50% of the amount of outstanding shares. With the significant stock price decline that immediately followed the issuance of the Hindenburg Report, and decline in the value of his collateral, Mr. Icahn would need to provide even more collateral in 2023 for his personal margin loans, which would further increase the number of pledged units.[6] Given the above, it is clearly possible that Mr. Icahn could have lost the ability to maintain absolute dominance if the margin loan lenders had called their loans and brought Mr. Icahn's affiliated holdings to less than 50% of the units. Notably, IEP's Form 10-K filings warned precisely of the material risk of a change in control in the event Mr. Icahn were to "sell, or otherwise transfer some or all of his interest" in the general partnership. *See* Dkt. No. 97-40 at 4. This material risk disclosure buttresses a potential adverse consequence of a margin call on Mr. Icahn's personal loans impacting IEP's senior notes. A margin call triggering execution on his collateral constitutes a transfer of "some or all of his interests to an unrelated party or group," which "change of control could be deemed to have occurred under the terms of the indentures

---

[6] Lead Plaintiff's effort to demonstrate why judicial notice is inappropriate because the counter-"facts" Defendants proffer are not incontrovertible, is not seeking or moving for a factual determination of the truth and is without prejudice to the time honored standard of review requiring the well-pleaded factual allegations and inferences **therefrom** to be accepted as true, as noted above. Without waiving any argument herein, it is noted that, according to IEP's Annual Report on Form 10-K for the fiscal year ended December 31, 2023, Mr. Icahn's pledged units as collateral totaled 352,677,938 out of 429,033,241 units outstanding, which is a significant increase in amount and percentage, as IEP's unit trading price had eroded. Through discovery, the parties will establish how many units Mr. Icahn pledged as collateral following the 2023 renegotiation of his personal loans, announced shortly before the end of the Class Period.

governing the senior notes" in which case IEP "would be required to repurchase all outstanding notes at 101% of their principal amount," respecting which the Company cautioned that it is "possible that we will not have sufficient funds." Defendants' effort to controvert the allegations and the truth of CCAC with respect to the desire to shelter Mr. Icahn's dominance and control, is inappropriate at this pleading stage and should be stricken.

## III.   CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court grant this Motion to Strike and enter the accompanying [Proposed] Order as an Order of the Court.

### REQUEST FOR HEARING

Pursuant to L. R. 7.1(b)(2), Lead Plaintiff respectfully requests a hearing on this Motion. Lead Plaintiff believes a hearing would be helpful given the complexity of the underlying issues and will assist the Court in adjudicating the Motion. Plaintiffs estimate that fifteen (15) minutes will be sufficient.

### CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT

Pursuant to Local Rule 7.1, undersigned hereby certifies that counsel for Lead Plaintiff has conferred with Counsel for Defendants in a good faith effort to resolve the issues raised by the motion and has been unable to do so. Specifically, after conferring via email on May 22, 2024, and conferring telephonically on May 28, 2024, Defendants maintain the position that they oppose Lead Plaintiff's Motion to Strike.

Dated: May 29, 2024                    Respectfully submitted,


**By:** */s/ Howard Bushman*
ADAM MOSKOWITZ (Fla. Bar No. 984280)
HOWARD BUSHMAN (Fla. Bar No. 364230)
BARBARA C. LEWIS (Florida Bar No. 118114)
Email: adam@moskowitz-law.com
Email: howard@moskowitz-law.com
Email: barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Miami, FL 33133
**Mailing Address:**
P.O. Box 653409
Miami, FL 33175

*Liaison Counsel*

JEFFREY W. GOLAN
EMAIL: jgolan@barrack.com
JEFFREY A. BARRACK*
EMAIL: jbarrack@barrack.com
**BARRACK, RODOS & BACINE**
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963–0600
Facsimile: (215) 963–0838

STEPHEN R. BASSER*
EMAIL: sbasser@barrack.com
SAMUEL M. WARD*
EMAIL: sward@barrack.com
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

*Lead Counsel for Lead Plaintiffs and the Putative Class*

*Admitted Pro Hac Vice

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2024, I served a true and correct copy of the foregoing

upon all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Howard Bushman*
*Howard Bushman*

10