**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PHILIP KOSOWSKY and GARY COTON, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-21773-KMM |
| Plaintiffs, | |
| v. | |
| ICAHN ENTERPRISES L.P., ICAHN ENTERPRISES HOLDINGS L.P., ICAHN ENTERPRISES G.P. INC., CARL C. ICAHN, ARIS KEKEDJIAN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO, | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING LEAD PLAINTIFF'S MOTION TO STRIKE**

**ORDER**

Having considered the submissions regarding Lead Plaintiff's Motion to Strike,

IT IS HEREBY ORDERED that:

1.      Lead Plaintiff's Motion to Strike Section II. A. of Dkt. No. 102 is granted;

2.      Lead Plaintiff's Motion to Strike the following improper assertions of fact from Docket No. 102 is granted:

Page 5-6:

Accordingly, he had 30,165,411 units remaining to satisfy any margin call while still ensuring control of the Company.1 In that same 10-K, IEP disclosed that Mr. Icahn personally owned an additional $4.9 billion in interests in the investment funds managed by IEP. Id. at 35. He therefore also had that $4.9 billion available to satisfy his personal loans. This cushion demonstrates that none of the Defendants had any motivation to engage in any scheme to protect Mr. Icahn from a margin call that he could readily meet, let alone the near impossibility that he could lose control of IEP.

Page 5, fn. 1:

Under IEP's Partnership Agreement, the general partner that controls IEP—which is owned entirely by Mr. Icahn—can be removed only if IEP record holders owning at least 75% of the total IEP units voted it out. Ex. 7, IEP Partnership Agreement § 12.02(a). Thus, so long as Mr. Icahn continued to own more than 25% of IEP's outstanding units, he could not lose control.

Page 18:

But IEP's public filings render this claim entirely implausible. As detailed above, IEP's 2022 10-K disclosed that Mr. Icahn had 118,558,457 IEP units unpledged at that time, including 30,165,411 units that he could use to satisfy any margin call with zero risk he could lose control of the company. See supra at 5. In that same 10-K, IEP disclosed Mr. Icahn also personally owned approximately $5 billion in interests in the investment funds managed by IEP. He therefore had extensive assets with which to satisfy his personal loans. As such, it is simply not plausible that Defendants concocted the "Dividend Inducement Scheme" to protect Mr. Icahn

1

from a margin call he could easily meet, let alone the near impossibility that he would lose control of IEP.

Page 19:

Again, they made this up. They allege no facts showing that any inference of such scienter is "cogent" and "as compelling" as the opposing inference, i.e., that IEP cut the distribution to $1 thereby maintaining its historical distribution yield of about 14%, rather than the 25% yield that would have resulted from a continued $2 quarterly distribution.5 While Plaintiffs assert IEP said nothing about the distribution yield when lowering the distribution, Opp. at 3 and 37 n.7, Plaintiffs are wrong. See Ex. 36, Q2 2023 Earnings Call at 7 (explaining the distribution was cut because "the world has changed, at least for us, given a number of these articles [the Hindenburg Reports] . . ." and that "even when you look at the dividend yield that would be implied based on share prices and per unit, it remains a healthy and attractive dividend yield").

Page 19, fn. 5:

The distribution yield is calculated by dividing the unit price on a given day by the annual distribution paid.

***

After the Hindenburg Report, IEP's unit price dropped, and it was trading at $32.68 per unit on August 3, 2023, when the distribution was lowered to $1 per unit. At $4 per year, divided by $32.68 per unit, the yield was 12.2%, whereas it would have been double that, at 24.4%, if the distribution had not been reduced. Mot. at 12.

Page 23:

As explained above, Mr. Icahn always had more than enough assets to cover a margin call.

3

DONE and ORDERED this _____ day of _____, 2024, in Chambers in Miami-Dade

County, Florida.

_____
THE HONORABLE K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

3