**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:23-cv-21773-KMM**

|  |
|---|
| PHILIP KOSOWSKY and GARY COTON, individually and on behalf of all others similarly situated,<br>　　　　　　　Plaintiffs,<br>　　　　　　v.<br>ICAHN ENTERPRISES L.P., ICAHN ENTERPRISES HOLDINGS L.P., ICAHN ENTERPRISES G.P. INC., CARL C. ICAHN, ARIS KEKEDJIAN, DAVID WILLETTS, TED PAPAPOSTOLOU, KEITH COZZA, and SUNGHWAN CHO,<br>　　　　　　　Defendants. |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT........................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.    THE SCHEME LIABILITY ARGUMENT IS NEITHER IMPROPER NOR
      NEW ..................................................................................................................... 2

II.   THE REPLY DOES NOT IMPERMISSIBLY RELY ON MATTERS OUTSIDE
      THE RECORD....................................................................................................... 4

          A.    Defendants' Distribution Yield Arguments Are Properly Presented........... 5

          B.    Defendants Properly Presented Arguments Regarding the
                Likelihood of Mr. Icahn Losing Control..................................................... 7

                a.    Reliance on the Number of Pledged and Unpledged Units
                      Was Proper ........................................................................................ 7

                b.    Reliance on the Partnership Agreement Was Proper ...................... 8

                c.    Plaintiffs Improperly Misrepresent the Partnership
                      Agreement..........................................................................................11

                d.    Plaintiffs' Other Arguments Should Be Disregarded as an
                      Improper Sur-Reply ........................................................................ 13

      CONCLUSION................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amargos v. Verified Nutrition, LLC*,
  666 F. Supp. 3d 1249 (S.D. Fla. 2022) ...................................................................................2

*Big Ligas, LLC v. Yu*,
  2021 WL 1518993 (S.D. Fla. Apr. 16, 2021) ..........................................................................3

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)....................................................................................11

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ........................................................................................4, 10

*Chase v. Fisher*,
  2023 WL 3557404 (N.D. Fla. Mar. 7, 2023) ..........................................................................10

*Equal Emp. Opportunity Comm'n v. Univ. of Miami*,
  2021 WL 2349490 (S.D. Fla. June 9, 2021) .........................................................................3, 6

*Giglio Sub s.n.c. v. Carnival Corp.*,
  2012 WL 4477504 (S.D. Fla. Sept. 26, 2012),
  *aff'd*, 523 F. App'x 651 (11th Cir. 2013)........................................................................2, 3, 4

*Gov't Emps. Ins. Co. v. Gomez-Cortes*,
  2022 WL 2173377 (S.D. Fla. June 15, 2022) ..................................................................1, 3, 6

*Jackson Inv. Grp., LLC v. Thomas*,
  325 F. Supp. 3d 1334 (N.D. Ga. 2017) ....................................................................................9

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  584 F. Supp. 3d 1161 (S.D. Fla. 2022), *aff'd*, 76 F.4th 1335 (11th Cir. 2023) ........................6

*La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*,
  733 F. Supp. 2d 1332 (S.D. Fla. 2010) ....................................................................................2

*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004), *abrogated on other grounds by*
  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................6

*Maxcess, Inc. v. Lucent Techs., Inc.*,
  433 F.3d 1337 (11th Cir. 2005) ........................................................................................9, 10

*Meide v. Pulse Evolution Corp.*,
2020 WL 5350325 (M.D. Fla. Sept. 4, 2020) ............................................................11

*Michigan Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) ...........................................................1

*Mogensen v. Body Cent. Corp.*,
15 F. Supp. 3d 1191 (M.D. Fla. 2014) .......................................................................6

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) .............................................................9

*Selbst v. Coca-Cola Co.*,
262 F. App'x 177 (11th Cir. 2008) .............................................................................1

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
600 F.3d 1334 (11th Cir. 2010) .................................................................................9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ..................................................................................................11

*United Credit Recovery, LLC v. Wells Fargo Bank, N.A.*,
2013 WL 12061833 (S.D. Fla. Jan. 8, 2013) ...........................................................10

**OTHER AUTHORITIES**

S.D. Fla. L.R. 7.1 ............................................................................................................2, 3

**PRELIMINARY STATEMENT**

In their Motion to Strike ("Mot. to Strike") (ECF No. 105), Plaintiffs seek to strike a purportedly new argument and various alleged improper issues of fact raised in Defendants' Reply in Support of the Motion to Dismiss ("Reply") (ECF No. 102). Yet, the "new" argument was advanced in Defendants' opening Motion to Dismiss ("Mot. to Dismiss") (ECF No. 97) and then reiterated as a proper rebuttal in response to assertions Plaintiffs made in their Opposition to the Motion to Dismiss ("Opposition" or "Opp.") (ECF No. 99). And all of the purported improper issues of fact were either relied upon by Plaintiffs themselves or are facts of which courts commonly take judicial notice. Accordingly, Plaintiffs' Motion to Strike should be denied. Plaintiffs' Motion should also be disregarded because Plaintiffs improperly use their Motion to respond to the Reply without seeking leave from the Court to file a sur-reply brief.

**ARGUMENT**

Motions to strike are rarely granted. *Gov't Emps. Ins. Co. v. Gomez-Cortes*, 2022 WL 2173377, at *2 (S.D. Fla. June 15, 2022) ("The granting of a motion to strike is a 'drastic remedy' that is disfavored." (citations omitted)). A motion to strike will be granted "only when required for the purposes of justice," and "only when the [filing] to be stricken has no possible relation to the controversy." *Id.* (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, *Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). Rather than striking allegedly improperly used documents of which the court may take judicial notice, courts use their discretion to only consider those documents for their proper purpose. *See*, *e.g.*, *Michigan Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *2 (M.D. Fla. Mar. 29, 2019); *see also Selbst v. Coca-Cola Co.*, 262 F. App'x 177, 179 (11th Cir. 2008) (rejecting plaintiff's argument that the court erred by considering documents for their truth because "[w]e are convinced that the district court dismissed

1

the plaintiffs' claim, not because it presumed [defendant]'s representations in its SEC filings to be true, but instead because the plaintiffs' complaint fails to plead with particularity").

With regard to sur-reply briefs, the Local Rules of this Court establish that, after a reply brief is filed, "[no] further or additional memoranda of law shall be filed and served without prior leave of Court." S.D. Fla. L.R. 7.1(c)(1). And, even when leave is sought, sur-replies are disfavored because "extra briefing beyond what the Local Rules permit should be allowed only in exceptional circumstances." *Giglio Sub s.n.c. v. Carnival Corp.*, 2012 WL 4477504, at *4 (S.D. Fla. Sept. 26, 2012), *aff'd*, 523 F. App'x 651 (11th Cir. 2013); *see also Amargos v. Verified Nutrition, LLC*, 666 F. Supp. 3d 1249, 1250 (S.D. Fla. 2022) (noting that "sur-replies will generally only be permitted in exceptional circumstances"). Thus, courts strike sur-replies filed without leave of the court. *See La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332, 1334 n.1 (S.D. Fla. 2010).

As discussed below, the Motion to Strike should be denied because Defendants' Reply consists solely of rebuttal arguments that properly make use of the facts alleged by Plaintiffs and documents upon which the Complaint is based. The Motion to Strike should also be disregarded as an improper sur-reply.

## I.      THE SCHEME LIABILITY ARGUMENT IS NEITHER IMPROPER NOR NEW

In Section II.A. of the Reply, Defendants argued that Plaintiffs' scheme liability claim fails because the Complaint violates pleading rules by combining scheme liability and misrepresentation theories in one Count. In the Motion to Strike, Plaintiffs assert that Defendants "forfeited" this argument by not including it in their opening Motion to Dismiss. *See* Mot. to Strike at 2-3. Plaintiffs are wrong.

In the Motion to Dismiss, Defendants argued that the Complaint was an improper "puzzle pleading" that failed to plead with particularity, including because Plaintiffs did not plead which

statements were alleged false and misleading. *See* Mot. to Dismiss at 15-16. Likewise, because the Complaint failed to differentiate Plaintiffs' misrepresentation claim from their scheme liability claim, *see* ¶¶ 166-69,[1] Defendants argued that the scheme liability claim improperly relied solely on purported misrepresentations and not any alleged deceptive conduct. Mot. to Dismiss at 50. In their Opposition, Plaintiffs attempted (unsuccessfully) to delineate the deceptive conduct supporting the scheme liability claim. Opp. 11-12. In response, the Reply explained in Section II.A. that the Complaint's failure to distinguish the allegations supporting the misrepresentation claim and the scheme liability claim is a pleading deficiency that cannot be cured through a brief. Reply at 3-4. This argument was in direct response to Plaintiffs' new argument that the Complaint had alleged deceptive conduct, separate and apart from misrepresentations, to support their scheme liability claim.

As the above makes clear, Section II.A. of the Reply responded directly to arguments Plaintiffs raised in their Opposition. *See* S.D. Fla. L.R. 7.1(c). As such, it was "a proper way to reply to opposition papers and is not tantamount to an introduction of new issues." *Gomez-Cortes*, 2022 WL 2173377, at *4 (refusing to grant leave for sur-reply where reply "merely responded to the arguments raised by [party]'s opposition"); *see also Equal Emp. Opportunity Comm'n v. Univ. of Miami*, 2021 WL 2349490, at *2 (S.D. Fla. June 9, 2021) (rejecting argument that reply made "new arguments" where reply "respond[ed] to the arguments and the evidence the Plaintiff relied on in her response in opposition"); *Big Ligas, LLC v. Yu,* 2021 WL 1518993, at *3 (S.D. Fla. Apr. 16, 2021) (denying plaintiff's request to strike reply brief argument where brief was "appropriately limited to rebuttal of matters raised in the Defendant's opposition"); *Giglio*, 2012 WL 4477504, at

---

[1] References to ¶ __ are to the Complaint. ECF No. 85.

*2 (denying motion to strike where reply raised "rebuttal arguments and evidence" that "rebut[ted] elements of the opposition memorandum," rather than "rais[ing] wholly new factual issues").

While purporting merely to strike Section II.A., Plaintiffs also are improperly seeking to have the last word regarding the Motion to Dismiss. *See*, *e.g.*, Mot. to Strike at 3 n.2 (attempting to distinguish a case cited in the Reply on a ground that is irrelevant to the motion to strike). Notably, however, Plaintiffs do not—and cannot—contest the arguments and authorities cited in Section II.A, which are fatal to their scheme liability claim.

## II.   THE REPLY DOES NOT IMPERMISSIBLY RELY ON MATTERS OUTSIDE THE RECORD

Plaintiffs next claim that the Reply improperly relies on facts outside the scope of the Complaint and upon documents that the Court cannot judicially notice. In particular, Plaintiffs argue that Defendants impermissibly rely on facts regarding the distribution yield and the likelihood that Mr. Icahn could lose control of IEP as a result of his margin loans. Once again, Plaintiffs' arguments fail. And, once again, Plaintiffs try to utilize their Motion to Strike to make meritless and impermissible sur-reply arguments.[2]

---

[2] Plaintiffs do not dispute that this Circuit has adopted the "practice of judicially noticing relevant documents legally required by and publicly filed with the SEC at the motion to dismiss stage." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999); Mot. to Strike at 3. And the Motion to Dismiss explicitly noted that, in accordance with precedent, the Court could consider SEC filings and documents incorporated by reference in the Complaint. Mot. to Dismiss at 3 n.1 (citing *In re Carnival Corp. Secs. Litig.*, No. 1:20-cv-22202-KMM, Order at 12-13 (S.D. Fla. Mar. 30, 2022), ECF No. 86 (Moore, J.) (considering "the full contents of [defendant]'s securities filings, press releases, and other items referenced in the [Complaint]").

### A.    Defendants' Distribution Yield Arguments Are Properly Presented

In the Complaint, Plaintiffs calculated the historical "distribution yield" obtained by IEP unit holders. They specifically described how to calculate the distribution yield and the alleged historical range of IEP's distribution yield. *See* ¶ 295 (providing chart of dividend yield from 2018 through 2022 and alleging that "[d]ividend yield is calculated as the dividend paid by the Company, divided by the Company's share price. According to S&P Capital IQ, IEP's dividend yield averaged approximately 14% during the Class Period"). In their Complaint, Plaintiffs also alleged that IEP reduced its distributions from $2 per quarter to $1 per quarter in August 2023 because Mr. Icahn's margin loans were no longer tied to IEP's unit price and therefore Defendants no longer had a motive to prop up the unit price through a $2 quarterly distribution.

In the Motion to Dismiss, Defendants asserted that, by reducing the distribution to $1, IEP maintained a distribution yield within the historical range calculated by Plaintiffs. *See* Mot. to Dismiss at 12, 49.[3] In their Opposition, Plaintiffs asserted that Defendants' reliance on the distribution yield as a basis for the distribution reduction was "untrue and . . . a deception" because IEP had "never asserted that yield was a relevant factor in setting IEP dividends." Opp. at 3 & 37 n.7. Defendants then *responded* to this argument in the Reply by showing that IEP *did* discuss— in its Q2 2023 earnings call—the distribution yield when explaining the reduction in the quarterly distributions from $2 to $1. *See* Reply at 19.[4]

---

[3] In their Motion, Plaintiffs do *not* seek to strike this argument from the Motion to Dismiss.

[4] While Plaintiffs' Motion to Strike incorrectly refers to an August 2023 press release, Mot. to Strike at 5, the Reply actually cites the Q2 2023 Earnings Call, Reply at 19 (citing Ex. 36, ECF No. 97-38).

Plaintiffs appear to be asking the Court to strike three different aspects of Defendants' discussion of the distribution yield. First, Plaintiffs seek to strike a sentence in the Reply, which provides the definition of distribution yield. *See* [Proposed] Order Mot. to Strike at 2, ECF No. 105-1. That sentence provides that a "distribution yield is calculated by dividing the unit price on a given day by the annual distribution paid." Reply at 19 n.5. This sentence is entirely proper and virtually identical to a sentence in the Complaint, which alleges that the "[d]ividend yield is calculated as the dividend paid by the Company, divided by the Company's share price." ¶ 295. It is obviously proper for Defendants to make assertions in their Reply that are based upon allegations in Plaintiffs' own Complaint.

Next, Plaintiffs ask the Court to strike the Defendants' reliance on the Q2 2023 earnings call, during which IEP mentioned the distribution yield in the context of explaining why the distribution was cut from $2 to $1. However, Defendants' reliance on the earnings call was directly responsive to Plaintiffs' false assertion that IEP had "never asserted that yield was a relevant factor in setting IEP's dividends." Opp. at 3 & 37 n.7. As such, Defendants' reference to the earnings call was proper. *See Gomez-Cortes*, 2022 WL 2173377, at *4 ("merely respond[ing] to the arguments raised by" the opposing party is "not tantamount to an introduction of new issues"); *see also Equal Emp. Opportunity Comm'n*, 2021 WL 2349490, at *2.

Finally, the only other purportedly outside-the-record fact involved in the Reply's calculation of the distribution yield is the price of IEP units. But stock prices "are not subject to reasonable dispute, and are a proper subject for judicial notice." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1178 (S.D. Fla. 2022) ("[C]ourts may take judicial notice of matters 'not subject to

6

reasonable dispute,' including stock prices."), *aff'd*, 76 F.4th 1335 (11th Cir. 2023) (citations omitted)); *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1209 (M.D. Fla. 2014) (recognizing that courts can take judicial notice of stock price). Moreover, the Complaint itself alleged the very unit price that Defendants used to calculate the distribution yield on the date of the distribution reduction, August 3, 2023. *See* ¶ 30.

For the above reasons, Plaintiffs' request to strike the Reply's discussion of the distribution yield should be denied.

### B.      Defendants Properly Presented Arguments Regarding the Likelihood of Mr. Icahn Losing Control

In their Motion, Plaintiffs seek to strike certain aspects of Defendants' argument that it was nearly impossible for Mr. Icahn to have lost control of IEP based on his margin loans. Specifically, they seek to strike: (1) information regarding the number of IEP units Mr. Icahn had pledged as collateral for his margin loans and the number of units that remained unpledged; and (2) the Second Amended and Restated Agreement of Limited Partnership of Icahn Enterprises L.P., dated August 16, 2023 ("Partnership Agreement" or "Agreement") (Ex. 7, ECF No. 97-9), which makes plain that Icahn Enterprises G.P. Inc., which manages IEP and is wholly owned by Mr. Icahn, cannot be removed as IEP's general partner absent the vote of 75% of outstanding unitholders. As discussed below, Plaintiffs are wrong.

#### a.      *Reliance on the Number of Pledged and Unpledged Units Was Proper*

In their Motion to Strike, Plaintiffs seek to exclude statements in the Reply Brief regarding the number of units Mr. Icahn had pledged as collateral for his margin loans. Specifically, they seek to strike the fact that, "as of December 31, 2022, he had pledged 181,439,167 units out of a total of 353,572,182" units. Mot. to Strike at 6. As an initial matter, Plaintiffs' argument to strike these facts fails because Defendants discussed these very figures in their opening Motion to

7

Dismiss, citing the public filings that disclosed these figures. Mot. to Dismiss at 11, 17. Yet, Plaintiffs do not seek to strike the argument from that Motion.

More significantly, the Motion to Strike fails because Plaintiffs' Complaint *relies on these very figures*. Specifically, citing the Hindenburg Report, the Complaint alleges that Mr. Icahn pledged 60% of his IEP units, or "181.4 million units," as of December 31, 2022. ¶¶ 250(z)-51. Therefore, as pleaded by Plaintiffs, Mr. Icahn had not pledged 40% of his IEP units. The Reply merely reiterated these figures, citing to the precise numbers in the 2022 10-K that Hindenburg and Plaintiffs had used to reach their 60% determination. As such, Plaintiffs are wrong to claim that Defendants improperly relied upon facts "outside the four corners of the Complaint." Mot. to Strike at 6.

### b.       *Reliance on the Partnership Agreement Was Proper*

In their Opposition, Plaintiffs argued that Mr. Icahn's margin loans could cause him to lose control of IEP because he had pledged 60% of his IEP units. Opposition at 45 (citing ¶ 251). Plaintiffs again make this argument in their motion to strike. Mot. to Strike at 7 (discussing purported consequences of failing to own 50% of units). However, Plaintiffs' argument is based on the incorrect legal assumption that ownership of less than 50% of the units would cause Mr. Icahn to lose control of IEP. As the Reply established, IEP's Partnership Agreement makes clear that Icahn Enterprises G.P.—which controls IEP and is solely owned by Mr. Icahn, ¶ 391—can be removed as IEP's general partner only if more than 75% of the unitholders vote it out, Partnership Agreement § 12.02(a); Reply at 5 n.1. Thus, so long as Mr. Icahn owns more than 25% of IEP's units, he cannot lose control of IEP.

Although the Motion to Dismiss cited to and attached the Partnership Agreement as an exhibit, *see* Mot. to Dismiss at 7; Ex. 7, ECF No. 97-9, Plaintiffs argue for the first time in their Motion to Strike that the Reply improperly relies on the Partnership Agreement because the

Agreement is neither "alleged nor relied upon" in the Complaint and is not a proper subject for judicial notice, Mot. to Strike at 6 n.4. Plaintiffs are wrong.

First, the Complaint *does* reference the Partnership Agreement. Plaintiffs reference the Agreement when pleading a key disclosure, which was "repeated almost verbatim in each subsequent Form 10-K filed by IEP during the Class Period" and involved critical issues in this case. ¶ 67. The quoted disclosure explicitly states that IEP's payment of distributions is reviewed by Icahn Enterprises GP in light of various factors including "***the provisions of our partnership agreement***." *Id.* And Plaintiffs go on to allege that the disclosure was "deceptive and misleading" by "falling [sic] to disclose the relationship of such quarterly and annual distributions to Mr. Icahn's massive margin loan debt." *Id.* Thus, the Complaint not only discusses the Partnership Agreement, but specifically does so in the context of the relationship between distributions and the margin loans—issues that are plainly significant to Plaintiffs' theories.

Moreover, even if the Complaint had not referenced the Partnership Agreement, Defendants were still entitled to attach and refer to the Agreement, which was publicly filed with the SEC, in their Motion to Dismiss briefing. Numerous cases hold that agreements governing the relationship between the parties, like the Partnership Agreement here, are integral to the complaint—whether expressly relied upon in the complaint or not. *See In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at *11 (S.D. Fla. Apr. 19, 2013) (denying motion to strike and judicially noticing documents not cited in the complaint but attached to the motion to dismiss because the documents "are at the heart of this case" and the plaintiffs' "failure to cite to certain of these documents in their Complaint does not alter their materiality and is not a requirement for the Court's judicial notice"); *Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1337 n.1 (N.D. Ga. 2017) ("On a motion to dismiss, the court may consider the full text of

SEC filings, ***documents integral to or incorporated by reference into the complaint***, and any matter of which the court may take judicial notice.").

As the Eleventh Circuit has held, when an agreement "determined the terms of the relationship between [the parties]," precedent in this Circuit recognizes that "such relationship-forming contracts are central to a plaintiff's claim," and therefore properly considered when deciding a motion to dismiss. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Indeed, in *Maxcess, Inc. v. Lucent Techs., Inc.*, the plaintiff argued that the district court erred in considering the parties' purchase agreement because it was neither mentioned in nor attached to the complaint. 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). In rejecting this argument, the court held that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity," and the lower court had properly considered the agreement because "contracts such as the one in this case are central to a plaintiff's claim." *Id.*; *see also Chase v. Fisher*, 2023 WL 3557404, at *3 n.2 (N.D. Fla. Mar. 7, 2023) (identifying employment contract attached to motion to dismiss as document "central to Plaintiff's claims because it establishes the relationship between Plaintiff and the Defendant"); *United Credit Recovery, LLC v. Wells Fargo Bank, N.A.*, 2013 WL 12061833, at *3 (S.D. Fla. Jan. 8, 2013) (considering purchase agreement even though not attached to complaint).

Here, the Partnership Agreement is undoubtedly a relationship-governing contract, as it defines the obligations, responsibilities, and rights of the parties. And Plaintiffs have not contested the Agreement's authenticity nor cited any precedent holding that reliance on contracts like the Agreement is improper.

In addition, the Agreement is publicly filed with the SEC. *See*, *e.g.*, Exhibit 3.1 to 2016 Q2 Form 10-Q; Exhibit 3.3 to 2021 10-K. Thus, judicial notice is not only proper because the

Agreement is "publicly filed with the SEC," but also because "as in the typical securities fraud case . . . . Plaintiffs expressly state in their [Complaint] that their allegations are based upon the investigation of their counsel, which included a review of [IEP]'s SEC filings." *Bryant*, 187 F.3d at 1276, 1279; *see* Compl. at 1 (stating that the Complaint is based upon SEC filings).

Finally, the parts of the Reply that Plaintiffs seek to strike relate to the issue of scienter, which necessitates the Court to weigh Plaintiffs' scienter allegations against competing inferences arising from, among other things, the documents underlying the Complaint. The Supreme Court has established that "courts ***must*** consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, ***in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice***" when determining whether plaintiffs establish a strong inference of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Meide v. Pulse Evolution Corp.*, 2020 WL 5350325, at *12 (M.D. Fla. Sept. 4, 2020) (same). Thus, when determining whether Plaintiffs have raised the requisite strong inference of scienter, the Court ***should*** consider "the documents upon which the Complaint is based." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (finding that plaintiffs' conclusory scienter allegations were outweighed by the underlying documents, which "suggest . . . fact[s] wholly inconsistent with fraudulent intent").

### c. *Plaintiffs Improperly Misrepresent the Partnership Agreement*

In their Motion to Strike, Plaintiffs purport to quote Section 12.02(a) of the Partnership Agreement to prove their theory that "it is clearly possible" that Mr. Icahn would have lost control if a margin loan foreclosure "brought Mr. Icahn's affiliated holdings to less than 50% of the units." Mot. to Strike at 6-7. As a threshold matter, this argument should be rejected because it is an

11

attempt to submit an improper sur-reply. More significantly, the language Plaintiffs quote does not support their argument.

First, the language Plaintiffs quote *is not even from the Partnership Agreement*. Rather, it is from IEP's 10-Ks. *Compare* Mot. to Strike at 6-7 *with* Ex. 1, 2022 10-K at 124. Moreover, Plaintiffs misleadingly omit the essential first two sentences of the paragraph that they quote, which state exactly what the Reply and the Partnership Agreement provide. The full paragraph from the Form 10-K is below:

> ***The affirmative vote of unitholders holding more than 75% of the total number of all depository units then outstanding, including depository units held by Icahn Enterprises GP and its affiliates, is required to remove Icahn Enterprises GP as the general partner of Icahn Enterprises. Thus, since Mr. Icahn, through affiliates, holds approximately 85% of Icahn Enterprises' outstanding depository units as of February 24, 2023, Icahn Enterprises GP will not be able to be removed pursuant to the terms of our partnership agreement without Mr. Icahn's consent.*** Moreover, under the partnership agreement, the affirmative vote of Icahn Enterprises GP and unitholders owning more than 50% of the total number of all outstanding depository units then held by unitholders, including affiliates of Mr. Icahn, is required to approve, among other things, selling or otherwise disposing of all or substantially all of our assets in a single sale or in a related series of multiple sales, our dissolution or electing to continue Icahn Enterprises in certain instances, electing a successor general partner, making certain amendments to the partnership agreement or causing us, in our capacity as sole limited partner of Icahn Enterprises Holdings, to consent to certain proposals submitted for the approval of the limited partners of Icahn Enterprises Holdings. Accordingly, as affiliates of Mr. Icahn hold in excess of 50% of the depository units outstanding, Mr. Icahn, through affiliates, will have effective control over such approval rights.

Ex. 1, 2022 10-K at 124. Rather than proving Plaintiffs' point, the paragraph Plaintiffs quote demonstrates exactly what Defendants said, *i.e.*, that Mr. Icahn could lose control only if he owned less than 25% of the units, and even then, only if unitholders holding more than 75% of units affirmatively voted to remove him as the general partner.

Furthermore, the language in the remaining sentences of the paragraph is inapposite to the issue of Mr. Icahn's control. That language concerns certain approval rights that do *not* include

the removal of the general partner. In any case, those approval rights require the votes of unitholders holding more than 50% of the units *and of the general partner*, Icahn Enterprises G.P., which is wholly owned by Mr. Icahn. As such, even with regard to these matters, the vote of 50% of the unitholders *and* of Mr. Icahn would be required to make any of those changes.

**d.**      ***Plaintiffs' Other Arguments Should Be Disregarded as an Improper Sur-Reply***

Plaintiffs make a number of arguments that have nothing to do with their Motion to Strike and are plainly designed to refute arguments in Defendants' Reply. *See* Mot. to Strike at 5-8 (raising various arguments that go well beyond arguments in support of the motion to strike). These arguments are improper and should be disregarded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Strike and Objection.

Dated: June 12, 2024                                                  Respectfully submitted,

*/s/ Mark A. Levy*
Mark A. Levy (Fla. Bar No. 121320)
mark.levy@brinkleymorgan.com
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, FL 33394
Telephone: (954) 745-1161

Michael S. Doluisio (*pro hac vice*)
Bina M. Peltz (*pro hac vice*)
michael.doluisio@dechert.com
bina.peltz@dechert.com
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2325

13

Jonathan R. Streeter (*pro hac vice*)
Nicholas R. Gersh (*pro hac vice*)
Nina S. Riegelsberger (*pro hac vice*)
jonathan.streeter@dechert.com
nicholas.gersh@dechert.com
nina.riegelsberger@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 649-8755

*Counsel for Defendants*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2024, I served a true and correct copy of the foregoing

upon all counsel of record via the Court's CM/ECF electronic filing system.


*/s/ Mark A. Levy*
Mark A. Levy

15