EXHIBIT 1

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 100756 / August 19, 2024**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-22012**

| | |
|---|---|
| **In the Matter of** <br><br> **CARL C. ICAHN,** <br><br> **Respondent.** | **ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Carl C. Icahn ("Icahn" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

## Summary

1.       Carl C. Icahn is the founder, controlling shareholder and Chairman of the Board of Directors of the general partner of Icahn Enterprises L.P. ("IEP"), a publicly traded company.  From at least December 31, 2018 through the present, Icahn pledged approximately 51% to 82% of IEP's outstanding securities as collateral to secure personal margin loans worth billions of dollars under agreements with various lenders.

2.       Notwithstanding his collateral pledges, Icahn did not file amendments to his Schedule 13D, as required by Section 13(d)(2) and Rule 13d-2(a) to reflect material changes to the facts reported under Item 6, describing his personal margin loan agreements and associated amendments that pledged IEP securities as collateral, until July 10, 2023, and similarly did not file exhibits under Item 7 of his Schedule 13D, disclosing his wholly-owned entities' entry into guaranty agreements in connection with the aforementioned loan agreements and amendments, including with respect to the amendment to Schedule 13D filed on July 10, 2023.  The failures to file amendments to Schedule 13D deprived existing and prospective IEP investors of required information.

3.       As a result, Icahn violated Section 13(d)(2) of the Exchange Act and Rule 13d-2(a) thereunder.

## Respondent

4.       **Carl C. Icahn ("Icahn")** is eighty-eight years old and a resident of Sunny Isles Beach, Florida.  Icahn acquired control of IEP's predecessor in 1990.  Since that time, Icahn and his wholly-owned entities have been the controlling shareholders of IEP, and Icahn has served as Chairman of the Board of Icahn Enterprises G.P., Inc., the general partner of IEP, and has served as a named executive officer of IEP.  Between December 31, 2018 and December 31, 2023, Icahn and his wholly-owned entities owned between approximately 85% to 92% of IEP's outstanding depositary units.

## Related Entities

5.       **Icahn Enterprises L.P. ("IEP")** is a master limited partnership incorporated in Delaware with its principal place of business in Sunny Isles Beach, Florida.  IEP's depositary units are registered under Section 12(b) of the Exchange Act.  IEP is listed on the Nasdaq Global Select Market under the symbol "IEP."  As of December 31, 2023, IEP had approximately $20.9 billion of assets and approximately 429,033,241 depositary units outstanding.

6.       **Icahn Partners Master Fund LP** and **Icahn Partners LP (collectively, the "IEP Funds")** are private funds managed by a general partner affiliated with IEP.  The IEP Funds primarily invest in public equities.  The limited partnership interests in the IEP Funds are owned approximately 60% by IEP and 40% by Icahn and his wholly-owned entities as of December 31, 2023.  As of that date, the IEP Funds managed assets valued at approximately $5.33 billion.

2

**Facts**

7.      IEP is a publicly traded, diversified holding company with subsidiaries in various operating segments, such as energy, auto parts, real estate, and others.  In addition to these operating segment investments, IEP invests in the IEP Funds.  Icahn is the founder and controlling shareholder of IEP.  Icahn and IEP have historically pursued activist investment strategies in publicly traded companies pursuant to which both often have beneficial ownership reporting obligations under Section 13(d)(1) of the Exchange Act.

*Icahn's Margin Loan Agreements and Amendments*

8.      From at least December 31, 2018 through December 31, 2022 (the "Relevant Period"), Icahn had margin loan agreements with various lenders, which resulted in him pledging IEP depositary units and/or his interests in the IEP Funds as collateral.  The outstanding principal amounts of the individual loans ranged from $150 million to $1.8 billion.  Under the terms of these agreements, a margin call could be triggered in the event that the closing market price of IEP's depositary units declined by certain amounts.  Certain of Icahn's wholly-owned entities entered into agreements to guarantee the obligations set forth in the margin loan agreements and/or amendments, which guarantees included the delivery of the pledged collateral.

9.      The following chart summarizes Icahn's margin loan agreements and IEP depositary units pledged as of December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and December 31, 2022:

| Approximate as of Date | No. of Lenders | Total Outstanding Principal Amount of Loans | IEP Units Pledged | % of Outstanding IEP Units Pledged |
| --- | --- | --- | --- | --- |
| Dec. 31, 2018 | 9 | $4.6B | 104.6M | 55% |
| Dec. 31, 2019 | 8 | $5.0B | 108.5M | 51% |
| Dec. 31, 2020 | 8 | $5.1B | 156.2M | 65% |
| Dec. 31, 2021 | 8 | $5.0B | 167.7M | 57% |
| Dec. 31, 2022 | 7 | $5.0B | 181.4M | 51% |

10.      On July 10, 2023, Icahn entered into an amended and consolidated margin loan agreement (the "Amended Margin Loan Agreement") with certain lenders for a total outstanding principal amount of approximately $3.7 billion, which resulted in him pledging approximately 320 million IEP depositary units and $2 billion of his interests in the IEP Funds as collateral.  In connection with the Agreement, certain of Icahn's wholly-owned entities entered into an omnibus guaranty and security agreement (the "Omnibus Guaranty Agreement") to guarantee and secure the pledged collateral.

***Icahn Failed to File Amendments to Schedule 13D***

11.     Section 13(d) of the Exchange Act and the rules promulgated thereunder require any person, including a group, who directly or indirectly acquires beneficial ownership of more than 5% of a Section 12 registered equity security to file a statement with the Commission disclosing certain information relating to such beneficial ownership.  Section 13(d) is a key provision that allows shareholders and potential investors to evaluate changes in substantial shareholdings.  *See* 113 Cong. Rec. 855 (1967).  Section 13(d)(2) further requires that once an initial filing has been made by a beneficial owner, the owner must file an amendment if any material changes occur.  Scienter is not an element of violations of Section 13(d) and the relevant rules thereunder.  *See SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165-67 (D.C. Cir. 1978).

12.     Item 6 of Schedule 13D requires a description of any contracts or other arrangements between the person(s) filing the Schedule 13D and any person with respect to any securities of the issuer, including among other things, "for any of the securities that are pledged."

13.     Item 7 of Schedule 13D requires that copies of written agreements relating to the guarantees of loans as disclosed in Item 6, among certain other types of agreements, be filed as exhibits to Schedule 13D.

14.     As a beneficial owner of more than 5% of IEP's outstanding depositary units, Icahn and his wholly-owned entities filed an initial Schedule 13D on September 24, 1990.

15.     In 1995, 2003, and 2005, Icahn filed amendments to Schedule 13D that generally disclosed that Icahn and his affiliates pledged certain IEP depositary units as collateral for personal margin loans, but failed to disclose the amount of units pledged or describe the terms of any agreements.

16.     Since 2005, Icahn entered into dozens of margin loan agreements and amendments with various lenders, including at least eleven during the Relevant Period, which resulted in him pledging additional amounts of IEP depositary units and/or his interests in the IEP Funds as collateral.

17.     Notwithstanding his various margin loan agreements and amendments, amendments to Schedule 13D describing his margin loan agreements or amendments were not filed until July 10, 2023.  On that date, an amendment to Schedule 13D was filed that described the general terms of the Amended Margin Loan Agreement, under Item 6, including the names of the lenders, the principal payments owed, amount of IEP depositary units and interests in the IEP Funds pledged as collateral, and general description of a default event.  The amendment to Schedule 13D did not, however, attach the Omnibus Guaranty Agreement, as required to be disclosed under Item 7 of Schedule 13D.  On July 5, 2024, Icahn filed an amendment to Schedule 13D that attached the Omnibus Guaranty Agreement.

18.     Icahn has represented that he disclosed his various margin loan agreements and amendments to his advisors.  Icahn's disclosures do not excuse his violations because an individual retains legal responsibility for compliance with the filing requirements, including the obligation to assure that the filing is accurately made.[2]

## Violations

19.     As a result of the conduct described above, Icahn violated Section 13(d)(2) of the Exchange Act and Rule 13d-2(a) thereunder.

## Icahn's Cooperation

20.     In determining to accept the Offer, the Commission considered Icahn's cooperation with the Commission's investigation, including by providing to the Commission compilations of relevant documents, information, and data.

## IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent's Offer.

Accordingly, it is hereby ORDERED that:

A.     Pursuant to Section 21C of the Exchange Act, Carl C. Icahn cease and desist from committing or causing any violations and any future violations of Section 13(d)(2) of the Exchange Act and Rule 13d-2(a) thereunder.

B.     Icahn shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $500,000 to the Securities and Exchange Commission.  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment must be made in one of the following ways:

> (1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;
>
> (2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

---

[2] *See SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1315 n.28 (D.C. Cir. 1981) ("Compliance with federal securities laws cannot be avoided simply by retaining outside counsel to prepare required documents."); *see also SEC v. Levy*, 706 F. Supp. 61, 63-69 (D.D.C. 1989) (defendant asserting that his attorney "misinformed defendant about his obligation to disclose" information on Schedule 13D held liable because scienter is not an element of such violations).

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Osman E. Nawaz, Chief, Complex Financial Instruments Unit, Division of Enforcement, Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, NY  10004-2616.

C.     Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, he shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

6

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the findings in this Order are true and admitted by Carl C. Icahn, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Carl C. Icahn under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Carl C. Icahn of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.


Vanessa A. Countryman
Secretary